IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
OMAHA DIVISION

| | |
|---|---|
| JOSE A. GOMEZ, JULIANA REYES, JUAN M. CRUZ, TED MCDONALD, CECILIA ORTIZ and MARIO CRUZ, on behalf themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TYSON FOODS, INC.<br>(d/b/a Tyson Fresh Meats),<br><br>Defendant. | CASE NO. 8:08-cv-00021-JFB-TDT |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, Tyson Foods, Inc. ("Tyson"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of this Court, respectfully submits this Memorandum In Support Of Its Motion For Partial Summary Judgment.

**I.   INTRODUCTION**

Plaintiffs Jose A. Gomez, Juliana Reyes, Juan M. Cruz, Ted McDonald, Cecilia Ortiz, and Mario Cruz ("Plaintiffs") allege in Count I and Count II of their Original Collective Action Complaint ("Complaint") (Dkt. # 1) claims under the Nebraska Wage and Hour Act ("NWHA"), R.R.S. Neb. §§ 48-1201-1209, and under the Nebraska Wage Payment and Collection Act ("NWPCA"), R.R.S. Neb. §§ 48-1228-1232, respectively. These claims are fully preempted by § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, because their resolution depends upon the interpretation and construction of various provisions of an applicable collective bargaining agreement ("CBA") that governs the terms of Plaintiffs'

employment with Tyson. Summary judgment should therefore be entered in Tyson's favor on Counts I and II of Plaintiffs' Complaint.

## II.   STATEMENT OF MATERIAL FACTS

### A.   Plaintiffs' Allegations

1. Plaintiffs' Complaint asserts claims on behalf of themselves and a putative class of individuals identified as "current and former production and support employees of Tyson, at its beef processing facility in Dakota City, Nebraska …." (Compl., ¶ 1.)

2. The claims asserted in Plaintiffs' Complaint include claims under the NWHA (Compl., ¶¶ 30-35) and under the NWPCA (Compl., ¶¶ 36-40).

3. The Complaint was filed on January 16, 2008. Because the applicable limitations period on the Nebraska state claims is four years, R.R.S. Neb. § 25-206, the earliest state-law claims in this case are dated January 16, 2004 ("the relevant time period").

### B.   Plaintiffs' Employment Is Governed By A Collective Bargaining Agreement With Detailed Terms That Address Hours Of Work And Compensation

4. During the relevant time period, Plaintiffs and other production and support workers at Tyson's Dakota City, Nebraska, facility have been represented by the United Food & Commercial Workers International Union ("UFCW"), and the terms of their employment have been specifically governed by a Labor Agreement entered into between Tyson and the UFCW (the "CBA"). (*See* Declaration of Tom Dunlop ("Dunlop Decl."), attached hereto as Exhibit A, ¶ 4.)

5. On August 9, 1999, following extensive collective bargaining negotiations, the UFCW entered into a Labor Agreement with Tyson's predecessor, IBP, inc. ("IBP"), setting forth various terms and conditions of employment for represented employees of IBP at its Dakota City, Nebraska, facility. (*See* Dunlop Decl., ¶ 5, Exh. 1.) The Labor Agreement was effective until August 8, 2004. (*See* Dunlop Decl., ¶ 5, Exh. 1, p. 33.)

2

6. Following Tyson's acquisition of IBP and further collective bargaining negotiations between Tyson and the UFCW, on August 9, 2004, a revised and amended version of the August 9, 1999, Labor Agreement was adopted by both Tyson and the UFCW. (*See* Dunlop Decl., ¶ 6, Exh. 2.). The Labor Agreement was effective until August 9, 2009. (*See* Dunlop Decl., ¶ 6, Exh. 2, p. 33.)

7. Tyson and the UFCW again entered into collective bargaining negotiations and on August 10, 2009, a revised and amended version of the August 9, 2004, Labor Agreement was adopted by both Tyson and the UFCW (the "CBA"). (*See* Dunlop Decl., ¶ 7, Exh. 3.) The CBA, which currently remains in force, is effective until February 2, 2014. (*See* Dunlop Decl., ¶ 7, Exh. 3, p. 28.)

8. The CBA contains an extensive Article VII, entitled "Hours Of Work," which details myriad terms and conditions relevant to the working hours and work schedules of employees at the Dakota City facility. (*See* Dunlop Decl., Exh. 3, pp. 3-4; Exh. 2, pp. 6-8; Exh. 1, pp 6-7.) These terms include a definition of "work time" and how such time is calculated, when employees will be paid overtime and how such overtime is calculated (including alternative provisions applicable to employees who work particular shifts or particular days), detailed provisions governing how employees who are called to work outside their regular work shift will be paid (including alternative provisions for employees called back to duty after the conclusion of their shift but before leaving the facility), and multiple shift differentials for work during specified hours or on weekends. (*See* Dunlop Decl., Exh. 3, pp. 3-4; Exh. 2, pp. 6-8, Exh. 1, pp. 6-7.)

9. The CBA also includes an Article XII, entitled "Holiday Pay," which sets forth an extensive formula for the calculation and administration of holiday pay. (*See* Dunlop Decl., Exh. 3, pp. 7-8; Exh. 2, p. 12; Exh. 1, pp. 12.)

10. The CBA also includes an Article XXV, entitled "Wage Rates," which sets forth a detailed matrix, based on factors such as the employee's division, the employee's job position, the shift worked, and the date of calculation, for the determination of the wage rate applicable to each employee's employment. (*See* Dunlop Decl., Exh. 3, p. 23; Exh. 2, pp. 28-29; Exh. 1, p. 28.) In addition, the CBA includes an appendix, entitled "Appendix -- Job Grades," which further specifies wage rates based on job positions in the various departments of the facility. (See Dunlop Decl., Exh. 3, pp. 29-36; Exh. 2, pp. 34-40; Exh. 1, pp., 34-39.

11. The CBA also includes provisions addressing "call back" pay for employees who are called into work in light of staffing shortages or employee absences. (*See* Dunlop Decl., Exh. 3, p. 3; Exh. 2, p. 8; Exh. 1, p. 7.) These provisions specify that an employee is guaranteed pay for a specific number of working hours if called to work on a shift for which they were not previously scheduled, regardless of whether the actual working time is less. (*See* Dunlop Decl., Exh. 3, p. 3; Exh. 2, p. 8; Exh. 1, p. 7.)

12. Similarly, Article VIII of the CBA guarantees regular, full-time employees, other than maintenance employees, a specific number of working hours over a certain number of days for each week of employment. (*See* Dunlop Decl., Exh. 3, pp. 4-5; Exh. 2, p. 8; Exh. 1, p. 8.) Thus, if employees are not on duty for an average of 36 hours over a period of 6 days for each week of employment, Tyson is required to pay certain employees for the guaranteed minimum number of hours regardless of the fact that actual working time was less. (*See* Dunlop Decl., Exh. 3, p. 4; Exh. 2, p. 8; Exh. 1, p. 8.)

**C.  Jurisdiction and Venue**

13. This Court has jurisdiction over Plaintiffs' federal claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) because they raise a federal question pursuant to 28 U.S.C. § 1331. Although Plaintiffs allege that the Court also has jurisdiction over Plaintiffs'

4

state law claims pursuant to the supplemental jurisdiction provisions of 28 U.S.C. § 1367, Defendant denies Plaintiffs' allegation. (Dkt. #10.)

14. Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391(a) and (c) because a substantial part of the events giving rise to the claims at issue occurred within this judicial district and because Tyson regularly conducts business within this judicial district.

## III. ARGUMENT

### A. Legal Standard

Summary judgment should be granted when the pleadings and evidence, viewed most favorably to the nonmovant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if proof of its existence or nonexistence could alter the case result under the applicable law, and an issue is "genuine" if it is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Preemption Under The LMRA

Section 301 of the LMRA "is a mandate to the federal courts to establish a federal common law to govern disputes arising out of labor contracts." *Vacca v. Viacom Broadcasting of Mo., Inc.*, 875 F.2d 1337, 1341 (8th Cir. 1989). Section 301 of the LMRA preempts state causes of action addressing "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement ...." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211(1985). In other words, Section 301 preempts state law claims "where the resolution of the action requires interpretation of a collective bargaining agreement," or is "'substantially dependent' on the terms of the union contract, or if the state law claim is 'inextricably intertwined' with consideration of the terms of the labor contract." *Vacca*, 875 F.2d at 1342.

5

The preemptive force of § 301 of the LMRA extends not only to standard breach of contract claims, but also to other theories of recovery based on state statutes or common law. *See Behrens v. John Hancock Mut. Life Ins. Co.*, 834 F. Supp. 1468, 1471-72 (D. Neb. 1993) ("'the preemptive effective of § 301 must extend beyond suits alleging contract violations.'") (quoting *Allis-Chalmers Corp.*, 471 U.S. at 210). According to the Supreme Court, "when a state law claim is substantially dependent on an analysis of a collective-bargaining agreement, a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the claim as a state law claim." *Int'l Bhd. Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987). Further, the U.S. Court of Appeals for the Eighth Circuit has recognized that "[t]he preemptive effect of § 301 … extends beyond actions which allege violations of labor contracts. The interests that require the application of a uniform and predictable federal common law to labor contract disputes also require that uniform federal labor law be applied in all actions … where resolution of the action requires interpretation of a collective bargaining agreement." *Vacca*, 875 F.2d at 1342.

### C. Plaintiffs' NWHA and NWPCA Claims Are Preempted By § 301 Because Adjudication Of Those Claims Requires Construction And Interpretation Of The CBA

In the present case, adjudication of Plaintiffs' NWHA and NWPCA claims will necessarily involve construction and interpretation of various provisions of the CBA. Thus the claims are preempted by § 301 of the LMRA.

#### 1. Plaintiffs' NWHA and NWPCA Claims Are Founded On CBA Provisions

In the present case, there is no question that the CBA's provisions addressing "work time," hours of work, premium pay, guaranteed hours, guaranteed call-in pay, and wages are at the heart of Plaintiffs' NWHA and NWPCA claims. Plaintiffs allege that they were not properly compensated for time spent preparing, donning and doffing gear and clothing, cleaning and

6

maintaining equipment, obtaining equipment, sanding and cleaning steels, and other activities related to their job functions, "before and after paid 'gang time,' and during unpaid meal breaks." (Compl., ¶ 3.) Plaintiffs contend that these activities are "work" and were not part of the work time for which Tyson already has compensated them. The work Plaintiffs and putative class members performed for Tyson, as well as the compensation received for that work, were and are expressly governed by the CBA. Accordingly, the starting point for adjudicating Plaintiffs' state law claims is the CBA's definition of "work time," which provides that "Work time will be computed from the time employees on a position commence their work until the time work is stopped at a position, and will be computed to the nearest minute." (*See* Dunlop Decl. Exh. 3, p. 3; Dunlop Decl. Exh. 2, p. 6-7; Dunlop Decl. Exh. 1, p. 6.)

To adjudicate Plaintiffs' NWHA and NWPCA claims the Court would have to determine what activities are covered and not covered under the CBA's definition of "work time," whether Plaintiffs were appropriately paid for time worked under the CBA's definition of "work time," and then determine how the results of these inquiries conform to the "working time" standards of the NWHA, NWPCA, and FLSA. *See Murray v. Tyson Foods, Inc.*, Case No. 08-4001, p. 7 (C.D. Ill. Feb. 9, 2009) (a copy of the District Court's Order is attached hereto as Exhibit B) (finding similar Illinois state law claims "are substantially dependent on an analysis of the CBA, specifically the meaning of the term 'work time.'"). The latter inquiry would include an analysis of those activities not deemed to be compensable working time under the FLSA, such as Section 203(o)'s exclusion from the statute's definition of "hours worked":

> any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o).

7

When the terms of the employer-employee relationship at issue are set forth in an applicable collective bargaining agreement, courts have routinely found claims for unpaid or overtime wages under state wage laws preempted by § 301 of the LMRA.[1]  *See, e.g.*, *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063 (9th Cir. 2000) (state law overtime claim preempted under § 301 of the LMRA because it would require interpretation of collective bargaining agreement); *Robbins v. Iowa Road Builders Co.*, 828 F.2d 1348, 1354 n.4 (8th Cir. 1987) (stating LMRA will preempt the Iowa Wage Payment Collection law to the extent the state law conflicts with the LMRA); *Carter v. Tyson Foods, Inc.*, No. 3:08-CV-209 JVB, at p. 12 (N.D. Ind. Oct. 13, 2009) (a copy of the District Court's Report and Recommendation is attached hereto as Exhibit C; *see also* District Court's Order adopting Report and Recommendation, dated December 3, 2009, attached hereto as Exhibit D) (Indiana Wage Payment Act claim preempted by § 301 of the LMRA where CBA interpretation required); *Murray*, Exh. B, p. 7 (Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act claims preempted by § 301 of the LMRA where CBA interpretation required); *Harrison v. Superior Carpet Installers, Inc.*, IP 01-0206-C-T/K, 2002 U.S. Dist. LEXIS 2844, at **15-16 (S.D. Ind. Jan. 4, 2002) (wage payment act claim preempted by § 301 of the LMRA where CBA interpretation required).  As one court has noted when holding that state wage law claims for donning and doffing were preempted by § 301 of the LMRA:

> In this case, a finder of fact would first have to determine whether Plaintiffs donning and doffing of safety equipment and work clothes constituted work that would entitle them to overtime wages.  Although the CBA may not have expressly defined "work" for the Plaintiffs, it is a matter of federal contract interpretation to determine whether the words of a collective bargaining agreement created implied rights.  Because it is necessary to interpret express or

---

[1] Notably, under the National Labor Relations Act ("NLRA") wages, rates of pay, and hours of employment are all mandatory subjects that must be addressed during the collective bargaining process and in the terms of the parties' collective bargaining agreement.  *See generally, NLRB v. Borg-Warner Corp., Wooster Div.*, 356 U.S. 342 (1958).

8

>   implied terms of the CBAs, state law claims are deemed federal in nature. Further, a fact finder would need to refer to the CBAs to determine the amount of wages that would be due and owed to Plaintiffs. … Accordingly, we find [plaintiffs'] state law claims are preempted by federal labor laws, and therefore, dismissal was warranted.

*Carter*, Exh. C, p. 12 (brackets and ellipsis in original) (citation omitted).

In light of the CBA that is plainly applicable here, it is indisputable that Plaintiffs' NWHA and NWCPA claims cannot be resolved without construction and interpretation of the express provisions of the CBA. Accordingly, Plaintiffs' claims are preempted by § 301 of the LMRA and should be dismissed with prejudice.

The recent decisions in *Carter* and *Murray*, both of which involved donning and doffing claims against Tyson under state law, are worth discussing at length because they are on all fours. *Carter*, Exh. C, p. 16; *Murray*, Exh. B, p. 7. Just as in the present case, Tyson's motion for partial summary judgment in the *Murray* case and motion to dismiss in *Carter* sought dismissal of the plaintiffs' state law wage payment act claims based on the fact that they were preempted by § 301 of the LMRA. Further, the plaintiffs' claims under the state wage payment laws in *Carter* and *Murray* were closely akin to the NWHA and NWPCA claims asserted by Plaintiffs in the present case, and the relevant provisions of the collective bargaining agreements at issue in those cases, including the definition of "work time," were virtually identical to those found in the CBA that governs Plaintiffs' employment at Tyson's Dakota City plant.

Finding the plaintiffs' state wage payment law claims fully preempted by § 301 of the LMRA, the court noted in *Murray*:

>   In this particular case, the Court finds that it would have to resort to the CBA in order to resolve the claims asserted against Tyson. In particular, it would have to determine the meaning of the CBA's definition of "work time."
>
>   Therefore, because the IMWL and IWPCA claims that are substantially dependent on an analysis of the CBA, specifically the meaning of the term "work

time," the Court finds that these claims are preempted by Section 301 of the LMRA.

*Murray*, Exh. B, p. 7.

In *Carter*, the court offered a similar analysis in making its determination that the state law claims were preempted, stating:

> To begin, the Plaintiffs' primary argument, underlying all of their claims, is that they were not adequately compensated for all the work activities performed. As such, the starting point for adjudicating the Plaintiffs' IWPA claim, determining whether compensation was required, would require this Court to interpret the CBA' s definition of "work time," … . In order to adjudicate the Plaintiffs' IWPA claim, this Court would need to first consider and apply the Article [of the CBA] to determine whether the Plaintiffs' alleged unpaid activities fall within the parameters of the Article's provision that "[w]ork time will be computed from the time employees on a position commence their work until the time work is stopped at a position, and will be computed to the nearest minute."

*Carter*, Exh. C, p. 13.

Given the similarities of the factual and legal issues presented in *Carter* and *Murray* and of other federal courts that have determined that similar state law claims were preempted by the LMRA, the Court should dismiss Plaintiffs' NWHA and NWPCA claims in their entirety.

        2.    <u>Plaintiffs' NWHA And NWPCA Claims Are Inextricably Intertwined With The CBA</u>

Moreover, resolution of Plaintiffs' NWHA and NWPCA claims will require the Court to construe and apply numerous other provisions of the CBA to determine, among other things: (1) what collectively bargained wage rate is applicable to each plaintiff; (2) what wage rate was applicable to work performed on a specific date; (3) whether each plaintiff is due a shift differential or other special payment under the terms of the CBA for particular work; (4) whether each plaintiff's work hours qualified them for overtime or premium pay under the CBA's terms; (5) how any such overtime or premium pay should be calculated; (6) whether payment of such premium pay can offset statutory overtime provisions; and (7) whether any hours were paid pursuant to the CBA's guaranteed pay or guaranteed call-in pay provisions that may include

contractual pay for hours not worked which may be offset against any liability for statutory wages employees are entitled to under the FLSA (*see* 29 U.S.C. § 207(h)(2); 29 C.F.R. § 778.201).  Each of these inquiries will entail examination and construction of numerous provisions of the CBA, including terms found in Articles VII, VIII, XII, and XXV.

The extensive construction and examination of these CBA factors, which would be required to resolve Plaintiffs' NWHA and NWPCA claims, demonstrate that the claims are preempted by § 301 of the LMRA.  When presented with cases in which adjudication of state wage law claims would require calculation of wage and overtime pay through analysis and application of the terms of a collective bargaining agreement such as wage rates, shift differentials, and overtime provisions, courts have found such claims preempted by  § 301.  *See, e.g., Atchley v. Heritage Cable Vision Assocs.,* 101 F.3d 495, 500-02 (7th Cir. 1996) (holding claims for unpaid wages under Indiana Wage Payment Act preempted by § 301 where calculation of due date for wages and applicable penalties had to be determined from provisions of the CBA); *Carter*, Exh. C, p.  14 ("given the CBA's extensive provisions regarding the calculation of compensable time, this Court concludes that adjudication of the Plaintiffs' IWPA claim is inextricably linked with the CBA's provisions and will, therefore, require a robust and involved analysis of the CBA by this Court"); *Freundt v. Allied Tube & Conduit Corp.*, No. 06 C 2210, 2007 WL 4219417, *5 (N.D. Ill. Nov. 29, 2007) ("Illinois courts consistently have found that IMWL claims that require the court to examine the collective bargaining agreement to determine the applicable wage rate, and how it is computed, are barred.").  For this reason as well, Plaintiffs' claims are preempted by § 301 of the LMRA and Tyson is entitled to summary judgment on that basis.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant Tyson

summary judgment on Counts I and II of the Complaint.

Respectfully submitted this 14th day of December 2009.

>*/s/ Michael J. Mueller*
>Michael J. Mueller (admitted *pro hac vice*)
>HUNTON & WILLIAMS LLP
>1900 K Street, N.W.
>Washington, D.C. 20006
>Telephone:  202-955-1500
>Facsimile:  202-778-2201
>E-Mail:  mmueller@hunton.com
>
>Steven D. Davidson (NE# 18684)
>Allison D. Balus (NE# 23270)
>Baird Holm LLP
>1500 Woodmen Tower
>Omaha, NE  68102-2068
>Telephone: 402-344-0500
>Facsimile:  402-231-8554
>
>*Attorneys for Defendant*

12

CERTIFICATE OF SERVICE

The undersigned certifies that this 14th day of December 2009, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF filing system, which will serve notice of electronic filing upon the following:

Brian McCafferty
cafstar@aol.com

Michael Hamilton
mhamilton@provostumphrey.com


*/s/ Michael J. Mueller*
Attorney for Defendant