**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**
**OMAHA DIVISION**

| | |
|---|---|
| **JOSE A. GOMEZ, et al.,**<br>**individually and on behalf of a**<br>**class of others similarly situated,** : <br>:<br>:   **Case No. 8:08-cv-00021-JFB-TDT** | |

JOSE A. GOMEZ, et al., :
individually and on behalf of a :
class of others similarly situated, :   **Case No. 8:08-cv-00021-JFB-TDT**
                    :
      **Plaintiffs,** :
   **v.** :
                    :
**TYSON FOODS, INC..** :
**(d/b/a Tyson Fresh Meats, Inc.)** :
                    :
     **Defendant.** :

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

    Plaintiffs Jose Gomez, et al., on behalf of themselves and all others similarly situated, hereby files the following Memorandum of Law in Opposition to Defendant Tyson Foods, Inc.'s (hereafter "Tyson") Motion For Partial Summary Judgment (**Doc. 47**).

## I.    INTRODUCTION

    Defendant Tyson has prematurely filed a dispositive motion requesting that this Court dismiss Plaintiffs' Nebraska statutory state law claims before the parties have even had any realistic chance to engage in the discovery process due to Tyson's (understandable) delay in producing thousands of pages of documents.  Just as recently as a December 18, 2009 status conference with the Court (specifically Magistrate Judge Thalken), Tyson's counsel explained to the Court that it was in the process of reviewing and preparing to produce thousands of pages of documents that

are responsive to Plaintiffs' document requests in this case. Plaintiffs did not quarrel

with this process, and ultimately, the Court, presumably on the basis of Tyson's

understandable delay in producing these documents, extended class discovery until

April 1, 2010 (**Doc. 51**).

Now, in a bit of a figurative "sucker punch", Tyson seeks to take advantage of

this delay in discovery by filing a motion for partial summary judgment on a legal issue

that would be well-served by substantial discovery of both Tyson and third-party United

Food and Commercial Workers Local 222, who is the collective bargaining

representative of the workers at the Tyson Dakota City, NE plant which is the subject of

this lawsuit. Tyson filed this motion well knowing that it has not produced any

responsive documents to Plaintiffs in this case. Even the collective bargaining

agreements that are attached as evidence to Tyson's motion were never produced to

Plaintiffs prior to the filing of Defendant's partial summary judgment motion.

As stated in Plaintiffs' Declaration of Brian McCafferty, made pursuant to Federal

Rule of Civil Procedure 56(f)[1], the parties have not yet taken any depositions in this

matter, and thus, Plaintiffs have not had the opportunity to take the depositions of the

signatories to the collective bargaining agreements that are pertinent to the resolution of

this summary judgment motion. Plaintiffs have not had the opportunity to depose

representatives of either Defendant Tyson or the United Food & Commercial Workers

International Union, Local Union 222 (hereafter "UFCW Local 222").

Those depositions are necessary to determine: (1) the bargaining history that led

---

[1] The Declaration of Brian P. McCafferty, Esquire is attached to Plaintiffs' Index
of Exhibits as **Exhibit "1."**

to the inclusion of certain terms in the collective bargaining agreement; (2) the meaning of certain terms in the collective bargaining agreement in the view of the signatories to the agreement (Tyson and UFCW Local 222); and (3) whether there is any dispute among the parties regarding the meaning of any relevant collective bargaining agreement terms that would then require this Court to "interpret" any collective bargaining agreement terms in order to resolve Plaintiffs' state law claims.

Even assuming that the CBAs identified by Tyson are relevant to Plaintiffs' state law claims (and in Plaintiffs' view they definitely are not), the question of whether Plaintiffs' claims are "substantially dependent" upon or "inextricably intertwined with" the CBA's terms and provisions is intensely factual and improperly resolved now before the parties have even engaged in meaningful merits discovery. Accordingly, pursuant to Federal Rule of Civil Procedure 56(f), Plaintiffs request the opportunity to take some limited discovery prior to the Court ruling on Defendant's Motion for Partial Summary Judgment.

Alternatively, this Court should deny Defendant's Motion for Partial Summary Judgment because Defendant Tyson's motion fails on its merits. Tyson contends that Plaintiffs' state law claims are fully preempted by Section 301 of the Labor-Management Relations Act ("LRMA"), 29 U.S.C. § 185. In order to prevail on its partial summary judgment motion, Tyson bears the heavy burden of overcoming the well-established presumption against LRMA preemption, especially for matters of traditional state concern such as wages. Tyson fails to carry their burden in their partial summary judgment motion, as will be established in this Plaintiffs' Opposition Brief.

Tyson's motion seeking to dismiss Plaintiffs' state law claims relies upon the

fundamentally flawed argument that Plaintiffs' state law claims entirely rely on rights created by a collective bargaining agreement ("CBA") that is referenced nowhere in Plaintiffs' Complaint.  The CBAs in question are between Tyson and a third-party labor union (UFCW Local 222) which is not a party to this case in any manner whatsoever. Essentially, Tyson argues that because Plaintiffs happen to be members of a labor union that is a party to a CBA, then Plaintiffs themselves have no ability to enforce state law based legal rights against their employer.  Tyson basically contends that Plaintiffs have forfeited their rights under state law by joining a labor union.  The United States Supreme Court has repeatedly held that Tyson's argument is wrong.

More specifically, Defendant Tyson contends that this Court should disregard established Eighth Circuit case law and instead follow Tyson's misguided formula of "state law claims + collective bargaining agreement = automatic LMRA preemption."  As Plaintiffs will demonstrate below, Tyson's argument ignores established Eighth Circuit law which requires this Court to engage in a detailed analysis to determine whether a state law claim is "inextricably intertwined" with the terms of a CBA such that LMRA preemption is required.  Hanks v. General Motors, 906 F.2d 341 (8th Cir. 1990).   A state law claim is preempted by the LMRA only if the claim is inextricably intertwined with the terms of a collective bargaining agreement.  Luecke v. Schnuck's Markets, Inc., 85 F.3d 356 (8th Cir. 1996).

Tyson's motion seeking to dismiss Plaintiffs' Nebraska statutory state law claims fails for the same reasons that Tyson correctly did not seek dismissal of Plaintiffs' federal claim under the Fair Labor Standards Act (FLSA).  Controlling Supreme Court precedent holds that CBA's existence does not preempt or preclude workers from

bringing a claim against an employer pursuant to the FLSA.  See, Barrentine v.
Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981).  Leaving Plaintiffs' FLSA claim
unchallenged, Tyson acknowledges that there is a fundamental difference between
collectively bargained for contract-based rights which should be vindicated through a
grievance/arbitration system, and non-waivable individual and independent statute-
based rights which are protected by state law and property vindicated by those
individuals in court.

Just as the protections of the FLSA to ensure that workers are not cheated out of
overtime pay cannot be waived by a labor union, Plaintiffs' individual rights under
Nebraska state statutory law cannot be waived by the action of a labor union and/or
employer and cannot be waived by a CBA.  There has been no assertion by Tyson (or
by Plaintiffs) that Plaintiffs' FLSA claims require interpretation of a CBA; likewise,
Plaintiffs' Nebraska state law statutory claims require no interpretation of a CBA.
Tyson's recitation of various provisions of its CBA with UFCW Local 222 are just as
irrelevant to Plaintiffs' Nebraska state law statutory claims as they are to Plaintiffs'
unchallenged FLSA claims.

It should also be noted that Plaintiffs' Complaint is entirely bereft of any citation
to, mention or express or implied reference to any CBA between Tyson and UFCW
Local 222.  Instead, Plaintiffs' Complaint focuses on the individual (but similar)
employment rights of the Plaintiffs and the individual (but similar) employment
relationships that each plaintiff has with its employer Tyson.  Controlling Supreme Court
precedent advises that the existence of a CBA does not eradicate those individualized
employment relationships, nor does it eradicate the employer's state-law based legal

duties and the employees' state-law based legal rights arising from those duties.  See,

Caterpillar, Inc. v. Williams, 482 U.S. 386, 394-95 (1987)(no § 301 preemption where

"[r]espondents allege that Caterpillar has entered into a breached individual

employment contracts with them.  Section 301 says nothing about the content and

validity of individual employment contracts.").

     In order to force the preemption issue into the discussion in this case, Defendant

Tyson (and not the Plaintiffs) introduces the CBA as evidence in this case and cites to

many of its provisions.  Nonetheless. Defendant Tyson has failed to establish that the

Court would need to interpret, as opposed to merely refer to for the calculation of

damages, the CBA referenced in its motion.  Defendant Tyson does not mention any

disagreements or disputes between Tyson and UFCW Local 222 (or the Plaintiffs) in

their respective views of any of the terms of the CBAs that Tyson references.  Tyson's

preemption argument, based on this CBA, is essentially a "straw man" which Tyson

drags into this case unilaterally and then claims that this CBA creates "interpretation"

problems that preempt Plaintiffs' state law claims.  Conversely, Plaintiffs stated in their

Complaint (by not mentioning or referencing the CBA in any manner) and now state

again, that their state law claims in no way rely upon the CBA for any substantive

provision.  At most, this Court might need to merely refer to the CBA for wage rates and

other perfunctory information that solely relate to damages rather than the merits of

Plaintiffs' state law claims.

     Plaintiffs' state law claims are not based upon any CBA in any way.  Their state

law claims are based upon individual employment rights and relationships that are

created by state law and not by CBA or federal labor law, and accordingly they are not

preempted by federal law.  As the Supreme Court stated in <u>Caterpillar</u>, 482 U.S. at 396,

"a plaintiff covered by a collective bargaining agreement is permitted to assert legal

rights <u>independent</u> of that agreement, including state-law contract rights, so long as the

contract relied upon is not a collective bargaining agreement." (Emphasis in the

original).

## II.    PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to NE Civ R Rule 56.1(b)(1), Plaintiffs submit the following response to

the Defendant's Statement Of Material Facts:

1.  Plaintiffs' Complaint asserts claims on behalf of themselves and a putative

class of individuals identified as "current and former production and support employees

of Tyson, at its beef processing facility in Dakota City, Nebraska . . . . (Compl. ¶ 1)

**RESPONSE:  This fact is not in dispute.**

2.  The claims asserted in Plaintiffs' Complaint include claims under the NWHA

(Compl. ¶¶ 30-35) and under the NWPCA (Compl. ¶¶ 36-40)

**RESPONSE:  This fact is not in dispute.**

3.  The Complaint was filed on January 16, 2008.  Because the applicable

limitations period on the Nebraska state claims is four years, R.R.S. Neb. § 25-206, the

earliest state-law claims in this case are dated January 16, 2004 ("the relevant time

period").

**RESPONSE:  This fact is not in dispute.**

4.  During the relevant time period, Plaintiffs and other production and support

workers at Tyson's Dakota City, Nebraska facility have been represented by the United

Food & Commercial Workers International Union, ("UFCW"), and the terms of their employment have been specifically governed by a Labor Agreement entered into between Tyson and the UFCW (the "CBA").  (See Declaration of Tom Dunlop ("Dunlop Decl."), attached hereto as Exhibit A, ¶ 4.)

**RESPONSE: Plaintiffs do not dispute that they have been represented by the UFCW at all times relevant to this lawsuit.  They also do not dispute that Defendant Tyson and the UFCW have entered into CBAs that have covered the relevant time period in this matter.  Plaintiffs do dispute the implication that these CBAs cover all terms of employment; but rather the CBAs cover the terms of employment that are specifically and expressly set forth in each particular CBA.**

5.  On August 9, 1999, following extensive collective bargaining negotiations, the UFCW entered into a Labor Agreement with Tyson's predecessor, IBP, inc. [sic] ("IBP"), setting forth various terms and conditions of employment for represented employees of IBP at its Dakota City, Nebraska facility.  (See Dunlop Decl. ¶ 5., Exh. 1.)   The Labor Agreement was effective until August 8, 2004.  (See Dunlop Decl. ¶ 5., Exh. 1., p. 33)

**RESPONSE:  These facts are not in dispute.**

6.  Following Tyson's acquisition of IBP and further collective bargaining negotiations between Tyson and UFCW, on August 9, 2004, a revised and amended version of the August 9, 1999, Labor Agreement was adopted by both Tyson and the UFCW.  (See Dunlop Decl. ¶ 6., Exh. 2.)   The Labor Agreement was effective until August 9, 2000.  (See Dunlop Decl. ¶ 6., Exh. 2., p. 33)

**RESPONSE:  These facts are not in dispute.**

7.  Tyson and UFCW again entered into collective bargaining negotiations and, on August 10, 2009, a revised and amended version of the August 9, 2004, Labor Agreement was adopted by both Tyson and the UFCW (the "CBA").  (See Dunlop Decl. ¶ 7., Exh. 3.)  The CBA, which currently remains in force, is effective until February 2, 2014.  (See Dunlop Decl. ¶ 7., Exh. 3., p. 28).

**RESPONSE:  These facts are not in dispute.**

8.  The CBA contains an extensive Article VII, entitled "Hours Of Work," which details myriad terms and conditions relevant to the working hours and work schedules of employees at the Dakota City facility.  These terms include a definition of "work time" and how such time is calculated, when employees will be paid overtime and how such overtime is calculated (including alternate provisions applicable to employees who work particular shifts or particular days), detailed provisions governing how employees who are called to work outside their regular work shift will be paid (including alternate provisions for employees called back to duty after the conclusion of their shift but before leaving the facility), and multiple shift differentials for work during specified hours or on weekends.  (See Dunlop Decl., Exh. 3., pp. 3-4; Exh. 2., pp. 6-8; Exh. 1., pp. 6-7).

**RESPONSE:  These facts are not in dispute.**

9.  The CBA also includes an Article XII, entitled "Holiday Pay," which sets forth an extensive formula for the calculation and administration of holiday pay.  (See Dunlop Decl., Exh. 3., pp. 7-8; Exh. 2., p. 12; Exh. 1., p. 12).

**RESPONSE: Plaintiffs dispute that these facts are in any way material to either Plaintiffs' Nebraska state law claims or to the partial summary judgment**

motion before the Court.  Plaintiffs' claims do not involve "holiday pay" in any possible manner.

10.  The CBA also includes an Article XXV, entitled "Wage Rates," which sets forth a detailed matrix, based on factors such as the employee's division, the employee's job position, the shift worked, and the date of calculation, for the determination of the wage rate applicable to each employee's employment.  (See Dunlop Decl., Exh. 3., p. 23; Exh. 2., pp. 28-29; Exh. 1., p. 28).   In addition, the CBA includes an appendix, entitled "Appendix - - Job Grades," which further specifies wage rates based on job positions in the various departments of the facility.  (See Dunlop Decl., Exh. 3., pp. 29-36; Exh. 2., pp. 34-40; Exh. 1., p. 34-39).

RESPONSE:  These facts are not in dispute.

11.  The CBA also includes provisions addressing "call back" pay for employees who are called into work in light of staffing shortages or employee absences.  (See Dunlop Decl., Exh. 3., p. 3; Exh. 2., p. 8; Exh. 1., p. 7).  These provisions specify that an employee is guaranteed pay for a specific number of working hours if called to work on a shift for which they were not previously scheduled, regardless of whether the actual working time is less.   (See Dunlop Decl., Exh. 3., p. 3; Exh. 2., p. 8; Exh. 1., p. 7).

RESPONSE: Plaintiffs dispute that these facts are in any way material to either Plaintiffs' Nebraska state law claims or to the partial summary judgment motion before the Court.  Plaintiffs' claims do not involve "call back pay" in any possible manner.

-10-

12.   Similarly, Article VIII of the CBA guarantees regular, full-time employees, other than maintenance employees, a specific number of working hours over a certain number of days for each week of employment.  (See Dunlop Decl., Exh. 3., pp. 4-5; Exh. 2., p. 8; Exh. 1., p. 8).  Thus, if employees are not on duty for an average of 36 hours over a period of 6 days for each week of employment, Tyson is required to pay certain employees for the guaranteed minimum number of hours regardless of the fact that actual working time was less.   (See Dunlop Decl., Exh. 3., p. 4; Exh. 2., p. 8; Exh. 1., p. 8).

**RESPONSE: Plaintiffs dispute that these facts are in any way material to either Plaintiffs' Nebraska state law claims or to the partial summary judgment motion before the Court.  Plaintiffs' claims do not involve guaranteed minimum hours in any possible manner.  Moreover, Tyson has provided no evidence whatsoever in this motion that it has ever paid any employees pursuant to this so-called minimum hours guarantee.**

13.   This Court has jurisdiction over Plaintiffs' federal claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) because they raise a federal question pursuant to 28 U.S.C. § 1331.  Although Plaintiffs allege that the Court also has jurisdiction over Plaintiffs' state law claims pursuant to the supplemental jurisdiction provisions of 28 U.S.C. § 1367, Defendant denies Plaintiffs' allegation.

**RESPONSE: Plaintiffs dispute this statement and have asserted that this Court has proper jurisdiction over both Plaintiffs' federal and state law claims.**

14.   Venue is proper in this federal judicial district pursuant to 28 U.S.C. §

-11-

1391(a) and ©) because a substantial part of the events giving rise to the claims at issue occurred within this judicial district and because Tyson regularly conducts business within this judicial district.

     **RESPONSE:  These facts are not in dispute; though Plaintiffs fail to see the relevance of these facts to Defendant's motion.**

III.    ARGUMENT

    A.    **Summary Judgment Standards**

    It is well settled that summary judgment is only appropriate where the record presents no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the uncontested facts.  Fed. R. Civ. P. 56©).  This court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact question is "material" if it would "effect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  Under this standard, the Court must draw all permissible inferences from the underlying facts in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

    B.    **Tyson's Motion Is Premature And Adjudication Of It Should Be Continued Pursuant To Rule 56(f) Because The Parties Have Not Had Any Realistic Opportunity To Engage In Discovery In This Matter.**

    Initially, Plaintiffs respectfully request, pursuant to Federal Rule of Civil Procedure 56(f), that this Court deny Defendant's motion or grant a continuance to

-12-

permit Plaintiffs to take the Rule 30(b)(6) depositions of both Tyson and UFCW Local 222, who are the signatory parties to the CBA's introduced by Tyson into this matter via their partial summary judgment motion[2]. Rule 56(f) provides: "**When Affidavits Are Unavailable**. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." The procedural situation now before this Court is tailor made for application of Rule 56(f).

It should be clear to this Court that Plaintiffs have not had any realistic opportunity to engage in discovery in this matter necessary to oppose Defendant Tyson's motion. This issue was specifically discussed at a telephone planning conference with Magistrate Judge Thalken as recently as December 18, 2009, during which counsel for Tyson explained that Tyson was still in the process of reviewing and preparing to produce thousands of pages of documents that are responsive to Plaintiffs' document requests. Based on that planning conference, Magistrate Judge Thalken issued a December 21, 2009 Order (**Doc. 51**) moving back the class discovery deadline to April 1, 2010. Accordingly, it would be difficult for Tyson to credibly contend that Plaintiffs should have already conducted the discovery they are now requesting pursuant to Rule 56(f), since Tyson's delay in producing documents, albeit an understandable delay given the volume of those documents, is at the crux of Plaintiffs'

---

[2] Tyson had not produced any of these documents to Plaintiffs prior to filing its Motion For Partial Summary Judgment.

inability to take the depositions necessary to contest this partial summary judgment motion.

Plaintiffs' request to dismiss Tyson's motion or continue the consideration of Tyson's Motion For Summary Judgment pursuant to Rule 56(f) is also supported by ample case authority.  Under the Federal Rules of Civil Procedure, a party must be afforded adequate time for general discovery before being required to respond to a motion for summary judgment.  Metropolitan Life Ins. Co v. Bancorp Services, L.L.C., 527 F.3d 1330 (8th Cir. 2008).  When there has been no adequate initial opportunity for discovery, a strict showing of necessity and diligence that is otherwise required for a request for additional discovery under the summary judgment rule does not apply.  Id. Moreover, if facts are solely in possession of the moving party, continuance of motion for summary judgment for purposes of discovery should be granted almost as a matter of course.  Lunderstadt v. Colafella, 885 F.2d 66 (3d. Cir. 1989).

When a summary judgment motion is filed very early in the litigation, before a realistic opportunity for discovery, courts generally grant Rule 56(f) continuances freely and summary judgment should be refused as a matter of course with exceptions permitted in only rare cases.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5 (1986); Burlington Northern Santa Fe Rail Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation, 323 F.3d 767, 773-74 (9th Cir. 2003); and Been v. O.K. Industries, Inc. 495 F.3d 1217, 1235 (10th Cir. 2007).

As stated in Plaintiffs' Declaration of Brian McCafferty, made pursuant to Federal Rule of Civil Procedure 56(f), the parties have not yet taken any depositions in this matter, and thus, Plaintiffs have not had the opportunity to take the depositions of the

signatories to the collective bargaining agreement that is pertinent to the resolution of this summary judgment motion, those being Defendant Tyson or UFCW Local 222. See, **Exhibit "1"** at ¶ 2.   Plaintiffs only need a period of 30-40 days from the time Tyson produces its documents to conduct the discovery they need to properly and fully respond to Defendant Tyson's motion.  See, **Exhibit "1"** at ¶ 5.

With this discovery, Plaintiffs expect to establish that: (1) the terms of the collective bargaining agreement are clearly understood by Tyson and the UFCW Local 222 such that there is no reasonable dispute regarding the meaning of those terms; (2) neither Tyson nor UFCW Local 222 has raised any disputes in the past regarding the meaning of any relevant collective bargaining terms; and (3) the only need this Court will have to refer to the collective bargaining agreement is to obtain wage rates that are necessary to calculate damages.  See, **Exhibit "1"** at ¶ 5.  The establishment of any of these facts would likely lead to the legal conclusion that Plaintiffs' state law claims are not preempted.  Wisconsin Central, Ltd. v. Shannon, 539 F.3d 751, 758 (7th Cir. 2008).[3]

---

[3] Plaintiffs' assertion is that discovery is necessary for this Court to conduct the case-by case factual analysis required to determine the extent to which a state law claim will require interpretation of a collective bargaining agreement.  In Gonzales v. Farmington Foods, Inc., 296 F.Supp.2d 912 (N.D. Ill. 2003), which is a "donning and doffing" case involving a union facility, similar to the case at bar, the district court, in entertaining defendant's motion for summary judgment that plaintiff's state law claims were preempted, engaged in a lengthy factual analysis that included: (1) collective bargaining agreements;  (2) collective bargaining proposals; (3) numerous depositions of plaintiffs and defense witnesses; (4) time keeping records from the defendant's electronic time keeping systems, including detailed reports of plaintiffs' punch times; and (5) expert testimony and time studies conducted by the parties' respective experts . See, Gonzales, 296 F.Supp.2d at 915-922.  Accordingly, while Plaintiffs would assert that the Gonzales decision was wrongly decided on the preemption issue and should not be followed by this Court, Plaintiffs here would not dispute that the Gonzales court had more than a sufficient amount of evidence on hand in order to make its preemption decision.

Accordingly, Plaintiffs respectfully request that this Court deny or continue the adjudication of Defendant Tyson's motion to permit Plaintiffs to take the discovery requested in their Rule 56(f) Declaration.

**C.     Tyson Has Failed To Establish The Necessary Factual Record To Support An Argument That  Interpretation Of The CBA Is Necessary To Adjudicate Plaintiffs' State Law Claims.**

Alternatively, if the Court were to refuse Plaintiffs' request pursuant to Rule 56(f), then this Court should deny Defendant's motion for summary judgment in all respects because Defendant has not established a factual record that would support their argument that adjudicating Plaintiffs' state law claims would require this Court to interpret terms of the collective bargaining agreements which Tyson refers to in its motion.

It is well established that not every dispute that tangentially involves a provision of a collective bargaining agreement is preempted by federal law.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).  Preemption will not occur if a dispute merely references or requires consultation of a collective bargaining agreement.  Livadas v. Bradshaw, 512 U.S. 107 (1994).

Courts have identified at least three scenarios where a collective bargaining agreement may be implicated as part of a state law cause of action but preemption of the claim is unnecessary.  These examples include: (1) when the particular contractual provision is so clear as to preclude all possible dispute over its meaning; (2) if the parties do not dispute the interpretation of the relevant collective bargaining agreement provisions; or (3) where reference to the collective bargaining agreement is only

necessary for computing damages.  <u>Wisconsin Central, Ltd. v. Shannon</u>, 539 F.3d 751, 758 (7th Cir. 2008).  Thus, where a state law remedy is independent of a collective bargaining agreement in the sense that resolution of the state law claim does not require construction of the collective bargaining agreement, LMRA preemption is inapplicable; this principle applies even if analysis of the same set of facts would be required to resolve a dispute arising directly under a collective bargaining agreement as would be needed to decide a dispute under state law.  <u>Johnson v. Anheuser Busch, Inc.</u>, 876 F.2d 620 (8th Cir. 1989).

While Defendant Tyson has identified several provisions within the CBA that <u>Tyson itself</u> considers relevant to Plaintiffs' Nebraska state law claims, Tyson has failed to identify or submit evidence to the effect that: (1) that the relevant provisions of the CBAs are so unclear that interpretation of those provisions will be absolutely necessary to adjudicate Plaintiffs' state law claims; or (2) that Defendant Tyson and the UFCW (or even the Plaintiffs themselves) dispute the interpretation of any relevant collective bargaining agreement provision; or (3) that reference to the collective bargaining agreement is necessary beyond the ministerial task of using the CBA to assist in calculating damages.

In support of this motion, Tyson only submits as evidence the last three collective bargaining agreements and one very short Tyson employee declaration which merely explains that these agreements pertain to the Dakota City, Nebraska meat processing facility involved in this matter.  Tyson does not attach any declarations from the UFCW which would support a contention that the UFCW disputes the terms of the CBAs. Tyson also does not demonstrate through a sample plaintiff's claim how adjudication of

-17-

that specific plaintiff's state law claim would require interpretation of the CBA.

As stated previously, for example in the <u>Gonzales</u> case, the Northern District of Illinois had the benefit of the following evidence in making its decision on preemption in a similar "donning and doffing" case involving Illinois statutory state law claims that are similar to the Nebraska state law claims posed by Plaintiffs here:  (1) collective bargaining agreements;  (2) collective bargaining proposals; (3) numerous depositions of plaintiffs and defense witnesses; (4) time keeping records from the defendant's electronic time keeping systems, including detailed reports of plaintiffs' punch times; and (5) expert testimony and time studies conducted by the parties' respective experts . <u>See</u>, <u>Gonzales</u>, 296 F.Supp.2d at 915-922.  Plaintiffs are not contending that a court must necessarily have all of these pieces of factual evidence to make a determination on the preemption issue, but a comparison between <u>Gonzales</u> and the meager evidence that Tyson presents here establishes that Tyson falls far short of establishing that no genuine issues of fact exist and it should prevail as a clear matter of law.

**D.    Defendants' Preemption Argument Exceeds The Purposes Of Section 301 Preemption.**

In attempting to impermissibly expand Section 301's preemptive reach, Defendant Tyson ignores the established purpose of Section 301 preemption, which is the creation of uniform and predictable federal law governing CBAs. See, <u>Lueck</u>, 471 U.S. at 210-11.  Plaintiffs' Nebraska state law claims pose no danger to impinging upon the uniformity of federal labor law.  Plaintiffs' state law claims are independent of any CBA.  Plaintiffs do not seek to void or alter the terms of any CBA agreement and in particular the CBAs between Defendant Tyson and UFCW Local 222.  Plaintiffs' state

-18-

law claims do not require the Court to interpret disputed CBA terms or delve into the collective bargaining process that led to any specific terms in the CBA.

This Court should observe the rationale that courts have repeatedly used in holding that Section 301 does not preempt FLSA claims.  See, e.g., <u>Barrantine</u>, 450 U.S. 728 (no preemption of FLSA claims even though plaintiffs had first brought their wage claims in collective bargaining grievance and lost).  Confronting that rationale exposes the fallacy of Defendant Tyson's basic premise that once a CBA is in place, all disputes of any kind between an employer and individual employees must be governed by that CBA.  In an analysis equally applicable to Plaintiffs' Nebraska state law claims, the Supreme Court advises otherwise in <u>Barrentine</u>:

> Not all disputes between an employee and his employer are suited for binding arbitration in accordance with the procedures established by collective bargaining.  While courts should defer to an arbitral decision where an employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out a statute designed to provide minimum substantive guarantees to individual workers.

<u>Barrentine</u>, 450 U.S. at 737.  One key element of <u>Barrentine</u>'s rationale for finding no Section 301 preemption of FLSA claims was the Court's recognition of different purposes of the LMRA and the FLSA.  The LRMA "was designed to minimize industrial strife and to improve working conditions by encouraging employees to promote their interests collectively."  Id., at 739.  In contrast, the Supreme Court stated, the FLSA "was designed to give specific minimum protections to individual workers . . . . " <u>Id</u>.

Likewise, Plaintiffs' Nebraska state law claims are based upon statutory provisions that provide individualized protections, just like the FLSA's protections.

These Nebraska state law provisions apply regardless of whether or not a worker is subject to a CBA, just like the FLSA's protections.  As this Court previously held in Lopez v. Tyson Foods, Inc., 2008 WL 3485289 *11 (D. Neb. 2008), the protections of the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232, do not require a written agreement between employer and employee, and instead can be based on an implied agreement, "such agreement need only be that the defendant did 'agree to pay plaintiffs at the appropriate rate of pay for the duties they were performing." Lopez, *11, quoting, Hawkins v. City of Omaha, 627 N.W. 2d 118, 130 (Neb. 2001).  In sum, Plaintiffs' Nebraska state law claims would exist even if Plaintiffs were not members of a collective bargaining unit and there were no CBAs between Tyson and UFCW Local 222.

Further examination of the Barrentine rationale compels the conclusion that Section 301 cannot preempt Plaintiffs' Nebraska state law statutory claims any more than it cannot preempt Plaintiffs' FLSA claims.  In Barrentine, the Supreme Court noted "its decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act.  Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Barrentine, 450 U.S. at 740.  Like the FLSA's purpose, the purpose of the Nebraska state statutes invoked by Plaintiffs here is to protect individual workers' rights to prompt and timely payment in full.  Defendant Tyson cannot unilaterally nullify those rights by pointing to a CBA, just as they cannot nullify Plaintiffs' analogous FLSA rights.

-20-

## IV.    CONCLUSION

For the foregoing reasons, this Court should: (1) deny or postpone ruling upon Defendant's partial summary judgment motion pursuant to Federal Rule of Civil Procedure 56(f), or alternatively (2) deny Defendant Tyson's motion in all respects on its merits.

Respectfully submitted,

/s/ Brian P. McCafferty

_____

Brian P. McCafferty, Esq.
Kenney & McCafferty
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
(610) 940-0327
(610) 940-0284 (facsimile)
E-Mail: cafstar@aol.com

Michael Hamilton
Provost Umphrey Law Firm, LLP
One Burton Hills Blvd., Suite 380
Nashville, TN 37215
(615) 242-0199
(615) 256-5922 (facsimile)
E-Mail: mhamilton@provostumphrey.com

Attorneys For Plaintiffs

Dated: January 7, 2010

## CERTIFICATE OF SERVICE

I, Brian P. McCafferty, hereby certify that a true and correct copy of the foregoing Plaintiffs' Opposition To Defendant Tyson's Motion For Partial Summary Judgment has been served upon counsel for Defendant Tyson Foods, Inc., in accordance with the Local Rules of Civil Procedure via the Court's electronic filing CM/ECF system on January 7, 2010.

/s/ Brian P. McCafferty

_____

Brian P. McCafferty, Esq.