IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
OMAHA DIVISION

| | |
|---|---|
| JOSE A. GOMEZ, JULIANA REYES, JUAN M. CRUZ, TED MCDONALD, CECILIA ORTIZ and MARIO CRUZ, on behalf themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TYSON FOODS, INC.<br>(d/b/a Tyson Fresh Meats),<br><br>Defendant. | CASE NO. 8:08-cv-00021-JFB-TDT |

## DEFENDANT'S REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.   INTRODUCTION

The crux of Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment (Dkt. # 52) is Plaintiffs' claim that discovery is needed to determine whether Plaintiffs' state law claims[1] are preempted by § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. Given that Plaintiffs failed to mention their purported need for discovery pursuant to Fed. R. Civ. P. 56(f) during the parties' December 18, 2009 status conference with the Court, during which the instant motion was pending, Plaintiffs' argument appears to be no more than a post hoc litigation strategy. Moreover, Plaintiffs' arguments rest on a strained reading of inapplicable case law and ignore numerous cases in which courts have determined – without the assistance of

---

[1] Plaintiffs' state law claims are brought pursuant to the Nebraska Wage and Hour Act ("NWHA"), R.R.S. Neb. §§ 48-1201-1209, and the Nebraska Wage Payment and Collection Act ("NWPCA"), R.R.S. Neb. §§ 48-1228-1232.

formal discovery – that claims identical to those raised by Plaintiffs are preempted by the LMRA.

Plaintiffs cannot escape the fact that adjudication of their state law claims will unavoidably require detailed assessment and interpretation of the collective bargaining agreement ("CBA") governing the terms of their employment with Defendant. Plaintiffs' argument that their state law claims are based on individual employment relationships does not obviate this fact. Nor are Plaintiffs' state law claims saved by resurrection of their argument that their Fair Labor Standards Act claim is not preempted, as that argument has been expressly rejected by the Supreme Court and other federal courts, including courts in the Eighth Circuit.

## II.     ARGUMENT

### A.     Discovery Is Unnecessary To Determine Whether Plaintiffs' State Law Claims Are Preempted.

Plaintiffs disingenuously characterize Defendant's Motion for Partial Summary Judgment as a "figurative 'sucker punch'" that attempts to take advantage of the discovery extension that the Court granted during a telephonic status conference on December 18, 2009. To the contrary, Defendant had filed its motion on December 14, 2009, four days *before* the status conference. Plaintiffs had ample time to review the motion prior to the status conference and thus cannot complain surprise. Plaintiffs could have raised their purported need for Rule 56(f) discovery during the status conference, yet chose not to, instead focusing exclusively on an extension of Rule 23 class discovery and the deadlines for class certification briefing. By their silence, Plaintiffs have implicitly conceded that no discovery is necessary to respond to Defendant's motion. Their sudden about-face thus appears to be motivated solely by tactical considerations, rather than a genuine need for information.

Plaintiffs' assertion that they are in the dark about the provisions of the collective bargaining agreements because they had not been produced in discovery and are agreements between Tyson and a third party are likewise unavailing. (Pls.' Opp. at 2, 4.) First, it is common knowledge that the primary purposes of a union is to serve as the representative of the employee workforce in determining and enforcing the terms and conditions of their employment. Second, three of the six Plaintiffs, Jose A. Gomez, Ted McDonald, and Cecilia Ortiz, are union stewards. As union stewards, their very job is to serve as conduits of information between the United Food & Commercial Workers International Union ("UFCW" or the "Union") leadership and the rank-and-file workers and to monitor and enforce the provisions of the collective bargaining agreement to ensure compliance. *See* Declaration of Tom Dunlop ("Dunlop Decl."), attached hereto as Exhibit A, ¶ 6. Plaintiffs' claims that they are removed from the Union and unaware of the terms of the CBA are thus disingenuous – it strains credulity to suggest that three union stewards would be unfamiliar with the terms of the collective bargaining agreements that they are charged with enforcing. In addition, the Union has been directly involved with and supporting Plaintiffs' claims in this lawsuit. On November 30, 2007, the Union held a meeting for Dakota City facility employees, which the Union advertised in fliers announcing the purpose of the meeting as to inform Tyson employees of this lawsuit and tell them how to join as plaintiffs. *See* Dunlop Decl. ¶¶ 9 and 10, Exh. 1. In other words, Plaintiffs' counsel clearly already have a relationship with the Union regarding this lawsuit. Quite obviously, Plaintiffs are in a position to talk to the Union and the stewards about the CBA, and they could provide any declarations that Plaintiffs' counsel believe might be pertinent to the pending motion without having to pursue formal discovery.

Plaintiffs cite *Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751 (7th Cir. 2008), for the proposition that discovery may determine that the terms of the parties' CBA are undisputed and

the Court will only have to consider the CBA to calculate damages.  Plaintiffs' reliance on *Wisconsin Central* is misplaced.  In *Wisconsin Central*, the Seventh Circuit declined to decide whether an Illinois Department of Labor ("IDOL") *investigation* into the payment practices of a company should be halted because it was preempted by the Railway Labor Act ("RLA"), finding the dispute not ripe for adjudication.  The court stated, "the IDOL's investigation of WCL's overtime practices has not progressed to a point where it can be determined what dispute, if any, the parties will have over the CBA's terms." 539 F.3d at 760.  In contrast, here the parties directly dispute the meaning of various CBA terms that have a direct bearing on the adjudication of Plaintiffs' state law claims.  *See* Def.'s Mem. Supp. Mot. Part. Summ. J. (Dkt. # 48) at 7-11.  The CBA's definition of "work time" is at the heart of Plaintiffs' state law claims.  Among other things, the Court will have to determine what activities are covered and not covered under the CBA's definition of "work time," whether Plaintiffs were appropriately paid for time worked under the CBA's definition of "work time," and then determine how the results of these inquiries conform to the "working time" standards of the NWHA and NWPCA.  (*Id.* at 6-10.)  No amount of discovery will avoid the need for judicial resolution of these issues, and thus discovery will not change the conclusion that Plaintiffs' state law claims are preempted by the LMRA.

      Federal courts "consistently have found that state wage claims that require the court to examine the collective bargaining agreement to determine the applicable wage rate, and how it is computed, are barred."  *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417, *5 (N.D. Ill. Nov. 29, 2007) (holding state statutory wage claim preempted by LMRA).  This is true even where one party claims that the terms of the collective bargaining agreement at issue are "not disputed." *See, e.g., Carter v. Tyson Foods, Inc.,* No. 3:08-CV-209 JVB, 2009 U.S. Dist. LEXIS 116275, at *21 (N.D. Ind. Oct. 13, 2009) (rejecting plaintiffs' argument that "because the CBA's terms are not disputed, applying the CBA's terms to the facts in this case would be purely

4

ministerial" and finding Indiana Wage Payment Act claim preempted by LMRA); *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 935-36 (N.D. Ill. 2003) (state statutory wage claims preempted by § 301 even when plaintiffs claimed that application of collective bargaining overtime provisions was "straightforward").

This case, involving disputed terms of the parties' CBA and overtime calculations referencing a detailed CBA wage rate matrix and overtime provisions, is no different than the many cases finding, without the need for extensive discovery, that state wage payment claims almost identical to the Plaintiffs' NWHA and NWCPA claims are preempted by the LMRA. In fact, Plaintiffs' argument that discovery is needed to determine whether the parties "dispute" certain CBA provisions confirms that the state law claims are inextricably intertwined with an analysis of the parties' CBA and thus preempted. *See, e.g.*, *Carter*, 2009 U.S. Dist. LEXIS 116275, at *20 (Indiana Wage Payment Act claim preempted by LMRA where assessment would require examination of "numerous provisions" of the CBA "that define work time and delineate the means for calculating applicable wage and overtime rates).

Plaintiffs also argue that Rule 56(f) discovery is necessary because in *one* of the cases Defendant cited (*Gonzalez*) discovery had already been conducted. *See* Pls.' Opp. at 15 n. 3. Plaintiffs' argument is a distinction without a difference. Nothing in *Gonzalez* holds that discovery *must* be conducted prior to considering the question of preemption. Moreover, Plaintiffs' argument ignores the virtually identical cases cited by Defendant in which such claims were held preempted by the LMRA *prior to* the commencement of discovery. *See, e.g.*, *Carter*, 2009 U.S. Dist. LEXIS 116275, at **22, 26 (granting motion to dismiss state law claims as preempted by LMRA without any discovery); *Murray v. Tyson Foods, Inc.*, No. 08-4001, 2009 U.S. Dist. LEXIS 9278, at **8-10 (C.D. Ill. Feb. 9, 2009) (granting summary judgment as to state law claims as preempted by LMRA prior to any discovery); *Lopez v. Smurfit-Stone*

5

*Container Corp.*, No. 02 C 7347, 2003 U.S. Dist. LEXIS 2180, at *2 (N.D. Ill. Feb. 10, 2003) (granting motion to dismiss Illinois Wage Payment Collection Act as preempted by LMRA without any discovery). In fact, in *Murray*, the plaintiffs presented the identical argument that "because the parties have not had any chance to engage in the discovery process, Tyson's motion is premature," and argued that depositions were "necessary to determine: (1) the bargaining history that led to the inclusion of certain terms in the CBA; (2) the meaning of certain terms in the CBA in the view of the signatories to the agreement; [and] (3) "whether there is a dispute in the interpretation of the relevant CBA terms. …" *Murray*, 2009 U.S. Dist. LEXIS 9278, at **9-10. The court rejected this argument and found that the state law claims were preempted.

### B.    CBA Interpretation Is Required To Adjudicate Plaintiffs' State Law Claims.

Plaintiffs argue that their state law claims are not preempted by the LMRA because they only require reference to the CBA, not interpretation of its terms. (*See* Pls.' Opp. at 6.) Plaintiffs do not address Defendant's demonstration of how many CBA provisions will require judicial interpretation to adjudicate Plaintiffs' state law claims. (*See* Def.'s Mem. Supp. Mot. Part. Summ. J. at 7-11.) Rather, Plaintiffs make the conclusory assertion that "Defendant Tyson has failed to establish that the Court would need to <u>interpret</u>, as opposed to merely refer to for the calculation of damages, the CBA referenced in its motion." (*See* Pls.' Opp. at 6.) Plaintiffs are wrong.[2]

---

[2] Plaintiffs claim that "Tyson's argument [for preemption] ignores established Eighth Circuit law, which requires this Court to engage in a detailed analysis to determine whether a state law claim is 'inextricably intertwined' with the terms of a CBA such that LMRA preemption is required." (Pls.' Opp. at 4.) To the contrary, Defendant both recognized its burden to establish preemption by showing that a state law claim is inextricably intertwined with the terms of the CBA and proffered adequate evidence to meet that burden in its memorandum. (*See* Def.'s Mem. Supp. Mot. Part. Summ. J. at 10-12.)

For example, Plaintiffs allege that "Defendant Tyson has failed to pay Plaintiffs their minimum hourly rate of pay for all hours of work they performed in addition to overtime as required by federal law and Nebraska state law." (Compl. ¶ 2.)  Consequently, Plaintiffs allege that their state law claims involve pay for "hours worked," and there is no escaping the fact that Article VII of the CBA, aptly entitled "Hours Of Work," is directly at issue and will require interpretation in this case.  The starting point for adjudicating Plaintiffs' state law claims is unquestionably the CBA's definition of "work time." This definition provides that "Work time will be computed from the time employees on a position commence their work until the time work is stopped at a position, and will be computed to the nearest minute," which will be relied upon to determine what activities are covered and not covered under the CBA's definition of "work time," whether Plaintiffs were appropriately paid for time worked under the CBA's definition of "work time," and then determine how the results of these inquiries conform to the "working time" standards of the NWHA or NWPCA.  (*See* Def.'s Mem. Supp. Mot. Part. Summ. J., Dunlop Decl. attached thereto as Exh. A, Exh. 3, p. 3; Exh. 2, p. 6-7; Exh. 1, p. 6.)  Although Plaintiffs argue that "[n]o CBA terms are disputed," this definition of "work time" is directly disputed by the parties. (Pls.' Opp. at 13.)  Courts examining virtually identical claims and factual circumstances (including two cases interpreting identical "work time" definitions in CBAs applicable to Defendant's other plants) have consistently held that state law claims for unpaid working time are preempted by the LMRA.  *See, e.g.*, *Carter*, 2009 U.S. Dist. LEXIS 116275, at *22, 26; *Murray*, 2009 U.S. Dist. LEXIS 9278, at *8-10; *Gonzalez*, 296 F. Supp. 2d at 935-36  (state wage law claims based on donning/doffing and gang time theories preempted by § 301 of the LMRA because they were "predicated on the rights created by the collective bargaining agreements, and depend on the meaning of, or require an interpretation, of the collective bargaining agreements").  As noted in Defendant's Memorandum, in finding donning

7

and doffing, walking and waiting time wage payment claims preempted by the LMRA, the *Carter* court acknowledged that the CBAs' terms related to work time were directly at issue in resolving the plaintiffs' claims and, therefore, the necessity of interpreting the CBAs terms made the plaintiff's state law claims "'federal in nature.'" (*See* Def.'s Mem. Supp. Mot. Part. Summ. J. at 9 (quoting *Carter,* 2009 U.S. Dist. LEXIS 116275, at **19-20).)

Nor is this a case where the CBA merely needs to be consulted for the purpose of calculating damages.[3] (Pls.' Opp. at 17.) Rather, as Defendant has demonstrated, these questions go directly to a determination of liability under Plaintiffs' state law claims.

Plaintiffs seek to escape the fact that their state law claims require interpretation of the CBA by claiming they do not cite or rely on the CBA in their complaint. It is readily apparent from the face of Plaintiffs' Complaint, however, that the facts underlying both of Plaintiffs' statutory state law claims concern an alleged failure to properly pay Plaintiffs for hours worked. (*See* Compl., ¶¶ 2, 18-21, 23, 35, 37.)

Similarly, Plaintiffs' new, unpleaded claim that they have individual employment relationships separate from the CBA does not change the fact that resolving the state law claims requires interpretation of the CBA. Plaintiffs make much of this fact in their Opposition, including arguing that "[t]he CBAs in question are between Tyson and a third-party labor union (UFCW Local 222) which is not a party to this case in any manner whatsoever." Pls.' Opp. at 4. Individual employment relationships cannot be read in isolation from the terms of the CBA,

---

[3] There is no question that extensive analysis of myriad CBA provisions will be required for purposes of calculating damages. (*See* Def.'s Mem. Supp. Mot. Part. Summ. J. at 10-11.) Moreover, some cases have recognized that when damage determination is as extensive as will be necessary in the present case, even this fact supports preemption. *See, e.g.*, *Freundt*, 2007 WL 4219417, *5 ("Illinois courts consistently have found that [Illinois Minimum Wage Law] claims that require the court to examine the collective bargaining agreement to determine the applicable wage rate, and how it is computed, are barred.").

8

which, regardless of the individual relationships, governs Plaintiffs' alleged entitlement to additional pay for hours worked, if any.[4] *Wolfenbarger v. The Boeing Co.*, Civ. A. 92-1117-MLB, 1994 WL 149187, at *7 (D. Kan. Apr. 1, 1994) ("Plaintiff's claim hinges on whether a contract of employment was implied in the relationship between Boeing and plaintiff. As plaintiff himself admits, this necessitates consideration of '[a]ll circumstances surrounding the employment relationship.' Such consideration undoubtedly would include the collective bargaining agreement and turn largely on whether a contract was implied therein or created thereby."); *McDonald v. Raytheon Aircraft Corp.*, 959 F. Supp. 1415, 1420 (D. Kan. 1997) (implied contract claim preempted because the Court found that it was "substantially dependent upon and inextricably intertwined with an analysis of the collective bargaining agreement….").

Plaintiffs cite *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), in support of their argument that because they allege the existence of individual employment relationships their claims are not preempted by the LMRA. Pls.' Opp. at 5-6. *Caterpillar*, however, is inapposite, as the plaintiffs in that case *were not covered by a CBA at the time they allegedly entered into the individual employment agreements*. 482 U.S. at 395 n.9. As the Supreme Court noted, "respondents rely on contractual agreements made while they were in managerial or weekly salaried positions -- agreements in which the collective-bargaining agreement played no part."

---

[4] Notably, Plaintiffs ignore the fact that under the representation clause found in Article I of the CBA, the UFCW is the "sole and exclusive bargaining agency for all Company employees in the bargaining unit…." (*See* Def.'s Mem. Supp. Mot. Part. Summ. J., Dunlop Decl., attached thereto as Exh. A, Exh. 3, p. 1; Exh. 2, p. 4; Exh. 1, p. 4.) It is well established that mandatory subjects of bargaining include wages and hours worked. Under the National Labor Relations Act ("NLRA") wages, rates of pay, and hours of employment are all mandatory subjects which must be addressed during the collective bargaining process and in the terms of the parties' collective bargaining agreement. *See generally NLRB v. Borg-Warner Corp., Wooster Division*, 356 U.S. 342 (1958). In fact, under the NLRA, the union is the sole bargaining agent for bargaining unit employees and employers are prohibited from unilaterally dealing with employees regarding mandatory subjects of bargaining. *Gen. Elec. Co.,* 150 NLRB 192, 194 (1964).

*Id.* Also, here Plaintiffs' claims directly implicate the CBA's definition of "work time" and other critical terms, which were not at issue in *Caterpillar*. Simply put, contractual obligations concerning working time and wages are the central focus of the CBA, and consideration of claims concerning working time and wage obligations cannot possibly proceed without interpretation and application of the CBA's terms. Even if Plaintiffs could successfully claim individual employment relationships, the scope of such relationships must be defined in harmony with the terms of the CBA provisions addressing the same workplace rights and obligations.

### C. Plaintiffs' State Law Claims Are Preempted By The LMRA Even If Plaintiffs' FLSA Claim Is Not

Plaintiffs also argue in their Opposition that because their FLSA claim is not preempted by the LMRA (and because Tyson did not seek summary judgment of its FLSA claim as preempted), this compels the conclusion that their state law claims also are not preempted because they seek to enforce similar rights regarding unpaid wages. Plaintiffs' argument ignores the stark differences between comprehensive federal law and state statutory law.

Plaintiffs' reliance on *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) is misplaced. As an initial matter, although Plaintiffs attempt to cast *Barrentine* as a decision involving federal preemption, this is not accurate. *Barrentine* includes no discussion or analysis of § 301 of the LMRA or preemption thereunder. To the contrary, in *Barrentine*, the Supreme Court considered whether an employee's election to pursue unpaid wages through CBA administrative remedies subsequently barred the employee from filing an FLSA claim in federal court seeking those same wages. 450 U.S. at 729. Recognizing that Congress' specific intent in enacting the FLSA was to grant individual access to federal courts for enforcement of FLSA rights, and that the statute expressly identified federal and state courts as the sole forum for enforcement of the statutory rights, the *Barrentine* decision held that exhaustion of

10

administrative remedies could not be required and that allowing overtime rights to be subject to collectively bargained contractual arbitration or grievance provisions "would 'nullify the purpose' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* at 740.  However, the *Barrentine* decision is silent as to whether state wage law claims should similarly be exempt from collectively bargained grievance and arbitration procedures.  Moreover, the *Barrentine* decision expresses no opinion about whether, in light of the FLSA's comprehensive regulation of working hour and overtime standards, state laws regulating payment of wages could or do embody the same fundamental protections from "the evil of 'overwork' as well as 'underpay.'"  *Id.* at 739.

Subsequent to the *Barrentine* decision, and contrary to Plaintiffs' argument, numerous federal courts, including the Eighth Circuit, have recognized that the LMRA preempts state statutory wage law claims where they require interpretation of collective bargaining agreements. *See, e.g.*, *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000) (state law overtime claim preempted under § 301 of the LMRA because it would require interpretation of collective bargaining agreement); *Atchley v. Heritage Cable Vision Assocs.,* 101 F.3d 495, 501 (7th Cir. 1996) (Indiana Wage Payment Act claim for unpaid wages preempted by the LMRA); *Robbins v. Iowa Road Builders Co.*, 828 F.2d 1348, 1354 n.4 (8th Cir. 1987) (stating LMRA will preempt the Iowa Wage Payment Collection law to the extent the state law conflicts with the LMRA); *Zupancich v. U.S. Steel Corp.*, No. 08-5847, 2009 U.S. Dist. LEXIS 116275, at **6-7 (Dist. Minn. May 27, 2009) (Minnesota Fair Labor Standards Act claim preempted by § 301 of the LMRA where CBA interpretation required); *Carter*, 2009 U.S. Dist. LEXIS 116275, at *26 (Indiana Wage Payment Act claim preempted by § 301 of the LMRA where CBA interpretation required); *Murray*, 2009 U.S. Dist. LEXIS 9278, at *9 (Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act claims preempted by § 301 of LMRA where CBA

11

interpretation required). Moreover, in both *Zupancich* and *Carter* the courts expressly "rejected … similar argument[s] to extend the application of *Barrentine* to proscribe the preemptive force of the LMRA over state law [wage] claims." *Carter*, 2009 U.S. Dist. LEXIS 116275, at *25-26 (italics added); *Zupancich*, 2009 U.S. Dist. LEXIS 116275, at *6-7. More specifically, the *Zupancich* court concluded that:

> *Barrantine* [sic] is inapposite to this case. The Court in *Barrantine* [sic] balanced the intention of Congress as it applied to two *federal* statutes. A key consideration for the Court was whether Congress intended that the FLSA impart an individual right that should not be subsumed by the collective right to bargain in section 301…. Congress's ability to create a court forum for a claim that may be dependent on a CBA is not a factor in analyzing whether section 301 preempts a state law, which requires the Court to determine whether the state law claim is 'independent' in the sense that the claim does not require the Court to construe the CBA. The analysis in *Barrantine* [sic] did not consider whether the FLSA is an 'independent' claim.

*Zupancich*, 2009 U.S. Dist. LEXIS 116275, at **6-7 (internal citations omitted). In contrast, Plaintiffs cite to no authority holding that because FLSA claims are exempted from preemption by the LMRA, state wage payment laws are similarly exempt from LMRA preemption.

Further, implicitly recognizing that state wage laws are subject to LMRA preemption, the Supreme Court has analyzed whether state wage payment laws necessarily involved interpretation of a collective bargaining agreement and are thus preempted, rather than simply declaring the state wage laws exempt from preemption. *See generally Livadas v. Bradshaw*, 512 U.S. 107 (1994) (claim for penalty for failure to timely pay wages not preempted because it involved only date calculation rather than interpretation of CBA).

Finally, as is apparent from the many federal court decisions finding preemption of state wage law claims involving interpretation of collective bargaining agreements, preventing 50 different stage wage laws from intruding on collective bargaining agreement interpretation

12

serves to protect massive discrepancies in the meaning given to collectively bargained terms. As the Supreme Court noted in *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-104 (1962):

> the subject matter of § 301 'is peculiarly one that calls for uniform law.' … The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. … The importance of the area which would be affected by separate systems of substantive law makes the need for a single body of federal law particularly compelling.

*See also Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 333 (8th Cir. 2006) (stating the "uniform interpretation of collective bargaining agreements" is the policy interest "which underlies § 301 preemption"). Notably, the concerns raised by the Supreme Court in *Lucas Flour* are absent when faced solely with the provisions of the FLSA. Not only was the FLSA promulgated by the same governing body that fashioned the LMRA, but it also is a single statute as opposed to a collection of 50, and the federal courts charged with enforcing the FLSA are the same courts charged with fashioning the body of federal common law construing the LMRA. For these reasons, the rights afforded by the FLSA can exist coextensively with those protected by the LMRA without the risk of inconsistent interpretation. The same cannot be said for the many state wage laws, including the NWHA and NWPCA.

### III.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment should be granted.

Respectfully submitted this 19th day of January, 2010.

    */s/ Michael J. Mueller*
    Michael J. Mueller (admitted *pro hac vice*)
    HUNTON & WILLIAMS LLP
    1900 K Street, N.W.
    Washington, D.C. 20006
    Telephone:  202-955-1500
    Facsimile:  202-778-2201
    E-Mail:  mmueller@hunton.com

    Steven D. Davidson (NE# 18684)
    Allison D. Balus (NE# 23270)
    Baird Holm LLP
    1500 Woodmen Tower
    Omaha, NE  68102-2068
    Telephone: 402-344-0500
    Facsimile:  402-231-8554

    *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that this 19th day of January 2010, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF filing system, which will serve notice of electronic filing upon the following:

Brian McCafferty
cafstar@aol.com

Michael Hamilton
mhamilton@provostumphrey.com


                                            */s/ Michael J. Mueller*
                                            Attorney for Defendant