IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
OMAHA DIVISION

| | |
|---|---|
| JOSE A. GOMEZ, et al., individually, and on behalf of a class of others similarly situated, | Case No. 8:08-cv-0021-JFB-TDT |
| Plaintiffs, v. | |
| TYSON FOODS, INC. | PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR RULE 23 CLASS CERTIFICATION |
| Defendant. | |

Plaintiffs Jose A. Gomez, et al., on behalf of themselves and all others similarly situated, and by and through their undersigned attorneys, submit this Reply Brief In Support Of Their Motion For Class Certification Pursuant To Federal Rule Of Civil Procedure 23.

I.  **INTRODUCTION**

In Opposition to Plaintiffs' Motion For Class Certification, Defendant Tyson makes several arguments: (1) Plaintiffs have not presented enough evidence to support their class certification motion; (2) this Court should ignore or discount the fact that both this Court and several other courts, including the Northern and Southern Districts of Iowa, have already certified <u>five</u> Rule 23 classes against Tyson based on the exact same "gang time" payment system that Tyson uses at the Dakota City plant at issue here[1]; (3) Plaintiffs have not established that there is an unlawful policy common to

---

[1] These five decisions are: <u>Bouaphakeo v. Tyson Foods, Inc.</u>, 564 F.Supp. 2d 870, 903-904 (N.D. Iowa 2008); <u>Lopez v. Tyson Foods</u>, 2008 WL 3485289 (D. Neb. 2008); <u>Garcia v. Tyson Foods</u>, 255 F.R.D. 678 (D. Kan. 2009); <u>Robinson v. Tyson</u>

most or all class members and (4) Plaintiffs' putative state law class does not meet the requirements of Federal Rule of Civil Procedure 23(a) and 23(b). These arguments are neither accurate nor preclude certification of Plaintiffs' state law claims under Rule 23 for the reasons set forth below. In fact, these are largely the same failed arguments that both this Court and three other district courts have already thoroughly rejected in certifying five Rule 23 classes against Defendant Tyson for those case plaintiffs' Iowa, Nebraska and Kansas state law claims.

## II. ARGUMENT

### A. Plaintiffs Have Provided And Can Provide More Than Sufficient Evidence To Support Their Rule 23 Class Certification Motion.

Tyson first argues that Plaintiffs have not provided enough factual evidence to support a conclusion that Rule 23 certification is warranted. See, Tyson's Brief In Opposition (**Doc. 69**) at 19-26. Plaintiffs entirely disagree and note that the bulk of the evidence that Plaintiffs will present is from Tyson's own pleadings and corporate deponent witnesses.[2]

---

Foods, Inc., 3:07-cv-00088-JAJ (S.D. Iowa 2009), attached hereto as **Exhibit "A"**; and since the filing of Plaintiffs' motion for class certification, the Southern District of Iowa recently certified yet another Rule 23 class against Tyson in the Edwards v. Tyson Foods, Inc., 4:08-cv-00113-JAJ matter. A copy of this opinion is attached as **Exhibit "B"** to this Brief.

[2] Defendant Tyson also complains, incorrectly, that Plaintiffs cite to their own class complaint for support in laying out the factual background of the case and that this is problematic in establishing a Rule 23 class. See, Defendant's Opposition Brief at pages 22-23. Factually speaking, Plaintiffs have submitted evidence from Tyson's own corporate representatives that more than support the Complaint's factual allegations. Legally speaking, a court must accept as true the plaintiff's allegations in evaluating a motion to certify a class, though a court may also look beyond the pleadings to determine whether the Rule 23 requirements are met. Estate of Mahoney v. R.J. Reynolds Tobacco Co., 204 F.R.D. 150, 153 (S.D. Iowa 2001).

The deposition testimony of Tyson's own corporate designees provides ample evidence as to the uncontested fact that the predominant majority of Tyson's hourly workforce (the approximately 90% or more of the hourly workforce that works in the kill and fabrication departments at Tyson's Dakota City, Nebraska facility) are paid on a "gang time" basis (See, **Daniel Schroeder Deposition at p. 7, attached hereto as Exhibit "C"**).[3]

Tyson corporate witness Daniel Schroeder testified that approximately 3100 of the 3400 hourly workers at the Dakota City plant work in the Kill, Processing and Hides departments and that as long as they are not doing set up or tear down work, the hourly employees in those departments are paid on a gang time basis. (See, **Daniel Schroeder Deposition at p. 7-8**). Tyson corporate witness Thomas Dunlop also estimated that only less than 45 of these 3100 hourly employees in the Kill and Fabrication departments did some form of "set-up" or "tear down" work. Id.[4]

Another thing Tyson tries to completely ignore is that Plaintiffs' class definition expressly excludes employees who are not paid based on gang time. Accordingly, even if the less than 45 of the approximately 3100 hourly employees in the Kill and

---

[3] In Bouaphakeo v. Tyson Foods, Inc., 564 F.Supp. 2d 870, 903-904 (N.D. Iowa 2008), the district court similarly found that over 75% of Tyson's 1600 employees at the Storm Lake, Iowa pork processing facility were paid via the gang time system.

[4] Tyson corporate witness Thomas Dunlop estimated that only 5 or 6 employees per shift on each of the two shifts on the slaughter floor performed set up and tear down work before and after the shift. (See, **Thomas Dunlop Deposition at p. 63, attached hereto as Exhibit "D"**)) Dunlop also estimated that only between 10 and 15 employees per shift on each of the two shifts on the fabrication floor performed set up and tear down work before and after the shift. (See, **Thomas Dunlop Deposition at p. 42**). Daniel Schroeder also confirmed these estimates as correct. (See, **Daniel Schroeder Deposition at p. 11**).

Fabrication departments at Dakota City are not paid on gang time, all that means is that those 45 or so employees would be excluded from the class by definition. It does not mean that the Court should not certify a class on behalf of the remaining 3000+ hourly employees (as well as former employees who held those positions during the class period) who are or were paid on the gang time basis leaving them to try to bring 3000+ individual cases against Defendant Tyson for the same claims.

Tyson also complains that Plaintiffs do not provide much evidence from the Plaintiffs themselves to support class certification (See, Opposition Brief at p. 24). In addition to the obvious irrelevancy of this argument, it should not be surprising at all to this Court that Tyson's own corporate witnesses would be better able to provide evidence of Tyson's own corporate policies and payment practices that apply universally to most or all hourly production employees. Thus, Plaintiffs do rely principally on Tyson's own admissions and the testimony of Tyson's own corporate witnesses to support their class certification motion.

Tyson also attempts to manufacture an issue by claiming that the differences between workers in the personal protective equipment ("PPE") they wear and the types of knives or tools they use creates an impediment to class certification because the claims of the class members are not typical of each other. See, Tyson's Opposition Brief at 8-13. This argument was evaluated and rejected by the Northern District of Iowa in the Bouaphakeo case:

> However, if the class is confined to employees paid via gang time, the typicality requirement is met because their claims are based on the same legal theory-that Tyson's gang time compensation system is unlawful. In addition, among gang time paid employees, the evidence only shows factual

> differences regarding the specific PPE these employees wear and the tools they carry. The court does not feel these differences necessitate individualized inquiry to prove a violation because most all gang time employees wear at least the same basic PPE and use some kind of knife or tool. Moreover, there is not an indefinite amount of PPE to don and doff or tools to be used, and thus the factual variations between employees paid via gang time are limited.

Bouaphakeo, 564 F.Supp. 2d at 905. This Court should likewise reject Tyson's attempt to manufacture minute differences among gang-time paid hourly employees.

Tyson also asserts that because slaughter employees sometimes allegedly get paid "sunshine time" if they finish slaughtering their quota of cattle earlier than the 7 hours and 56 minutes allotted for their shift, this somehow defeats class certification. (Tyson Opposition at page 29). Plaintiffs disagree because even sunshine time is paid in exactly the same amount to everyone on that particular slaughter shift, just like gang time. As Tyson witness Daniel Schroeder testified, once the sunshine time is recorded for the shift it is entered into the time and attendance system and everyone on shift gets paid the same amount of sunshine time. (See, **Daniel Schroeder Deposition at p. 13**). Thus, the concept of sunshine time only reinforces that typicality and commonality aspects of Rule 23 class certification are easily met in this case.

Summarily, Tyson uses a uniform system to pay the prohibitive majority of their hourly employees at the Dakota City plant and Plaintiffs have filed a class action lawsuit challenging the propriety of that payment system and whether it violates Nebraska state law. That is the simple legal issue presented in this class certification motion. All of the minutia that Tyson tries to inject into the class certification process - - trifles such as

how many gloves one employee wears as opposed to another employee, or who supervises which employee - - are merely an attempt to distract the Court from taking the straight-forward approach that this Court has previously taken and other courts have taken in certifying a Rule 23 class. This Court should ignore Tyson's minutia and correctly focus, as it has previously done, and as three other district courts have already done, on whether Tyson's widely used gang time system makes this case suitable for Rule 23 class certification as discussed below.

### B. Plaintiffs Correctly Rely On A Prior Decision Of This Court And Prior Decisions Of Three Other Courts Which Have Already Certified Rule 23 Classes Against Tyson Based On Precisely The Same "Gang Time" Payment System That Is Involved Here.

Tyson also argues that this Court should ignore or discount the fact that four district courts, including this Court, the Northern and Southern Districts of Iowa and the District of Kansas, have already certified five Rule 23 classes against Tyson based on exactly the same "gang time" payment system that is involved here. See, Tyson's Brief In Opposition at 25-27. Tyson makes varied arguments in a fruitless attempt to distance itself from these five prior cases in which they lost precisely the same Rule 23 class certification issue.

First, Tyson makes the obvious point that none of the prior five decisions involved precisely the Dakota City, Nebraska facility involved here. While this is certainly true, Tyson cannot dispute that these five prior case decisions provide unusually persuasive authority because they: (1) involve the same Defendant company (Tyson Foods) as well as the same company pay practices and pay policies (i.e. the "gang time" payment system); (2) they involve the same legal issues of whether

-6-

plaintiffs with state law wage payment claims should be certified as a Rule 23 class; and (3) all five decisions reach the same common denominator that Tyson's uniform gang time payment that applies to a great majority of the hourly workers renders these cases as suitable for Rule 23 class treatment.

Second, Tyson argues that these five decisions are not factually or legally similar to the matter pending before this Court. Plaintiffs assert that a cursory review of the five prior Tyson decisions certifying Rule 23 decisions will demonstrate that all five of those prior cases are both factually and legally similar to the case at bar in the following manner:

1. Similar to the case at bar, all five previous cases refer to Tyson using a "gang time" system of payment that only pays most hourly employees at its plants for the time when the actual production line is moving: See, Garcia, 255 F.R.D. at 683 ("The vast majority of hourly production workers at these facilities are paid on a "gang time" basis; that is they are paid for only that time when the production line is moving."); Lopez, 2008 WL 3485289 *5 ("The defendant admits that most of the hourly production workers at the Lexington, Nebraska facility are paid based on gang time, plus four minutes a day for pre-and post-shift activities."); Bouaphakeo, 564 F.Supp. 2d. at 878 ("The employees in the Kill, Cut, and Retrim departments are paid by 'gang time,' or the length of production in their department which, which is generally the time it takes for hogs to travel on mechanized belts through the department."); Robinson, November 13, 2009 Opinion at page 2 **(Exhibit "A')** ("According to Duncan, some hourly employees in the Kill, Cut, and Converting are paid in part through "gang time." a system that ensures each employee is paid for the length of production in their department, which is the time

it takes for all carcasses to travel on mechanized belts through the department."; and Edwards (**Exhibit "B"** at 2)("Both Hook and Moulin testified that hourly employees in the Kill, Cut, and Conversion Departments are paid by a "gang time" system).

2. Moreover, similar to the case at bar, all five prior cases involve claims for unpaid time spent donning, doffing and washing PPE and tools as well as walking time associated with those activities: See, Garcia, 255 F.R.D. at 683 ("As a general rule, however, Tyson does not pay its employees for time spent performing activities outside the movement of the production line, including actual time spent donning and doffing protective gear and clothing; rinsing and sanitizing knives and equipment; and walking to and from the production line. . . . Plaintiffs in this case allege that Tyson, by failing to compensate its hourly production workers for all time worked, has denied wages and overtime pay to those employees."); Lopez, 2008 WL 3485289 *1 ("Plaintiffs contend that the defendant has failed to compensate them for time spent (1) donning and doffing required clothing and safety equipment, before, during and after their shifts; (2) preparing safety supplies and equipment; and (3) walking time that follows or relates to these activities."); Bouaphakeo, 564 F.Supp. 2d. at 903 ("Plaintiffs claim they meet this commonality requirement because they all share the common question of 'whether Defendant Tyson has violated [the IWPCL] by not paying production workers at its Storm Lake, Iowa, facility for all work performed prior to and subsequent to 'gang time,' particularly the time spent donning, doffing, and cleaning personal protective equipment.'"); Robinson, November 13, 2009 Opinion at page 2 (**Exhibit "A"** at 2) ("Plaintiffs claim that the defendant does not pay its employees for all required pre-

production line and post-production line activities that are necessary and integral to their overall employment responsibilities, such as: donning and doffing clothing and personal protective equipment ("PPE"), cleaning and sanitizing equipment . . . ."; and Edwards (**Exhibit "B"** at 2)("Plaintiffs claim that the defendant does not pay or fully pay production and support employees at its Perry and Waterloo meat processing facilities for time spent at work donning, doffing and cleaning personal protective equipment ("PPE") before and after shifts on the production line and during unpaid break times.").

Thus, a review of the five prior cited certification decisions will show that those decisions are factually and legally identical to the matter now pending before this Court. This Court should reach the same conclusions as the Garcia, Lopez, Robinson, Edwards, and Bouaphakeo courts and decide to certify this matter as a Rule 23 class.

Defendant Tyson also argues in its Opposition Brief that "recent decisions suggest that courts are tightening the standard for class treatment." See, Tyson's Resistance at 24-25. Specifically, Tyson cited to the Third Circuit's decision in In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305 (3rd Cir. 2008), as evidence of this supposed heightened standard.[5]

Plaintiffs disagree both that: (1) there is any overwhelming national trend to tighten Rule 23 class evaluation; and (2) that Plaintiffs' Rule 23 state law claims would

---

[5] In re Hydrogen Peroxide Antitrust Litigation did not involve the same state law "wage and hour" claims that are involved here. This case involved a class action pled under federal anti-trust laws. See, 552 F.3d 308. Essentially, the Third Circuit said in this case that if the parties have submitted factual evidence that supports (or detracts from) the elements of Rule 23 class certification then a district court should consider that evidence. Plaintiffs submit that this conclusion is neither revolutionary in class action law nor different from what district courts typically do in evaluating class certification matters.

fail such a "heightened" analysis. Plaintiffs here are not merely relying on claims made in their complaint but have instead submitted direct evidence and admissions from Tyson establishing the unequivocal existence of a "gang time" payment system and the fact that the large majority of its hourly workforce are paid according to this gang time system. Accordingly, this "heightened standard" which Tyson points to is both non-existent and entirely a non-issue in this matter.

### C. Failing Or Refusing To Pay Workers For All Time Spent Donning Doffing And Washing Their PPE Because Of A Gang Time System Is A Common Unlawful Policy Common To Most Or All Class Members.

Plaintiffs asserted in their class certification motion that this matter involved Defendant Tyson's policy, common to all class members, of deciding not to pay its production workers for all time spent engaging in required pre- and post-shift work activities and instead paying workers on a "gang time" basis. See, Plaintiffs motion brief at 16. In its Opposition (at pages 15-19), Tyson contends that the "gang time" payment system is not illegal per se, and that variations in equipment worn and tools and knives used hampers Plaintiffs' efforts to establish commonality.

The Southern District of Iowa's very recent Rule 23 certification decision in Edwards addressed and rejected this precise argument:

> Plaintiffs have limited their proposed class to those employees being paid on a "gang time" basis, which is the admitted and uniform pay practice among most production employees at defendant's Perry and Waterloo facility. Defendant's argument that most employees are not paid on a "gang time" basis because they also receive a few additional minutes is unavailing and does not change the fact that the significant portion of the compensation of the proposed class is "gang time." Whether the additional time allotted is sufficient to cover the time spent donning, doffing

and cleaning PPE (and associated walk time) is the heart of this lawsuit.

Edwards (**Exhibit "B"**) at p. 7. This Court should likewise reject Tyson's efforts to distance itself from its own gang time policies.

### D. Plaintiffs' Putative State Law Class Meets All Requirements Of Federal Rule Of Civil Procedure 23.

In its Opposition Brief to Plaintiffs' Motion for Class Certification under Rule 23, Defendant Tyson makes several ineffectual arguments against class certification: (1) that the Named Plaintiffs are not adequate class representatives (Tyson's Opposition p. 26-27); (2) despite the fact that its own corporate designee witness (Thomas Dunlop) has testified that approximately 90%+ of the hourly workforce (3100 of the 3400 hourly employees at Dakota City plant) are paid via the "gang time" system, the remaining workers not paid on gang time render these cases more suited for individual rather than class treatment (Tyson's Opposition p. 27-30); and (3) potential individualized defenses also deter class certification.

First, addressing the adequacy of representation argument, the fact that the six Named Plaintiffs all happen to work in the Processing Area and none happen to work in the slaughter area is irrelevant to Plaintiffs' Rule 23 certification arguments. Plaintiffs' Complaint asserts that the slaughter and processing employees are all governed by the same gang time payment system and Tyson's corporate witnesses have confirmed that both slaughter and processing workers are governed by the same gang time system. Tyson corporate witness Daniel Schroeder testified that the approximately 3100 of the 3400 total hourly workers at the Dakota City plant work in the Kill, Processing and Hides

departments and that as long as they are not doing set up or tear down work, the hourly employees in those departments are paid on a gang time basis. (See, **Daniel Schroeder Deposition at p. 7-8**). Schroeder did not testify that there were separate or different gang time systems that applied only to slaughter employees or only to processing employees.[6]

The other two arguments (involving the supposed individual nature of the claims) are the same arguments have been made by Tyson in the Garcia, Lopez, Robinson, Edwards, and Bouaphakeo cases and those courts have rejected those arguments. For example, in Lopez, the this Court stated with regard to the commonality requirement of Rule 23(a):

> The plaintiffs argue that there are common questions of law and fact because the case is based on whether defendant fails to pay hourly employees for all work prior and subsequent to their shift. [cite omitted] In contrast, the defendant argues there is wide factual variations among the employees due to their particular activities including types of clothing worn, equipment used and supervisory personnel. [cite omitted] The court concludes the core of the plaintiffs' suit is based on the same law and common facts. Here, the defendant relies on a uniform labor practice for most of its production employees. The practice results in most of the employees engaging in activities for which they are not paid. While the exact amount of time for employees may vary, the employees are performing nearly identical tasks under nearly identical conditions. Variation among employees due to the types of clothing worn, equipment used and supervisory personnel does not diminish the nature of the general pay system.

---

[6] If need be, Plaintiffs could also add class representatives that work in the slaughter area. Plaintiffs do not believe that this should be necessary as the interests of the processing employees is exactly the same as the slaughter employees.

See Lopez, 2008 WL 3485289 at * 16.[7] Likewise, the Garcia court also rejected Tyson's Rule 23(b) superiority argument regarding individualized defenses which they purport to stem from these factual differences:

> Tyson contends that a class action is not the superior method of adjudication because of the individualized nature of proof required concerning, by way of example, the particular clothing worn by and equipment utilized by each plaintiff. However, individualized inquiries concerning the particular clothing worn by each plaintiff, the equipment maintained by each plaintiff, and even the amount of compensation each plaintiff may have already received for certain activities by virtue of supervisor discretion are simply issues of damages if the finder of fact determines that Tyson is required to compensate its employees for time spent donning and doffing and has failed to do so.

Garcia, 255 F.R.D. at 693.[8]

## III. CONCLUSION

Based upon the foregoing discussion, Plaintiffs respectfully request that this Court certify this matter as a Class Action pursuant to Federal Rule of Civil Procedure 23.

---

[7] The Bouaphakeo court reached the same general conclusion that common issues of fact and law that stemmed from Tyson's gang time system were not defeated by factual differences regarding the clothing and equipment worn and used by the hourly workers. See, Bouaphakeo, 564 F.Supp. 2d at 904. Likewise, the Garcia court also rejected Tyson's argument that "wide factual variations" in PPE worn and in supervisor discretion to pay for certain activities undermined the commonality of plaintiffs' common claims for time spent "donning, doffing, walking and the like." See, Garcia, 255 F.R.D. at 689.

[8] The Bouaphakeo court also concluded that a class action was superior to individual lawsuits by class members. See, 564 F.Supp. 2d at 909. Likewise, this Court in Lopez also concluded that a class action was a superior method of resolution of the issues and plaintiffs' claims did not require the "individualized scrutiny described by the defendant . . . ." See, Lopez, 2008 WL 3485289 at *20.

        Respectfully submitted,

        /s/ Brian P. McCafferty

---

Brian P. McCafferty, Esq.
Kenney & McCafferty
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
(610) 940-0327 (phone)
(610) 940-0284 (fax)
cafstar@aol.com

Dated: October 4, 2010

## CERTIFICATE OF SERVICE

I, Brian P. McCafferty, hereby certify that a true and correct copy of the foregoing Plaintiffs' Reply Brief In Support Of Their Motion For Rule 23 Class Certification has been served upon the following counsel for Defendant Tyson Foods in accordance with the Local Rules of Civil Procedure via the Court's electronic filing CM/ECF system on October 4, 2010:

>Allison D. Balus, Esq.
>Steven D. Davidson, Esq.
>Michael Mueller, Esq.
>Evangeline Paschal, Esq.

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

>None.

>/s/ Brian P. McCafferty

>Brian P. McCafferty, Esq.