**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| JOSE A. GOMEZ, et al., ) | |
| ) | |
| Plaintiffs, ) | 8:08CV21 |
| ) | |
| vs. ) | |
| ) | |
| TYSON FOODS, INC., ) | **FINDINGS AND** |
| ) | **RECOMMENDATION** |
| Defendant. ) | |

This matter is before the court on the plaintiffs' Motion for Rule 23 Class Certification (Filing No. 62). The plaintiffs filed a brief (Filing No. 63) and an index of evidence (Filing No. 64) in support of the motion. The defendant filed a brief (Filing No. 69) and an index of evidence (Filing Nos. 70-71)[1] in opposition to class certification. The plaintiffs filed a brief (Filing No. 72) and an index of evidence (Filing No. 73) in reply.

**INTRODUCTION**

The plaintiffs are current or former employees who worked some time during the period January 17, 2004, to the present, at the defendant's Dakota City, Nebraska, meat processing facility. **See** Filing No. 1 - Complaint ¶¶ 2, 12, 31. The case was filed as a class action alleging violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq.*, and state law regarding pay for pre- and post-production line activities, including "donning and doffing," and other activities in connection with job functions. The plaintiffs seek relief for alleged violations of state and federal wage-and-hour laws, including for alleged failures to pay minimum wage and overtime compensation for uncompensated job-related activities.

The plaintiffs filed the instant action on January 16, 2008. **See** Filing No. 1. The defendant filed an answer on June 4, 2008. **See** Filing No. 10. The matter was temporarily stayed while the Judicial Panel on Multidistrict Litigation reviewed, then denied,

---

[1] The defendant inadvertently re-filed the brief at Filing No. 70, with evidence attached, then filed the actual index of evidence at Filing No. 71, without the evidence attached.

the defendant's motion to transfer the case.  **See** Filing Nos. 16 and 18.  On November 6, 2008, the court dissolved the stay and the parties were free to begin discovery.  **See** Filing No. 22.  Due to the nature and volume of discovery, the parties were granted several extensions of time to complete such discovery.  **See, e.g.,** Filing No. 46.  On December 14, 2009, the defendant filed a motion for partial summary judgment, which was denied.  **See** Filing No. 47.  On May 5, 2010, the court denied the motion for summary judgment.  **See** Filing No. 61.  On June 21, 2010, the plaintiffs filed the instant motion for class certification.  **See** Filing No. 62.  The plaintiffs have not sought conditional certification of a class in relation to the FLSA collective action claims.

## FACTUAL BACKGROUND

The following facts are alleged in the plaintiffs' complaint.  The defendant operates a meat processing facility in Dakota City, Nebraska.  **See** Filing No. 1 - Complaint ¶ 14.  The defendant relies on a compensation system known as "gang time," which pays production employees only during the time period they are present on the actual production assembly line.  *Id.* ¶ 15.  Based on the gang time compensation system, the defendant does not pay employees for all required pre-production line and post-production line activities and periods of required presence.  *Id.*  Specifically, the plaintiffs allege they are not compensated for the following activities, which are integral to their overall employment responsibilities:

> donning and doffing personal protective equipment, cleaning and sanitizing that equipment, walking to the production line from their locker and vise-versa after already performing compensable activities and before the end of compensable time, working on knife maintenance equipment known as "steels" or "mousetraps", and waiting in line to receive required knives, supplies[,] tools and equipment needed for production line activities.

*Id.* (alteration added).

Additionally, the defendant's employees are required to wear special personal protective equipment (PPE) for protection and sanitary reasons.  *Id.* ¶ 16.  The PPE may vary depending on job duties, but includes rubber aprons, belly guards, wrist and arm

guards, mesh or Kevlar sleeves, cotton and rubber gloves, mesh gloves, mesh aprons, hard hats, hairnets, earplugs, coveralls, eye protection, and other similar items. *Id.* The defendant does not compensate each employee for all the time spent removing, replacing or cleaning PPE at the beginning or end of paid and/or unpaid meal or break periods. *Id.* ¶¶ 17-23. However, the defendant does compensate "some employees," for four minutes per day of "clothes changing" time. *Id.* ¶ 15. The plaintiffs estimate there are over 3400 putative class members. *Id.* ¶ 17; **see** Filing No. 63 - Brief p. 2, 4. The plaintiffs specifically limit the class to present or former employees in the Kill or Fabrication departments who are paid under the gang time compensation system. *Id.* at 1. The plaintiffs allege they "spend much more than four minutes a day performing" uncompensated work activities. **See** Filing No. 64 - Ex. A Hacht Decl. ¶ 6.

The defendant admits "it pays its hourly production employees for regularly scheduled time worked on the production line or in production areas." **See** Filing No. 10 - Answer ¶ 15. However, the defendant asserts "many of the production employees" are paid "for extra minutes every day" and "all hourly employees . . . are properly paid for all compensable time." *Id.* The defendant admits certain employees are required to wear varying types of PPE to perform the functions of their job. *Id.* ¶ 16. However, the defendant explains that the type and extent of equipment varies among employees based on their job assignment and whether the equipment or clothing is mandatory or optional. **See** *id.*

The defendant describes the processing facility at issue, as having 174 departments with 746 discrete job categories in the Slaughter and Processing areas.[2] **See** Filing No. 69 - Response p. 3.[3] On two shifts, the defendant employs approximately 600 hourly workers in the Slaughter area and approximately 2,450 hourly workers in the Processing area. *Id.* Generally, live cattle enter the Slaughter area where, in a multi-step process, the

---

[2] The defendant does not use the terms Kill and Fabrication for its department titles.

[3] The defendant uses page numbers for the response brief that are different from the document's page sequence (i.e., page four of the document is numbered with a one). The court will reference the page numbers placed on the document by the defendant.

cattle are killed, carved, and cooled, before moving into the Processing area for cutting into various sections and trimming. *Id.*

The defendant admits that "[m]any hour production employees in the Slaughter and Processing areas are compensated through 'gang time.'" *Id.* at 4 (alteration added). "This means that in such cases, employees are paid production time, that is, from the time the first piece of product passes their work station until the last piece passes their work station." *Id.* The amount of time credited for employees may differ based on the area of the production facility, the number of cattle, line breakdowns, and other factors. *Id.* The defendant shows the current compensation practice pays all Slaughter and Processing area employees for four extra minutes each shift for non-production activities. *Id.* at 4-5. Some employees are required to assist with production set-up, clean-up, or other non-production activities. *Id.* at 5. The manner in which these employees are compensated may differ based on each employee's supervisor, the duties assigned, and department, but the employees typically receive compensation for time in addition to gang time. *Id.* Additionally, employees may be paid "guaranteed hours" if the weekly production time falls below the number of hours previously scheduled pursuant to a collective bargaining agreement. *Id.* at 5. Moreover, employees in the Slaughter area are paid "sunshine time," which is the difference between the scheduled production shift time and the actual production time. *Id.* at 6. Sunshine time applies when the employees reach a daily target prior to the end of the shift, resulting in working less hours than the scheduled shift, but being paid for the entire shift. *Id.* The defendant states depending on the shift, the employees are paid between one and twenty-four minutes of sunshine time between fifty to ninety-eight percent of the time. *Id.* In addition to the manner of payment, the defendant contends the type of PPE worn differs by employee based on job assignment and personal preferences. *Id.* The defendant describes the type of clothing and PPE used by the employees based on their job assignments. *Id.* at 6-12. The defendant argues the amount of time each employee takes to perform non-production tasks varies based experience level, job assignments, and personal preferences, and may differ from day to day. *Id.* at 12. The defendant also describes the break system, explaining that employees are not required to perform any washing or sanitizing activities prior to or during their break

or meal period. *Id.* at 12-13. Although some employees choose to remove some of the PPE or leave the production area for breaks and meal periods, in fact, employees are not required to leave the production floor at those times. *Id.* at 13.

In sum, the defendant argues the pay system, including payment for extra time in addition to the gang time, fully compensates the employees. *Id.* at 1. The defendant argues that these factors render the representative action unworkable because an individualized analysis is necessary. *Id.* at 1-2. The defendant also contends the plaintiffs are not typical because none of them worked in the Slaughter area. *Id.* at 2.

## ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit. "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994)).

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1)   the class is so numerous that joinder of all members is impracticable;
> (2)   there are questions of law or fact common to the class;
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)   the representative parties will fairly and adequately protect the interests of the class.

**See** Fed. R. Civ. P. 23(a). The United States Supreme Court has summarized the four basic requirements as these: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The determination under Rule 23(a) is not perfunctory, "the court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." *Elizabeth v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (**quoting** *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). "While class stipulations by the parties may be helpful, they are not

complete substitutes for 'rigorous analysis.'" *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986).

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their . . . claims as a class action." *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005) (**citing** *Amchem*, 521 U.S. at 614).  Rule 23(b) allows a class action if (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate and the class action is a superior method for adjudication.  **See** Fed. R. Civ. P. 23(b).

In addition to the Rule 23(a) and (b) requirements, pursuant to Rule 23(c)(1)(B): "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."  The plaintiffs propose a class action, pursuant to Fed. R. Civ. P. 23, consisting of:

> All current and former employees of Defendant Tyson's Dakota City, Nebraska meat processing facility who have been employed by Tyson at any time from January 17, 2004, to the present and who are or were paid under a "gang time" compensation system in the Kill and Fabrication Departments.

**See** Filing No. 62 - Motion p. 1.

The plaintiffs contend the putative class members are all subject to the defendant's common policy of requiring employees to perform work without compensation.  **See** Filing No. 63 - Brief p. 4-5.  Specifically, the subject employees are required to wear at least some PPE.  *Id.* at 3-5.  Additionally, approximately 80% of the subject employees used knives or other cutting instruments to perform their jobs.  *Id.* at 4.  The plaintiffs argue all or most of the hourly production workers at the facility in Dakota City, Nebraska, are compensated under the gang time system and engage in, at least some of, the following uncompensated activities:  donning their PPE, cleaning themselves and PPE, doffing their PPE, and walking time associated with these other activities.  *Id.* at 4-5, 12.  The plaintiffs argue that although the defendant disputes whether the practice is a violation of Nebraska law, the system is uniform among production workers at the facility.  *Id.* at 5.  Specifically,

if the defendant pays certain groups of employees additional compensation, such policy remains uniform among the employees and still falls short of full compensation. **See** *id.* at 4; **see also** Filing No. 64 - Ex. A Hacht Decl. ¶ 6 ("Hourly workers spend much more than four minutes a day performing these work tasks."); Filing No. 72 - Reply p. 5. The plaintiffs also contend that although the damages may be different between plaintiffs, such issue is not dispositive of the certification decision.

The defendant denies class certification is appropriate in this case because there is no "uniform" compensation system. **See** Filing No. 69 - Response p. 15-16. The defendant argues that although all of the putative class members may wear PPE, the type of PPE worn and whether or not such donning or doffing activity is compensable presents individual questions among class members. *Id.* at 28-30. The defendant contends the employees wear a variety of PPE and the time taken to don, doff, and walk to various parts of the facility differs for each employee and, perhaps, even for the same employee depending on that employee's assignments and experience. *Id.* at 29. The defendant contends the employees are not required to engage in uncompensated work activities. *Id.* at 15-16. Specifically, the defendant provides evidence that the defendant compensates employees for a number of minutes, at least four, in addition to "gang time" for pre- and post-shift activities. *Id.* at 4-6, 16.

The court will review, *seriatim*, each of the requirements the plaintiffs must satisfy with regard to class certification.

### 1. Rule 23(a) Requirements
#### i. Numerosity

The first prerequisite the plaintiffs must meet under Rule 23(a) is numerosity. *Amchem*, 521 U.S. at 613. Rule 23(a) requires "the class [be] so numerous that joinder of all members is impracticable." **See** Fed. R. Civ. P. 23(a)(1). Rule 23(a) "requires only the impracticality, not the impossibility, of joinder." *United States Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978). The plaintiffs need only show "that joining all members of the class would be difficult." *Caroline C. By and Through Carter v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted) (stating "as few as 40

class members should raise a presumption that joinder is impracticable"). "The Eighth Circuit has not established strict requirements regarding the size of a proposed class[.]" *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 153 (S.D. Iowa 2001).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. . . . [Further,] where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Typically, the court may rely on the pleadings, however "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met." *Chesher v. Neyer*, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (**citing** *Gen. Tel. Co. of S.W.*, 457 U.S. at 160). A court "may consider reasonable inferences drawn from facts before [it] at that stage of the proceedings." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976); **see** *Serfaty v. Int'l Automated Sys., Inc.*, 180 F.R.D. 418, 420 (D. Utah 1998).

In the instant case, there are at least 3100 current employees who fit within the putative class description from the Dakota City, Nebraska, processing facility. **See** Filing No. 1 - Complaint ¶ 17; Filing No. 72 - Reply p. 3; Filing No. 69 - Response p. 3-4. Each of these employees is a potential class member, particularly because the defendant admits to using the same compensation system for the workers falling under the class definition. The defendant does not specifically dispute numerosity aside from its other arguments.

After considering the number of persons in the proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds the plaintiffs satisfy the numerosity requirement. **See** *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982); **see also** *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 364 (S.D. Iowa 2008). Based upon the evidence presented, the large number of putative class members justifies class treatment. It is evident a class of this size would promote judicial economy over individual suits, particularly under the circumstances of this case.

### ii. Commonality

Second, the plaintiffs must prove the element of commonality. *Amchem*, 521 U.S. at 613. Rule 23(a)(2) requires there be "questions of law or fact common to the class." **See** Fed. R. Civ. P. 23(a)(2). "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (**quoting** *Paxton*, 688 F.2d at 561). However, "[t]he rule does not require that every question of law or fact be common to every member of the class." *Paxton*, 688 F.2d at 561. Further, commonality may be shown "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.*; *Perez-Benites v. Candy Brand*, LLC, 267 F.R.D. 242, 247 (W.D. Ark. 2010) (noting the court will determine "whether there is a need for combined treatment and a benefit to be derived therefrom"). "[T]he commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied." **In re** *Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999); **see** *Jones v. Casey's General Stores, Inc.*, 266 F.R.D. 222, 227 (S.D. Iowa 2009).

The plaintiffs argue there are common questions of law and fact because the case is based on whether the defendant violated state wage and hour laws when failing to pay hourly employees for all work prior to, during, and subsequent to their shift's production time due to the gang time compensation system. **See** Filing No. 63 - Brief p. 11-12. In contrast, the defendant argues the actual evidence presented shows the defendant had a uniform policy of paying employee for extra minutes beyond the production time, depending on the employees' varying circumstances. **See** Filing No. 69 - Response p. 16-17, 19, 28. The defendant argues there are wide factual variations among the employees due to their particular activities including types of PPE worn, equipment used, and supervisors. *Id.* at 28-29. Additionally, the defendant notes its policy of paying employees extra minutes depending on the work assignments and PPE used. *Id.* Finally, the defendant challenges the plaintiffs' factual assertions for lack of sufficient evidence. *Id.* at 22-25.

As an initial matter, "[t]he court may not consider the factual merits or weaknesses of plaintiffs' underlying claims. For purposes of a motion for certification the substantive allegations of the complaint are accepted as true." *Caroline C.*, 174 F.R.D. at 459 n.7 (**citing** *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)) (other internal citations and quotations omitted). "However, the court is required to look beyond the pleadings to documentary evidence submitted by the parties in determining whether the specific requirements for certification have been met." *Caroline C.*, 174 F.R.D. at 459 n.7. Accordingly, the defendant's argument related to the additional minutes paid to each group of employees may be relevant to, but is not dispositive of, the class certification issues.

The court concludes the core of the plaintiffs' suit is based on the same law and common facts. Here, the defendant relies on a uniform labor practice for its Slaughter and Processing area employees. The practice results in the employees engaging in activities for which they may not be paid. While the exact amount of time for each employee may vary, the employees are performing nearly identical tasks under nearly identical conditions, despite the variety of job categories. Variation among employees due to the types of clothing worn, equipment used and supervisors does not diminish the nature of the general compensation system. By the same token, the defendant's compensation for extra minutes remains based on generalities, i.e., a particular number of minutes for a particular assignment, rather than based on actual time spent by an employee. The court recognizes there are exceptions to these generalities when employees are paid for the actual time worked. However, it appears the uniform gang time compensation system is prevalent for most of the production employees. Based upon the evidence presented and the parties' pleadings, the court finds the commonality requirement has been satisfied as to the class as a whole.

### iii.   Typicality

Third, the class representatives have the burden to show typicality of their claims in relation to the other putative members of the class. *Amchem*, 521 U.S. at 613. Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class." **See** Fed. R. Civ. P. 23(a)(3). The Eighth Circuit, "long ago

defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted). "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006); **see** *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. However, the plaintiffs cannot show typicality where the question of liability can only be ascertained on an individualized inquiry for each class member. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004) (denying class certification for denial of disability insurance benefits).

The plaintiffs contend the claims of the named plaintiffs are typical of the whole class and the named plaintiffs' allegations are not based on conduct unique to them but rather on a compensation system which affects all class members. **See** Filing No. 63 - Brief p. 13-14. The defendant denies that typicality exists in this case because the claim analysis will require an individualized fact-intensive inquiry. **See** Filing No. 69 - Response p. 29-30. In addition, the defendant argues the named plaintiffs cannot be typical of any putative class members who worked in the Slaughter area. *Id.* at 29. In any event, the standard additional compensation, even if it is different for each job assignment, is evidence that the defendant treats each of the gang time employees with a standard practice regardless of individual differences between employees within the same assignments or across the two relevant areas.

It is true "[a] proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation ." *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir.1999) (citing cases). By the same token, it is inappropriate to certify a class "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). However, "differences in the claimed damages

11

or the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory." *Morris v. Wachovia Sec. Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004). The class representatives must allege only "that all class members suffered the same or similar injuries and that the representatives are not claiming a different set of injuries." *Perez-Benites v. Candy Brand*, LLC, 267 F.R.D. 242, 247 (W.D. Ark. 2010).

After reviewing the arguments in light of all the evidence presented, the court finds the employees do not present unique arguments with regard to the types of activities that they allege are unfairly uncompensated. Whether the employees are engaging in compensable pre- and post-shift activities will not depend on how much time an individual employee takes to don an apron. Instead, the plaintiffs all rely on non-unique general allegations that particular categories of activities are compensable and argue the defendant fails to compensate for these activities. These general activities are not based on particular departments, job assignments, supervisors, or the time it takes a particular employee to perform uncompensated activities. At a basic level, the claims and arguments made by the named plaintiffs are typical of the proposed class members, even in the Slaughter area. The critical payment system governing which activities are compensated is not unique to a particular plaintiff or to the named plaintiffs. The relevant employees are compensated based on the gang time system, which, as alleged by the plaintiffs, excludes payment for certain compensable work activities, despite the defendant's payment of additional minutes to some workers. Further, it is for the fact finder to determine whether the additional minutes fairly and legally compensate the plaintiffs for their time spent. Accordingly, the plaintiffs have met their burden of showing their claims are typical of those of the putative class.

### iv.   Adequacy of Representation

The fourth prerequisite a plaintiff must meet under Rule 23(a) for class certification is adequacy of representation. *Amchem*, 521 U.S. at 613. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." **See** Fed. R. Civ. P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class

representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562 (**citing** *Gonzales v. Cassidy*, 474 F.2d 67, 72 (6th Cir. 1973)).

The plaintiffs argue they and their counsel will adequately protect the interests of all proposed class members because the named plaintiffs have the same interests as all putative class members in recovering wages. **See** Filing No. 63 - Brief p. 14-15. The defendant does not dispute the adequacy of counsel based on counsel's experience. **See** Filing No. 69 - Response p. 26. However, the defendant questions the representation of the named plaintiffs for their failure to work in the Slaughter area. *Id.* at 26-27. The defendant states the Slaughter area comprises twenty percent of the putative class members, yet "most of the named Plaintiffs testified that they have no knowledge about the pertinent facts in the Slaughter area, including the clothing and equipment worn by and the activities of the employees in Slaughter." *Id.* For these reasons, the defendant argues the named plaintiffs fail to prove common interests with other members of the class. *Id.* The plaintiffs counter that the named plaintiffs' interests remain the same as those of the putative class members, despite the nature of employment. **See** Filing No. 72 - Reply p. 11-12. Specifically, the plaintiffs contend the same general compensation system affects the employees across departments such that the lack of a named plaintiff representing each department is immaterial. *Id.*

The court has reviewed the evidence presented and finds the plaintiffs have common interests with the proposed members of the class and sufficient interest in prosecuting the matter on behalf of the class. The plaintiffs' counsel also appears qualified. Thus, the court finds the plaintiffs and their counsel will fairly and adequately protect the interests of the class, thus meeting the adequacy of representation element under Rule 23(a)(4).

### 2. Rule 23(b)(1) Requirements

For class certification, the plaintiffs must also prove this action may be maintained under Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 614. The plaintiffs have moved to do so under Rule 23(b)(1) and/or Rule 23(b)(3). Under Rule 23(b)(1), the court must find:

> prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. . . .

**See** Fed. R. Civ. P. 23(b)(1).

The plaintiffs argue the defendant's compensation system impacts each class member similarly and raises the same questions of law creating a risk that if each of the production employees were to litigate separately varying outcomes would result with regard to, for example, the types of activities which are compensable. **See** Filing No. 63 - Brief p. 16-17. The defendant argues the individualized nature of the damage awards neither amounts to an "incompatible standard of conduct" for the defendant, nor would it impair non-parties from protecting their interests. **See** Filing No. 69 - Response p. 31-33.

The court finds the defendant's uniform pay system affects each employee in the same way, albeit to varying degrees. Further, a determination about whether the pay system is a violation of state statute, that is the defendant's liability, should be uniform for each plaintiff and the defendant. **See** *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396-97 (E.D. Pa. 2001) ("Certifications under [Rule 23(b)(1)] are common in labor relations cases because defendants often provide 'unitary treatment to all members of [a] putative class [in this] . . . area' and thus the rights of absent 'class member[s] [are often] . . . implicated by litigation brought by other class members.'") (alterations in original). The defendant focuses on the damages awards, which are likely to differ among employees, without adverse impact on the defendant or the class as a whole. However, the defendant

may be subject to differing and incompatible standards of conduct if the outcomes of separate litigation resulted in different definitions of work or compensable activity. Under such circumstances, the defendant may have to compensate employees working side-by-side differently for the same activity. Accordingly, class certification under Rule 23(b)(1) appears appropriate.

### 3. Rule 23(b)(3) Requirements

Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." **See** Fed. R. Civ. P. 23(b)(3). "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Accounts Serv./Check Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

#### i. Predominance

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (**citing** 7A Wright, et al., **Fed. Practice & Proc.** § 1777, at 518-19 (2d ed. 1986)). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). "Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist." *D'Alauro v. GC Servs. Ltd. P'Ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citation omitted). Furthermore, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." 7A Wright, et al., *supra*, § 1778.

> The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. If, to make a prima facie showing on a given

15

> question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

*Blades*, 400 F.3d at 566 (internal citation omitted).

The defendant argues individual issues predominate in this case because of different types of PPE and different employee experiences. **See** Filing No. 69 - Response p. 34-35. Because of individual variances, the defendant maintains there is no common compensation practice. *Id.* at 34. Further, the defendant contends separate issues would require individual trials. *Id.* at 35.

However, the court finds the employees do not present unique issues for determining liability. In fact, the specific issues raised by the defendant highlight the necessity for a joint trial on these matters. The types of activities subject to compensation are uniform among the employees without regard to their individual work experiences. Accordingly, whether the employees are engaging in compensable pre- and post-shift activities will not depend on individual experience or timing. In this case, common issues are the same in all class members' cases and therefore the same issue "predominates" over their individual cases. Each case for each class member is about the defendant's common compensation system for activities by production employees at the Dakota City, Nebraska, facility. The compensation system remains "common" even though the defendant pays certain compensation above the gang time amounts for some employees. Because this same issue is common to all class members, regardless of the differences in individual experiences, the predominance element is satisfied.

### ii. Superiority

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." **See** Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy. Having to engage in separate threshold inquiries for each class member prior to reaching the

common issues does not promote such economy. . . . [It] will create judicial *dis* economy." *Estate of Mahoney*, 204 F.R.D. at 161 (**quoting** *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D. Mo. 1997)).

The plaintiffs contend there is no alternative forum superior to a class action under the facts of this case.  **See** Filing No. 63 - Brief p. 19-23.  A class action would give hundreds, or thousands, of workers an opportunity to resolve their claims in one lawsuit, as opposed to the same number of individual lawsuits over the same issue.  *Id.* at 20.  The plaintiffs assert the modest monetary nature of individual claims would decrease the likelihood of individual lawsuits.  *Id.* at 21.  The defendant contends a class action under the circumstances is not superior because of the individualized nature of the claims requiring individualized trials.  **See** Filing No. 69 - Response p. 35-36.  In addition, the defendant argues a class action is not the superior method of determining the plaintiffs' claims because the plaintiffs have the option of proceeding under the FLSA.  *Id.* at 36.  In fact, the defendant asserts that the plaintiffs are "purposefully seeking to circumvent Congress's intent for wage and hour claims" by seeking class certfication under Rule 23, rather than proceeding under the FLSA.  *Id.*

In support of its arguments related to the FLSA, the defendant contends the plaintiffs' FLSA claims are inconsistent with, and show the inferiority of a Rule 23 class action.  The defendant cites a handful of cases in support of the argument.  However, the court finds the reasoning in cases rejecting those arguments to be more persuasive.  **See** *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161-64 (S.D.N.Y. 2008).  This is particularly true where, as here, the court determines the FLSA claims do not pre-empt the state law claims.  Although the plaintiffs have not sought conditional certification of the FLSA claims, there may be a number of reasons employees would not opt-in to the action that has nothing to do with a belief they were not actually aggrieved.  **See** *id.* at 163 (noting "employees may feel intimidated about volunteering to participate in an opt-in collective action").  The *Damassia* court also noted:

> Precisely quantifying these costs-to those wrongly included in class actions, or to those wrongly excluded from collective actions-is not possible, but there is no reason to think that the

> one will significantly outweigh the other. Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation. Accordingly, the concern about including class members who do not really want to participate in the class deserves little weight in assessing whether a class action is superior to other available methods of adjudication.

*Id.* (internal citation and quotations omitted).

The court finds resolution of the claims, at least as to the liability of the defendant to each individual class member, through a class action would, under the circumstances, be an efficient allocation of judicial resources. As stated above, resolution of the plaintiffs' claims do not require the individualized scrutiny described by the defendant because the core issue and arguments of each putative class member are the same. A class action is a superior method of resolution of the issues compared to individual litigation, separate litigation of the state law claims, or an FLSA action alone. Accordingly, the undersigned magistrate judge will recommend class certification under Rule 23(b)(3). Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

The plaintiffs' Motion for Rule 23 Class Certification (Filing No. 62) be granted to include:

> All current and former employees of Defendant Tyson's Dakota City, Nebraska, meat processing facility who have been employed by Tyson at any time from January 17, 2004, to the present and are or were paid under a "gang time" compensation system in the Slaughter or Processing Departments.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of

any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 17th day of December, 2010.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

19