IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
OMAHA DIVISION

JOSE A. GOMEZ, JULIANA REYES,    )
JUAN M. CRUZ, TED MCDONALD   )
CECILIA ORTIZ and MARIO CRUZ    )     CASE NO. 8:08-CV-00021-JFB-TDT
on behalf themselves and all other similarly )
situated individuals,    )
    )
           Plaintiffs,   )    DEFENDANT'S MEMORANDUM IN
    )    SUPPORT OF OBJECTIONS TO
    )    MAGISTRATE JUDGE'S FINDINGS
    v.    )   AND RECOMMENDATION ON RULE 23
    )    CLASS CERTIFICATION
    )
TYSON FOODS, INC.    )
(d/b/a Tyson Fresh Meats),    )
    )
           Defendant.   )

Allison D. Balus
BAIRD HOLM LLP
1500 Woodmen Tower
Omaha, NE 69102-2068
Phone: 401-344-0500

Michael J. Mueller (*pro hac vice*)
Evangeline C. Paschal (*pro hac vice*)
HUNTON & WILLIAMS LLP
1900 K. Street, N.W.
Washington, DC 20006
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Attorneys for
TYSON FOODS, INC., DEFENDANT

Dated:  December 30, 2010

## INTRODUCTION

This action arises out of the Plaintiffs' employment at Defendant's beef processing facility in Dakota City, Nebraska. Plaintiffs allege that Defendant is violating the Fair Labor Standards Act ("FLSA"),[1] 29 U.S.C. §§ 201 *et seq.,* the Nebraska Wage and Hour Act, Neb. Rev. Stat. §§ 48-1201 to 48-1209, and the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. §§ 48-1228 to 48-1232. Specifically, Plaintiffs allege that they are not compensated for donning and doffing various types of clothing and protective equipment, cleaning and sanitizing that equipment, walking time, working on knife maintenance equipments, and waiting in line to receive equipment needed for production line activities.

Production operations at the facility are made up of several different areas, including Slaughter and Processing. *See* Magistrate Judge Thalken's Report & Recommendation ("R&R") (Docket No. 74) at 4. Those areas are further sub-divided into various departments, each performing a different aspect of production. *Id.* In all, the plant employs approximately 3,050 hourly workers in 174 departments with 746 discrete jobs codes. *Id.* at 3. These workers have different tasks and, as explained further below, they wear different protective clothing. *See id.* at 3-4. Importantly, Defendant uses a variety of time recording and pay practices, many of which differ based on each employee's supervisor, the duties assigned, and department. *Id.* at 4. Many, but not all, of the pay determinations start with "gang time," which is the amount of time the production line is running on each shift. *Id.* From that baseline, the employees in each unit's— and sometimes each employee's—pay depends on a host of additional factors. *Id.* Employees may also be paid "guaranteed hours" if the weekly production time falls below the number of

---

[1] Plaintiffs have never, however, sought conditional certification of the FLSA claims. *See* 29 U.S.C. § 216(b).; R&R at 2.

1

hours previously scheduled pursuant to a collective bargaining agreement. *Id.* Moreover, employees in Slaughter are paid "sunshine time," which is the difference between the scheduled and actual production times. *Id.* As a result of these differences, while some putative class members may have claims for under-compensation, others may not, and there is no convenient way to ascertain which class members fall into either category.

On June 21, 2010, Plaintiffs filed the instant motion for class certification. (Docket No. 62). Magistrate Judge Thalken subsequently issued a report in which he recommended that the Court certify a class action under Federal Rule of Civil Procedure 23 for Plaintiffs' claims under the Nebraska Wage and Hour Act and the NWPCA. *See* Docket No. 74. However, his recommendation rests upon six fundamental errors. First, although the Magistrate Judge acknowledges that he was required to "conduct a 'rigorous analysis'" of the Rule 23(a) factors, *see* R&R at 5, he did not do so. Indeed, there is almost a complete lack of citations to the record or case when analyzing most of the factors. Second, the Magistrate Judge erroneously concluded Defendant had a uniform policy for compensating hourly workers, while not addressing the widespread variation in pay practices and equipment worn by employees. Third, certification would be erroneous because the undisputed facts do not meet the commonality or typicality requirements of Rule 23(a)(2) and (3). Fourth, the Magistrate Judge erred in finding Plaintiffs met the adequacy of representation requirement of Rule 23(a)(4), as none of the named Plaintiffs have any experience in or knowledge of Slaughter operations. Fifth, the Magistrate Judge erred in finding Plaintiffs met the requirements of Rule 23(b). Sixth, Plaintiffs' state law claims are not amenable to class action treatment because they are inconsistent with the "opt-in" procedure that Congress created for FLSA claims.

## ARGUMENT

I.   **THE MAGISTRATE JUDGE APPLIED THE INCORRECT STANDARD IN CERTIFYING THE CLASS UNDER RULE 23**

A.   The Magistrate Judge Failed To Conduct A "Rigorous Analysis"

Before certifying a class action, the Court is required to conduct a "rigorous analysis" to determine whether the "prerequisites of Rule 23 are satisfied." *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006) (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)).  However, in recommending certification of a class action to adjudicate Plaintiffs' state law claims, the Magistrate Judge abdicated his obligation under Supreme Court and Eighth Circuit precedent to perform such a rigorous analysis in determining whether Plaintiffs had met their burden.  A rigorous analysis is particularly needed in this case because Plaintiffs' claims turn upon issues requiring individualized, fact-intensive analyses to determine whether Defendant is liable to any particular employee and, if so, the amount of any damages.

In each section of his opinion discussing the disputed elements of Rule 23(a), the Magistrate Judge's conclusions do not marry with the facts or law.  *See* R&R at 9-10 (commonality), 10-12 (typicality), and 12-13 (adequacy of representation).  This is insufficient, as a rigorous analysis requires the Court to demonstrate *how* the facts at issue satisfy each of the elements of Rule 23(a), and failure to do so is reversible error.  *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 Fed. Appx. 550, 559 (6th Cir. 2003) (certification was in error where district court failed to demonstrate through rigorous analysis (i) scope of proposed class, (ii) whether named plaintiffs' particular claims made them adequate representatives for class, and (iii) whether claims raised on behalf of class were different from named plaintiffs' individual claims); *Griffin v. Dugger*, 823 F.2d 1476, 1489 (11th Cir. 1987) (district court failed to conduct rigorous analysis, which required factual showing of how each element of Rule 23(a) was satisfied;

3

*Marion v. Werner Enters.*, No. 8:08CV466, 2009 U.S. Dist. LEXIS 101706, at *4-5 (D. Neb.

Sept. 9, 2009) (finding "a determination under Rule 23(a) is not perfunctory" and requires a

rigorous analysis), adopted by *Marion v. Werner Enters.*, No. 8:08CV466, 2009 U.S. Dist.

LEXIS 101687 (D. Neb. Nov. 2, 2009).

 In addition, the Magistrate Judge could recommend certification only by disregarding his

own statement of pertinent facts, which establish a wide variety of compensation practices.

Namely, as recognized by the Magistrate Judge, there is evidence that the putative class members

are subject to different compensation and clothing policies and practices depending on their

departments and jobs.  These different policies and practices are crucial to determining the

viability of a claim for under-compensation, and the widespread variation among them thus

precludes class certification.  *See Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957,

966 (W.D. Mich. 2009) (denying certification, in part, because variation in equipment worn by

employees and their donning and doffing times would lead to "great disparities in the liability

issue alone").  Yet, the Magistrate Judge relied upon a generalized notion of "gang time" as a

common policy, which is both factually inaccurate and legally insufficient because Defendant

compensates employees in a number of ways other than, or that modify, gang time.

 B. <u>The Magistrate Judge Erred By Not Considering The Merits or Weaknesses Of Plaintiffs' Underlying Claims</u>

 At the outset of his analysis, the Magistrate Judge stated that "[t]he court may not

consider the factual merits or weaknesses of Plaintiff's underlying claims."  R&R at 10 (quoting

*Caroline C. By and Through Carter v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (citing

*Eisen v. Carlise & Jacquelin*, 417 U.S. 156, 177-178 (1974)).  However, when considering class

certification under Rule 23, a court must "perform a rigorous analysis to ensure that the

prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always,

4

require looking behind the pleadings to issues overlapping with the merits of the underlying claims." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir.), *cert granted, in part*, 2010 U.S. LEXIS 9588 (U.S., Dec. 6, 2010).  Moreover, a rigorous analysis "must involve consideration of what the parties must prove" to prevail.  *Elizabeth M*, 458 F.3d at 786.

Indeed, the trend among the Circuits is to demand that plaintiffs establish each fact necessary to meet Rule 23's requirements by a preponderance of the evidence when seeking to certify a class.  *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008); *see also Am. Honda Motor Co., v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010) ("a district court must make the necessary factual and legal inquiries and decide all relevant contested issues prior to certification"); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228 (5th Cir. 2009) (issue of predominance must be established by a preponderance of the evidence); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F. 3d 196, 202 (2d Cir. 2008) (holding that "the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ("[t]he factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits.").  *Eisen*, which the Magistrate Judge cites in support of his refusal to consider the facts of this case, does not necessarily preclude any inquiry into the merits.  *Dukes*, 603 F.3d at 582 ("Courts . . .have myopically invoked *Eisen* to avoid considering facts properly relevant to the Rule 23 determination because the facts happen to be relevant to the later merits inquiry as well.").  Indeed, the Supreme Court recently granted certiorari in *Dukes* and will consider how Rule 23(b) interrelates with Rule 23(a), meaning that it will likely evaluate the level of factual scrutiny required at the Rule 23 class certification stage.  *See* 2010 U.S. LEXIS 9588.  In its petition for certiorari in *Dukes*, Wal-Mart highlighted the divide

between the Ninth Circuit and other Circuits on the appropriate level of analysis.  Given that the

Ninth Circuit focused on *Eisen* in analyzing this issue in *Dukes*, the Supreme Court will have the

opportunity to clarify the applicability of *Eisen* in the wake of the emerging trend in the Circuits

cited above.  *See Dukes*, 603 F.3d at 582-96.  Therefore, this recent development calls into

question the Magistrate Judge's reliance on *Eisen* and, at the very least, supports delaying a final

decision on class certification until the Supreme Court has clarified the appropriate level of

factual analysis required at this stage.

In any event, district courts in this Circuit *already* have applied this same standard to

deny class certification where the plaintiff did not establish "by a preponderance of the evidence

that she [could] make a prima facie showing of each element of the underlying claim with

common evidence."  *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 240 n.7 (S.D. Iowa 2010);

*Mooney v. Allianz Life Ins. Co.*, No. 06-545, 2009 U.S. Dist. LEXIS 15626, at *13 (D. Minn.

Feb. 26, 2009) (applying preponderance of evidence standard in determining whether class or

individual issues predominate); *see also Gries v. Standard Ready Mix Concrete*, L.L.C., 252

F.R.D. 479, 482 (N.D. Iowa Aug. 2008) ("To determine whether the requirements of Rule 23(a)

have been satisfied, the court must examine the factual basis for the plaintiff's claims … .").

These recent decisions demonstrate that the Court should take a cautious, restrictive approach to

class action certification.  In other words, it should not presume the requirements for class

treatment are met without considering all of the evidence presented, particularly where, as here,

individual issues will predominate in the merits inquiry.

Despite this case law to the contrary, the Magistrate Judge made a limited factual inquiry

in this case.  As shown below, the facts of this case demonstrate that a *proper* analysis must

result in a conclusion that the state-law claims are *not* capable of class treatment.  This is

particularly so with regard to the commonality and typicality requirements of Rule 23(a), but also with regard to the Rule 23(b) analysis.

## II. THE MAGISTRATE JUDGE ERRED IN FINDING DEFENDANT HAS A COMMON POLICY

### A. Defendant Does Not Have A Common Policy Applicable To All Putative Class Members

The Magistrate Judge found that Plaintiffs satisfied the requirements of Rule 23(a) based on his conclusion that Defendant's use of "gang time" means it has a common compensation policy. *See* R&R at 10 ("uniform gang time compensation system"). However, Defendant's only policy and practice is to pay hourly production employees for the *at-issue, non-production activities* through the additional minutes paid outside of the gang time system. The following three subsections illustrate in detail that Defendant does not have a "uniform compensation system" that affects all class members," but rather pays its employees based on a wide variety of factors.

#### 1. An employee's pay depends on a wide variety of factors

For most employees, gang time pay has represented only part of their compensation as, throughout the relevant time period, Defendant has had a policy to pay for certain donning- and doffing-related activities. An individual employee's compensation varies depending on the payment method used to calculate their time, the equipment he or she wears, his or her job position. The following three categories show that a large number of employees have received compensation for time beyond work on the production line, and the amount of such compensation has varied.

First, hourly production employees at the Dakota City facility are compensated through a variety of payment methods. Some employees are paid only partially by gang time because they either arrive early or stay late on the production floor in order to perform set up or clean up.

7

Anguiano ¶ 5; Arreola ¶ 8; Arnburg ¶ 6; Dunlop, IV ¶ 6; Faber ¶ 4; Garcia ¶ 6; Hulit ¶ 6; Jessip ¶ 7; Jigre ¶ 5; Koivisto ¶ 4; Martinez ¶ 5; Morales ¶ 7; Prak ¶ 5; Rann ¶ 5; Roum ¶ 6; Sayasone ¶ 6; Swanson ¶ 5.  In such cases, employees may perform some or all of their pre-shift clothes changing and sanitizing during paid time.  *Id*.  Moreover, some employees are paid based on a combination of gang time and the time that their supervisor records the employee starting set up or finishing clean up.  Arreola ¶ 8; Faber ¶ 4; Martinez ¶ 4; Reyes Dep. 103:24-104:5.  These employees receive the additional compensation that may vary on a daily and departmental basis, as supervisors often assign these duties based on seniority or to employees who volunteer.  Arnburg ¶ 6; Dunlop, IV ¶ 6.  Further, employees who complete a project on an individual basis receive compensation beyond gang time.  Jessip ¶ 4; Uehling ¶¶ 6-7.  Moreover, since July 1998, all hourly production workers have received an additional four minutes of compensated time for donning and doffing related activities in addition to "gang time," even if they do not spend that time on work related activities.  *See id*. at 3.

Second, depending on their position and personal preference, hourly production employees wear a variety of required and optional items, meaning the amount of time spent on these activities varies by individual employee.  Braun Dep. 14:9-16; Gomez Dep. 114:4-17; McDonald Dep. 77:16-78:13.  The required clothing and equipment these employees use and wear varies depending on the job position of the employees at any particular time.  R&R at 3.  Because there are 174 departments and 746 job codes at the Dakota City facility, the required clothing and compensation of employees can vary greatly.  *See id*. at 3-4.

Third, under the collective bargaining agreement at the Dakota City facility, employees receive "guaranteed time."  This means that if an employee works less than a certain number of guaranteed hours in a week, he or she will still be paid the difference between the actual hours

worked and the guaranteed hours.  Dunlop Dep. 60:6-61:16, 62:23-63:6.  In other words, employees may be compensated for time they did not actually work.

Fourth, employees in the Slaughter area receive "sunshine time."  Schroeder Dep. 12:18-15:18; Arreola ¶ 7, 33; Jessip ¶ 46.  Employees in the Slaughter area receive "sunshine time" when they have slaughtered the daily target number of cattle, meaning they are paid for the entire shift even though they did not work the entire shift.  Schroeder Dep. 12:18-13:10; Arreola ¶ 7.  During a shift, hourly employees in Slaughter could receive anywhere from one to twenty four minutes of "sunshine time" depending on how quickly production work is completed in comparison to the scheduled shift.  Schroeder Dep. 17:2-10.  Thus, here again, employees may receive compensation for time they did not actually work.

2.  <u>Different employees and jobs have different clothing and donning and doffing times</u>

The record evidence also reveals enormous differences in the protective clothing that employees are required to wear on the job, meaning there is a broad divergence in the amount of time spent donning and doffing by employees.  The following shows how widely the type of clothing and equipment may vary:

- *Shoes*:  There is not a facility-wide shoe requirement at Dakota City, other than shoes must have a good tread and not be made of canvas and some employees in Slaughter are required to wear steel-toed boots.  Arnburg ¶ 7; Braun Dep. 7:13-18; Gomez Dep. 32:13-33:4.  Some employees wear their personal shoes, and others wear boots provided by Defendant.  Gomez Dep. 32:19-25.

- *Whites*:  Employees in the Slaughter area are required to wear a white shirt and pants ("whites") while working on the production line.  Anquiano ¶ 6; Arreola ¶ 9; Choyce ¶ 7; Faber ¶ 5; Jessip ¶ 10; Koivisto ¶ 6; Martinez ¶ 7.  However, instead of wearing

9

the whites worn in Slaughter, employees in the Processing area are required to wear a white frock while on the production floor.  Arnburg ¶ 7; Deaton ¶ 7; Garcia ¶ 7; Green ¶ 7; Hulit ¶ 7; Jackson ¶ 7; Jigre ¶ 7; Kennedy ¶ 7; Morales ¶ 8; Prak ¶ 7; Rann ¶ 6; Roum ¶ 7; Shumansky ¶ 10; Touch ¶ 7; Uehling ¶ 8; Woodside ¶ 7.

- *Safety glasses:* Some, but not all, employees are required to wear safety glasses. Braun Dep. 7:23-8:5; J. Cruz Dep. 134:21-135:1; Gomez Dep. 32:9-12.

- *Gloves, aprons & sleeves*: Depending on their position, some employees are required to wear cotton gloves, rubber gloves, rubber aprons, plastic sleeves, or combinations of these items, but for most positions these items are worn at the employee's discretion, for example, to keep warm and/or dry.  Arreola ¶¶ 11-24; Anguiano ¶¶ 11-35; Dunlop, IV ¶ 9; Woodside ¶¶ 9,13-15,16-19, 21-23, 26-28, 32; J. Cruz Dep. 25:7-17; Gomez Dep. 56:25-57:5; McDonald Dep. 15:3-14; Reyes Dep. 45:19-21.

Employees store their required and optional clothing items and equipment at the plant between shifts.  Choyce ¶ 38; Faber ¶ 21.  However, some employees choose to wear some of their work clothes home.  J. Cruz Dep. 136:20-25; Gomez Dep. 57:14-19; Ortiz 37:10-20, 53:2-5.  Many employees put on or remove some or all of their required items while walking to or from the production floor.  Gomez Dep. 74:10-25, 107:1-12; Reyes Dep. 69:19-70:1.

       3.     <u>Pre- and post shift activities differ depending on the job and employee</u>

In addition to the donning and doffing activities, some employees engage in other pre-and post-shift activities, which may vary depending on the department, job position, and employee preference.  Before beginning production work, some employees must dip some of their clothing and equipment—such as mesh and rubber gloves, hooks, knives, scabbards and steels—in a sanitizing solution.  Anguiano ¶ 37; Choyce ¶ 33; Faber ¶ 14; Jackson ¶ 13; Jessip ¶ 37; Jigre ¶

12; Kennedy ¶ 13; Koivisto ¶ 13; Martinez ¶ 31; Prak ¶ 13; Shumansky ¶ 21; Swanson ¶ 13;

Woodside ¶ 14; Gomez Dep. 111:14-22; Reyes Dep. 69:19-70:11.

At the end of the shift, some, but not all, employees must rinse certain clothing and

equipment, including their knives and related equipment, and non-fabric hand and arm

protection, at wash sinks or with spray hoses in the production area.  Anguiano ¶ 42; Dunlop, IV

¶ 12; Choyce ¶ 36; Hulit ¶ 12; Jackson ¶ 17; Kennedy ¶ 17; Shumansky ¶ 26; Uehling ¶ 13.  The

time that it takes employees to wash their equipment varies, depending on their position, the type

of equipment they use and their own meticulousness.  Green ¶ 14; Morales¶ 15; Rann ¶ 9;

Uehling ¶ 13; J. Cruz Dep. 77:16-78:4; McDonald Dep. 78:1-13.

      B.     <u>Even if Defendant Had A Common Policy, Certification Should Be Denied</u>

Clearly, the undisputed facts described above show that Defendant does not have a

common compensation policy.  However, even if Defendant had a common policy, the

Magistrate Judge still did not have a basis for recommending certification because doing so

would require individualized inquiries to determine if the policy, as applied to a particular

individual, supports a claim for undercompensation.  Namely, to the extent Plaintiffs' claims are

that Defendant has not followed a common compensation policy or that such payments have not

fully compensated employees, these allegations of a *deviation* from policy will necessarily vary

from plaintiff to plaintiff, requiring individualized proof for purposes of liability.  *See Pacheco*,

671 F. Supp. 2d at 966 ("[B]ecause there is a formal policy to pay employees for donning and

doffing activities, any failures to follow that policy will be unique to specific departments and

supervisors."); *Thompson v. Speedway SuperAmerica LLC*, No. 08-1107 (PJS/RLE), 2008 U.S.

Dist. LEXIS 115050, at *18 (D. Minn. Aug. 21, 2008) (representative action inappropriate where

plaintiffs could not show corporate policy resulted in failure to pay for compensable activities),

adopted by *Thompson v. Speedway SuperAmerica LLC*, No. 08-1107 (PJS/RLE), 2009 U.S. Dist. LEXIS 3816 (D. Minn. Jan. 20, 2009) (where alleged practice of failing to pay overtime was contrary to defendant's stated policy, the "individualized nature" of the plaintiffs' claims made the case "inappropriate for certification").

The district court's decision denying certification of plaintiffs' claims in *Pacheco* establishes this point.[2]  671 F. Supp. 2d at 966.  Like Tyson, the defendant in *Pacheco* had a policy designed to provide employees with additional paid time for donning and doffing at the beginning of their shift and during their meal period.  *Id.* at 962.  Some *Pacheco* plaintiffs claimed that the defendant did not adhere to its policy and, thus, did not pay them for donning and doffing.  *Id.*  Plaintiffs claimed that it was this failure to follow the policy that provided them with common claims.  *Id.*  In denying certification, the *Pacheco* court noted that the plant employed over 500 production workers and that each of the departments "has different requirements for protective equipment" and "[s]ome of the protective equipment is required and some is optional."  *Id.* at 963.  The *Pacheco* court recognized that the plaintiffs "put on different items, at different times, in different places, all depending on their job duties and their own personal practices and preferences."  *Id.* at 966.  These factual differences led the *Pacheco* court to deny certification based on "great disparities in the liability issue alone," and that any failure to follow the policy to pay for donning and doffing activities would be based on the unique circumstances of each individual plaintiff's employment.  *Id.*

Here, the overwhelming evidence shows that Defendant compensated employees for donning and doffing and related activities based on the clothing and equipment required for their

12

particular job position.  To the extent Plaintiffs argue that the method of payment failed to compensate hourly production employees for any time performing such activities, any such inquiry requires individualized proof.  Specifically, it requires an analysis of what equipment they were required to wear, how long it took to don and doff that equipment, the distance to their department, and whether the minutes paid matched the time that it reasonably took to perform those activities.  As in *Pacheco*, this individualized inquiry creates irreconcilable disparities on the issue of liability that cannot be resolved on a class-wide basis.  Thus, even if Defendant did have a common policy, the Magistrate Judge should not have recommended certification.

## III.   THE MAGISTRATE JUDGE ERRED IN FINDING PLAINTIFFS' CLAIMS SATISFIED THE REQUIREMENTS OF COMMONALITY AND TYPICALITY

Plaintiffs had the "the burden of showing that the class should be certified and that the requirements of Rule 23 are met."  *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994).  Rule 23(a) contains two distinct subsections—commonality and typicality—each of which must be satisfied.  *See* Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  The Magistrate Judge based his recommendation that Plaintiffs had met the requirements of commonality and typicality on his conclusion that Defendant had a common policy regarding the compensation of its hourly employees at the Dakota City facility.

However, because Defendant did not have such a common policy, there is no basis for the Magistrate Judge having found that Plaintiffs satisfied the commonality and typicality requirements of Rule 23(a).  *See Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996) (finding plaintiffs could not satisfy typicality element for class certification where they failed to

---

[2] Although *Pacheco* analyzed FLSA collective action certification, the facts are analogous to the present case and the same rationale applies to the determination of whether state statutory claims of unpaid compensation should be allow to proceed as a representative action.

identify an unlawful company-wide practice or policy); *Pacheco*, 671 F. Supp. 2d at 960 (representative action inappropriate where plaintiffs did not provide evidence of a common unlawful decision, policy or plan); *Thompson*, 2008 U.S. Dist. LEXIS 115050, at *16 (representative action inappropriate where plaintiffs could not show corporate policy resulted in failure to pay for compensable activities).  Indeed, Plaintiffs' proposed class does not meet the commonality or typicality elements because Plaintiffs' claims are not common or typical of the class.  For example, to state a claim under the NWPCA, Plaintiffs must show that Defendant failed to pay "'compensation for labor or services rendered by an employee, … when previously agreed to and conditions stipulated have been met by the employee.'" *Pick v. Norfolk Anesthesia, P.C.*, 276 Neb. 511, 516, 755 N.W. 2d 382, 386 (Neb. 2008) (quoting Neb. Rev. Stat. § 48-1229(4) (Supp. 2007)).  Here, other than Tyson's policy to pay employees additional minutes depending on the employees' varying circumstances, there is *no* evidence of a uniform policy or agreement.

A.   <u>Plaintiffs' Claims Fail To Satisfy The Commonality Requirement Of Rule 23(a)(2)</u>

The Magistrate Judge erred in finding Plaintiffs satisfied the commonality requirement under Rule 23(a)(2), which requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); *see Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("not every common question . . . will suffice [to show commonality]" because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality.").  His recommendation regarding commonality rested critically on the assumption that "the defendant relies on a uniform labor practice for its Slaughter and Processing area employees" that "results in the employees engaging in activities for which they may not be paid."  R&R at 10.

However, as shown above, the undisputed record establishes that gang time is *not* a uniform pay system, but simply a baseline. *See* R&R at 2-5. There are nearly 3050 employees at the plant, who fall into 746 discrete job codes and are subject to materially different pay practices and protective clothing requirements. *See id.* at 3-4. The result is a divergent amount of time and effort involved in donning and doffing which leads to non-uniform pay. *See id.* Moreover, all employees receive "guaranteed time" and employees in Slaughter "sunshine time," which are by definition, compensation for time that employees did not actually work. Because Defendant often pays employees for time in which they are not performing production work, they are clearly not engaging activities for which they may not be paid.

Commonality does not exist where there are "factual disputes as to a number of the employees regarding both liability and damages," the employer's compensation practices varied over time and depending on an employee's assignments. *See Marion*, 2009 U.S. Dist. LEXIS 101706, at *4-5. Here, the majority of Plaintiffs will have claims that are widely divergent from other Plaintiffs, requiting factual inquiries into the time of their tenure, jobs worked, and supervisors. For example, the Slaughter employees receive "sunshine time," but the Processing employees do not. Yet, despite the varying pay practices among departments and jobs that affect employees differently, the Magistrate Judge incorrectly concluded that compensation practices were uniform across the plant and did not perform the a sufficient inquiry into whether Plaintiffs satisfied the commonality requirement.

B.    Plaintiffs' Claims Fail To Satisfy The Typicality Requirement Of Rule 23(a)(3)

The Magistrate Judge also erred in concluding that Plaintiffs' claims are typical of the entire class under Rule 23(a)(3). "Careful evaluation is necessary because typicality . . . [is] necessary to comport with the requirements of due process." *S & S Forage & Equip. Co. v. Up*

*North Plastics, Inc.*, No. Civ. 98-565 2002 WL 31718409, at *2 (D. Minn. Nov. 21, 2002) (citing

*In re South Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 418 (M.D. La. 1980)).  As

the Magistrate Judge correctly noted, "plaintiffs cannot show typicality where the question of

liability can only be ascertained on an individualized inquiry for each class member."  R&R at

11 (citing *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004));

*see also Elizabeth M.*, 458 F.3d 787 (typicality not established when proving liability "requires

individualized inquiry").  Unfortunately, the Magistrate Judge did not adhere to the standard that

he articulated.  Namely, he did not consider that employees wear different types of equipment,

and the type and extent of such equipment varies depending on the employee's job assignment

and whether it is optional or mandatory.  *See* R&R at 12 ("Whether the employees are engaging

in compensable pre- and post-shift activities will not depend on how much time an individual

employee takes to don an apron.").

However, the law dictates that the Magistrate Judge should have considered these

variances because they show that certifying the class would require individualized inquiry as to

each Plaintiff's claims.  Indeed, "the liability of defendant depends on whether defendant failed

to pay a particular plaintiff for compensable time spent performing donning-and-doffing

activities."  *See Lugo v. Farmer's Pride*, No. 07-0749, 2010 U.S. Dist. LEXIS 88139, at * 36

(E.D. Pa., Aug. 25, 2010) (denying plant-wide certification because employees did not suffer

under-compensation according to a "single decision, policy or plan" applicable to all the

employees, "but rather that defendant's policies and practices impacted individual plaintiffs in individual ways.").[3]

Moreover, the Magistrate Judge should have considered that named plaintiffs are not typical of the class because none of them had ever worked in the Slaughter area during the class period. *See* R&R at 12 ("At a basic level, the claims and arguments made by the named plaintiffs are typical of the proposed class members, even in the Slaughter area."). Indeed, because Slaughter employees at Dakota City receive sunshine time, they have particularly divergent interests from the Processing employees,

Faced with similar facts, this Court held that the named plaintiffs failed to meet their burden of showing their claims were typical of those of the putative class members because the plaintiffs' state law claims, including their NWPCA claim, required individualized factual inquiries into the circumstances surrounding each employee's claims for unpaid wages and benefits. *See Marion*, 2009 U.S. Dist. LEXIS 101706, at *5. Here, as in *Marion*, Plaintiffs cannot meet the typicality requirement of Rule 23(a)(3) on their NWPCA claim because each putative class member will have a different amount of claimed time for the activities at issue; and there will be individual questions about whether the various amounts of time and compensation practices applied by Defendant adequately compensated such hourly production employees.

Therefore, because the Magistrate Judge did not acknowledge that variance in donning and donning times is relevant and would result in the need for individualized inquiries, this Court should not adopt his recommendation that Plaintiffs met the typicality requirement for class treatment under Rule 23. *See In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 364-66 (S.D.

---

[3] In a recent order, the district court in *Lugo* allowed a subclass of *one* shift in *one* department to be tried collectively. *See Lugo*, No. 07-0749, Order Granting Partial Collective Action for Trial,

Iowa 2008); s*ee also Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986).

## IV.    THE MAGISTRATE JUDGE ERRED IN FINDING PLAINTIFFS MET THE ADEQUACY OF REPRESENTATION REQUIREMENT

The Magistrate Judge likewise erred in concluding that Plaintiffs satisfied the adequacy of representation requirement of Rule 23(a)(4).  R&R at 12.  "Seeking to represent a large group of people as a class representative in a lawsuit is a very heavy responsibility … and the court should allow such representation only upon a firm foundation that the named plaintiffs are willing and [] able to shoulder that burden."  *Clayborne v. Omaha Pub. Power Dist.*, 211 F.R.D. 573, 597 (D. Neb. 2002) (citations omitted) (alteration in original).  *See also See Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. Ill. 1999) (class representative's weak claim is independent reason to doubt adequacy of representation); *O'Neal v. Wackenhut Servs., Inc.*, No. 3:03-cv-397, 2006 U.S. Dist. LEXIS 34634, at *60 (E.D. Tenn. May 25, 2006) (finding named plaintiffs inadequate class representatives, in part, because "the unique circumstances" of their claims made them "significantly weaker than claims of many potential class members").

All of the six named Plaintiffs worked in the Processing area, but none of them has ever worked in the Slaughter area.  J. Cruz Dep. 13:22-15:12; M. Cruz Dep. 110:3-5; Gomez Dep. 27:21-23; McDonald Dep. 98:22-24; Ortiz Dep. 10:11-24; Reyes Dep. 43:11-16.  Moreover, all of the named Plaintiffs testified that they had little or no knowledge about the Slaughter area, including what equipment the employees in Slaughter wear. McDonald Dep. 98:25-99:5; Gomez Dep. 27:18-23; Reyes Dep. 43:14-16; M. Cruz Dep. 110:3-8; Ortiz Dep. 52:7-17.

---

Dec. 9, 2010 (Docket no. 505) (available on PACER).

The Magistrate Judge gave limited recognition to the problems raised by Defendant with regard to named Plaintiffs. *See* R&R at 12-13. He merely stated that the named plaintiffs have "common interests" and "sufficient interest in prosecuting the matter on behalf of the class." *See id*. at 13. Simply put, the Magistrate Judge erred in finding the named plaintiffs are adequate representatives.

## V.      THE MAGISTRATE JUDGE ERRED IN FINDING PLAINTIFFS MET THE REQUIREMENTS OF RULE 23(b)

The Magistrate Judge also erred in finding that Plaintiffs satisfied one of the subsections of Rule 23(b). *See Blades v. Monsanto Co.*, 400 F.3d 562, 568 (8th Cir. 2005) (citing *Amchem Prods., Inc.*, 521 U.S. at 614). The Magistrate Judge recommended certification under both subsections (b)(1) and (b)(3) of Rule 23. However, Plaintiffs failed to meet the requirements of either of these subsections.

### A.      Plaintiffs Have Not Satisfied Rule 23(b)(1)

To maintain a class action under Rule 23(b)(1), Plaintiffs must demonstrate that the prosecution of separate actions by the class members "would create a risk of":

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Courts have repeatedly held that Rule 23(b)(1) is generally inappropriate for wage-and-hour claims, particularly when, as here, each employee's entitlement to compensation will depend upon the unique circumstances of his or her job situation. "[C]lass certification under

[Rule 23](b)(1) should properly be confined to those causes of action in which there is a *total absence of individual issues*." *McHan v. Grandbouche*, 99 F.R.D. 260, 266 (D. Kan. 1983) (emphasis added). *See also Bouaphakeo v. Tyson Foods, Inc.,* 564 F. Supp. 2d 870, 907-08 (denying class certification in donning and doffing case under Rule 23(b)(1) because of individualized factual issues raised by state law claims); *Gieske v. First Horizon Home Loan Corp.*, No. 04-2511-CM, 2007 WL 437792 (D. Kan. Feb 6, 2007) (same); *Horowitz v. Pownall*, 105 F.R.D. 615, 618 (D. Md. 1985) (certification under Rule 23(b)(1) only proper where "there is a total absence of individual questions"); *In re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 376 (N.D. Okla. 1977) (same); *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 53 (D. Del. 1974) (same); *Tober v. Charnita, Inc.*, 58 F.R.D. 74, 81 (M.D. Pa. 1973) (same). Here, the abundance of distinct legal and factual issues relevant to each putative class member makes this matter unsuitable for certification under Rule 23(b)(1). Moreover, the variability of factual and legal issues ensures that there is no risk of inconsistent verdicts or that any individual verdict would, as a practical matter, prejudice any other potential plaintiff.

In fact, it is the Magistrate Judge's proposed grouping of dissimilar claims that threatens to prejudice the interests of Plaintiffs whose claims are factually distinct. Notably, *none* of the named Plaintiffs have ever worked in the Slaughter, testifying that they have little to no knowledge about any of the activities or job codes in that area. *See* R&R at 13. The facts clearly show the pay practice at Dakota City varies by department, and does not constitute a common pay system. Litigating the claims under a loosely defined common pay system, which in practice is not common for a significant number of employees, poses a risk that evidence for absent plaintiffs will be disregarded in an effort to standardize claims.

B.    Plaintiffs Have Not Satisfied Rule 23(b)(3)

The Magistrate Judge likewise erred in concluding that the requirements of Rule 23(b)(3), known as the superiority requirement, are satisfied.  Under Rule 23(b)(3), Plaintiffs must demonstrate "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy."  "The predominance inquiry is 'more demanding than the commonality requirement of Rule 23(a)' and requires courts 'to consider how a trial on the merits would be conducted if a class were certified.'"  *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301-02 (5th Cir. 2003)); *see Bowe v. PolyMedica Corp. (In re Polymedica Corp. Sec. Litig.)*, 432 F.3d 1, 4 n.5 (1st Cir. 2005); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004.  For potential classes under Rule 23(b)(3), the Rules "invite[] a close look at the case," *Brown v. American Honda (In re New Motor Vehicles Canadian Export Antitrust Litig.)*, 522 F.3d 6, 34 (1st Cir. 2008) (quoting *Amchem*, 521 U.S. at 615), to determine whether "the rigorous Rule 23(b)(3) requirements" are met, *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 554 (5th Cir. 2003).  *See also Gunnells v. Healthplan Servs.*, 348 F.3d 417, 468 (4th Cir. 2003).

The Eighth Circuit has held, "[I]f, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question" and common questions do not predominate over individualized issues.  *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).  Here, the putative class epitomizes a situation where it will need to present evidence that varies from member to member.  Indeed, in his recommendation, the Magistrate Judge mentioned numerous undisputed

facts that demonstrated questions of liability will vary significantly by department, job code, and employee.  *See* R&R at 3-4.

The determination of whether Defendant is liable to any particular employee will turn on particularized inquiries: (1) what the employee was required to wear, (2) when and where it was donned or doffed, (3) what effort and time it took, (4) what supervisor the employee had, and (5) whether and how gang-time pay was supplemented.  Such *uncommon* issues of fact and law predominate over the broadly defined basis for commonality on which the Magistrate Judge has based his recommendation.

In addition, in determining whether a class action is "superior" to other methods of adjudication, a court must "focus on the efficiency and economy elements of the class action," *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), considering "the difficulties likely to be encountered in the management of a class action," *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(b)(3)).  *See also Telco Group Inc. v. Ameritrade, Inc.*, 8:05cv387, 2006 U.S. Dist. LEXIS 83475 (D. Neb. Nov. 6, 2006); *Evans v. Am. Credit Sys.*, 222 F.R.D. 388, 396 (D. Neb. 2004).  Because the clothing requirements and pay practices vary so substantially across the proposed class and are critical to stating a claim, litigating these claims as a class action will be inefficient and unmanageable. Certifying such a class would result in varied individual trials to determine liability.

Such divided litigation is precisely what the Rule 23(b)(3) factors are designed to prevent.  "Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial diseconomy."  *Telco Group*, 2006 U.S. Dist. LEXIS 83475, at *31 (quoting *Estate of Mahoney v. R.J. Reynolds Tobacco Co.,* 204 F.R.D. 150, 161 (S.D. Iowa 2001); *see also Zinser*, 253 F.3d at

1192.  Because "the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action status is not the 'superior' method of adjudication . . ." *Zinser*, 253 F.3d at 1192.  Thus, the Court should not adopt the Magistrate Judge's recommendation that it certify a class based, in part, on Plaintiffs having met the requirements of Rule 23(b)(3).  *See Little Caesar Enters. v. Smith*, 895 F. Supp. 884, 902-07 (E.D. Mich. 1995) (partially rejecting magistrate judge's recommendation for certification of several different classes under Rule 26(b)(3) because the individual issues that would have predominated in one class also prohibited the use of multiple smaller classes).

## VI.   CLASS CERTIFICATION IS INAPPROPRIATE IN AN ACTION THAT RAISES FLSA CLAIMS

The Rule 23 class action mechanism is fundamentally incompatible with the FLSA's collective action procedure.  Congress established an "opt-in" scheme for FLSA collective actions, which ensures that no individual will have his or her right to a lawful wage resolved without affirmatively opting in.  *See* 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  Congress adopted the opt-in procedure to strike a balance between employee enforcement and protecting employers by both "limit[ing] private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

Rule 23 takes the opposite tack, establishing an "opt-out" scheme that binds unnamed parties unless they affirmatively opt out of the litigation.  Like numerous other courts, the Eighth Circuit has recognized that "[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)." *Schmidt v. Fuller Brush*

*Co.*, 527 F.2d 532, 536 (8th Cir. 1975) (quoting *La Chapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975)) (emphasis omitted); *King v. W. Corp.*, No. 8:04CV318, 2006 U.S. Dist. LEXIS 3926, at **47-48 (D. Neb. Jan. 13, 2006) (same); *Vogel v. Am. Kiosk Mgmt.*, 371 F. Supp. 2d 122, 127 (D. Conn. 2005) (same); *Robinson v. Sizes Unlimited, Inc.*, 685 F. Supp. 442, 445 n.7 (D.N.J. 1988) (same); *Ramsey v. Ryan Beck & Co.,* No. 07-635, 2007 WL 2234567, at *2 (E.D. Pa. Aug. 1, 2007) (same); *Herring v. Hewitt Assocs., Inc.*, Civ. No. 06-267, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006) (same).

Moreover, recent decisions have held that "the incompatibility between Rule 23 and Section 216 [of the FLSA] precludes a finding of superiority with regard to … state wage claims." *Ervin v. OS Rest. Servs.*, Inc., No. 08C1091, 2009 U.S. Dist. LEXIS 56062, at *7 (N.D. Ill. July 1, 2009); *see also Riddle v. Nat'l Sec. Agency, Inc*., No. 05C5880, 2007 U.S. Dist. LEXIS 68842, at **8-9 (N.D. Ill. Sept. 13, 2007); *Leuthold v. Destination Am., Inc*., 224 F.R.D. 462, 469-70 (N.D. Cali. 2004); *Hasken v. City of Louisville*, 213 F.R.D. 280, 284 (W.D. Ky. 2003).  In denying Rule 23 class certification, courts have relied on the conflicting opt-in versus opt-out procedural mechanisms for joining class members and have focused on Congress's intent in creating the opt-in procedure for federal court to "limit[] private FLSA plaintiffs to employees who asserted claims in their own right and free[] employers from the burden of representative actions." *Riddle*, No. 05 C 5880, 2007 U.S. Dist. LEXIS 68842, at **9-10; *see also Ervin*, 2009 U.S. Dist. LEXIS 56062, at *4.

Here, the Plaintiffs seek to circumvent Congress's intent for wage and hour claims in federal court to be "opt-in actions." *Indeed, despite pleading FLSA claims in their Complaint, Plaintiffs have chosen not to pursue certification under the FLSA.*  Instead, and in stark opposition to Congressional intent, Plaintiffs seek to force potentially thousands of individuals

who have not affirmatively chosen to litigate, and who may have differing interests from their own, into this case through their state law claims.  The Magistrate Judge's recommendation permits Plaintiffs to circumvent the FLSA's opt-in requirement by utilizing the completely different Rule 23 process; this is improper, particularly where the named plaintiffs are not adequate representatives of the class and where most of the potential class members have not shown any interest in joining this lawsuit.  *Ervin*, 2009 U.S. Dist. LEXIS 56062, at *6 (citing Riddle, 2007 U.S. Dist. LEXIS 68442, at *3).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should not adopt the report and recommendation of the Magistrate Judge and should deny Plaintiffs' request for certification of a class action under Fed. R. Civ. P. 23.

Dated this 30th day of December, 2010.

Allison D. Balus
BAIRD HOLM LLP
1500 Woodmen Tower
Omaha, NE 68102-2068
Phone: 402-344-0500


By:  s/Michael J. Mueller
     Michael J. Mueller (*pro hac vice*)
     Evangeline C. Paschal (*pro hac vice*)
     HUNTON & WILLIAMS LLP
     1900 K. Street, N.W.
     Washington, DC 20006
     Telephone: (202) 955-1500
     Facsimile: (202) 778-2201

     Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Brian McCafferty, Esq.

Michael Hamilton, Esq.

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

None.

s/Evangeline C. Paschal
_____