IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSE A. GOMEZ, JULIANA REYES, JUAN M. CRUZ, TED MCDONALD, CECILIA ORTIZ, and MARIO CRUZ, on behalf of themselves and all other similarly situated individuals;<br><br>Plaintiffs,<br><br>v.<br><br>TYSON FOODS, INC.,<br><br>Defendant. | 8:08CV21<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the plaintiffs' Objection to Magistrate Judge's Order, and, in the Alternative, Motion to Amend Class Definition, Filing No. 338, and on the defendant's Motion to Decertify, Filing No. 417.[1]

**1. Plaintiffs' Objection/Motion to Amend Class**

The plaintiffs object to that portion of the magistrate judge's order that excludes from the class those employees hired after the date of class certification, and alternatively, they move to amend the class definition. For the reasons stated in an order on the same issue in *Acosta v. Tyson*, Case No. 8:08CV86, the court finds the plaintiffs' objection to the magistrate judge's order should be sustained, the magistrate judge's order vacated, and the plaintiffs' alternative motion to amend the class should be granted. See *Acosta v. Tyson*, No. 8:08cv86, Filing No. 311, Findings of Fact and Conclusions of Law at 5, 49; Filing No. 316, Memorandum and Order at 2-3. The phrase "to the present" in the class definition can be reasonably understood to mean the

---

[1] The motion to decertify was presented with Tyson's motion for new trial, Filing No. 417. The motion for a new trial is addressed in a separate order.

date of the verdict. *See id.,* Filing No. 311, Mem. & Order at 3. The court finds the class herein should be amended to include all employees who were paid on 'gang time' up to the date of the jury's verdict.

**2. Defendant's Motion to Decertify the Class**

The defendant bases its motion to decertify on the contention that the recent United States Supreme Court cases of *Wal-Mart v. Dukes,* 131 S. Ct. 2541 (2011), and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), disallow "trial by formula." Tyson contends that the damages of the plaintiff class must be proved individually with respect to each plaintiff. It argues that the plaintiffs offered no classwide proof and there was significant variation among the class. Further, it argues that the plaintiffs' evidence was not representative of the class and did not offer a classwide number of minutes.

In order to qualify for class certification under Rule 23, a plaintiff must satisfy the threshold requirements of Rule 23(a) as well as the one of the three subsections of Rule 23(b). *See* Fed. R. Civ. P. 23; *Dukes*, 131 S. Ct. at 2548. The four threshold requirements of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

Under Rule 23(b)(1), a class action may be maintained if Rule 23(a) is satisfied and if: (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to

protect their interests. Fed. R. Civ. P. 23(b)(1). Under subsection (b)(3) of Rule 23, a plaintiff must show that common question of fact among class members predominate and that a class action is the superior method for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). In this case, the court found the plaintiffs satisfied both subsections (1) and (3) of Fed. R. Civ. P. 23(b).[2]

The Supreme Court's denial of class certification in *Wal–Mart v. Dukes* focused on the "commonality" element, which requires that a class action involve "questions of law or fact common to the class." *Dukes*, 131 S. Ct. at 2548. The Supreme Court specified that:

> What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 131 S. Ct. at 2551 (citations and internal quotation marks omitted).

---

[2] The court found:

> The court finds the defendant's uniform pay system affects each employee in the same way, albeit to varying degrees. Further, a determination about whether the pay system is a violation of state statute should be uniform for each plaintiff and the defendant. *See Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396-97 (E.D. Pa. 2001) ("Certifications under [Rule 23(b)(1)] are common in labor relations cases because defendants often provide 'unitary treatment to all members of [a] putative class [in this] . . . area' and thus the rights of absent 'class member[s] [are often] . . . implicated by litigation brought by other class members.'") (alterations in original). The defendant focuses on the damages awards, which are likely to differ among employees, without adverse impact on the defendant or the class as a whole. However, the defendant may be subject to differing and incompatible standards of conduct if the outcomes of separate litigation resulted in different definitions of work or compensable activity. Under such circumstances, the defendant may have to compensate employees working side-by-side differently for the same activity. Accordingly, class certification under Rule 23(b)(1) appears appropriate.

Filing No. 74, Findings and Recommendations at 13-14; *see* Filing No. 76, Mem. & Order. *Dukes* involved subsection (b)(2), which involves injunctive relief. *Dukes*, 131 S. Ct. at 2559-60. "[I]ndividualized monetary claims belong in Rule 23(b)(3)." *Id.* at 2558.

The propriety of class certification in wage and hour cases that involve recordkeeping violations should be assessed in light of the relaxed burden of proving damages. See *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (noting that the class certification analysis frequently entails overlap with the merits of the plaintiff's underlying claim, because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action); *Dukes*, 131 S. Ct. at 2552 & n.6 (noting the necessity of touching on the merits). The FLSA requires employers to pay their employees a specified minimum hourly wage and at least one and one-half times their regular pay for hours worked in excess of 40 hours each week. 29 U.S.C. § 207(a). This does not mean (as Tyson appears to suggest), however, that the plaintiffs must "prove each hour of overtime work with unerring accuracy or certainty." *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988); *Donovan v. Tony and Susan Alamo Foundation*, 722 F.2d 397, 403-404 (8th Cir. 1983) (an employer is charged with the duty of record-keeping so that the amount of work performed and compensation earned may be calculated with precision, and an employer failing to comply with this duty cannot complain if the record is deficient and the court must resort to a reasonable "approximation" in computing the amount of damages awarded). "If the employer kept inaccurate or inadequate records, the plaintiff's *burden of proof is relaxed*, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate." *Oldham v. United States Postal Serv.*, 465 Fed. App'x 440, 444 (6th Cir. 2012) (italics in original); see *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). The relaxed burden applies only to damages, not liability—it does not help plaintiffs show

4

that there was a violation under the FLSA; it only allows them to prove damages by way of estimate, if they had already established liability. *O'Brien v. Ed Donnelly Enterprises, Inc.,* 575 F.3d 567, 602 (6th Cir. 2009).

Unlike *Dukes*, which involved the subjective intent of thousands of managers, this action involves a company-wide compensation policy that is uniformly applied to production workers in Tyson's Dakota City, Nebraska, plant. In looking at the commonality requirement in wage and hour law cases post-*Dukes*, courts have focused on a common plan or company-wide policy to deny pay. *See, e.g., Leyva v. Medline Industries Inc.,* 716 F.3d 510, 513-514 (9th Cir. 2013) (finding an abuse of discretion to deny class certification in wage and hour case where damages inquiry was highly individualized, but common unlawful action was at issue); *Wang v. Chinese Daily News, Inc.*, 2013 WL 4712728, *4 (9th Cir. Sept. 3, 2013) (remanding for a determination of whether the claims of the proposed class "depend upon a common contention capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," noting that the plaintiff need not show every issue or even a preponderance of issues were capable of classwide resolution—["s]o long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)"); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith,* 672 F.3d 482, 490 (7th Cir. 2012) (challenging company-wide policies in a class action is not forbidden by the *Dukes* decision); *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59-60 (1st Cir. 2013) (allegations of across-the-board policy were sufficient to state a class action claim); *Vang v. Kohler Co.,* 488 Fed. App'x 146, *147 (7th Cir. 2012) (remanding to determine

5

whether "one firm-wide policy or a congeries of supervisor-level practices" were at issue).[3]

In contrast to *Dukes*, this case involves a uniform policy or practice of compensating employees on "gang-time" and the primary issue with respect to all members of the plaintiff class was whether their donning and doffing activities were compensable. The court finds the plaintiffs provided sufficient proof of a uniform policy of underpayment for donning and doffing activities, presenting a common question

---

[3] Numerous district court cases are to the same effect. *See, e.g., Thompson v. Bruister and Associates, Inc.*, 2013 WL 4507740, *11 (M.D. Tenn. August 23, 2013) (denying decertification, rejecting theory that plaintiffs must "'prove each hour of overtime work with unerring accuracy or certainty,'" and applying *Mount Clemens'* relaxed burden of proof since the employer kept inaccurate or inadequate records); *Alcantar v. Hobart Serv.*, 2013 WL 156530, *4 (C.D. Cal. Jan. 15, 2013) (holding *Dukes* inapplicable and finding plaintiffs met their burden of establishing an approximate award for purposes of awarding damages based on reasonable inferences provided by a representative sample of the class); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615 (S.D.N.Y. 2012) (stating that "[t]he weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases"; *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 308 (E.D. Pa. 2012) (finding that the class maintained a common claim that the employer broadly enforced an unlawful policy denying employees earned overtime compensation and that the policy was "the common answer that potentially drives the resolution of [the] litigation," though "each Plaintiff's recovery might be different due to the number of hours that he or she worked without proper compensation"); *Myles v. Prosperity Mortgage Co.*, 2012 WL 1963390, *6 (D. Md. May 31, 2012) (when differences go to the damages that each employee is owed, not to the common question of the employer's liability, plaintiffs have alleged a common injury that is capable of classwide resolution and *Dukes* is distinguishable and does not preclude class certification); *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1037 (N.D. Ill. 2012) (finding class could establish damages under using the *Mount Clemens* burden-shifting framework); *Mitchell v. Smithfield Packing Co.*, 2011 WL 4442973, *3 (E.D.N.C. September 23, 2011) (stating "In *Dukes*, there was no single decision, policy or plan at issue" and noting that "[w]hile differences may exist among the putative class members with regard to the type of protective equipment worn, the method in which they donned and doffed the equipment, and whether they were compensated for any donning and doffing time, these differences relate primarily to the issue of damages, which ordinarily are insufficient to preclude class certification."); *Martinez-Hernandez v. Butterball, LLC*, 2011 WL 4549606, *4 (E.D.N.C. Sept. 29, 2011) (noting in a donning and doffing case that "[t]he primary issue with regard to all of the plaintiffs' payday claims is whether their donning and doffing of protective equipment and related activities constitutes 'work'" and "[w]hile plaintiffs' claims may involve some individualized assessment of damages, this is not a situation where 'the functional equivalent of a full-blown trial on . . . causation" would be required for each putative class member.'"); *Nehmelman v. Penn National Gaming, Inc.*, 822 F. Supp. 2d 745 (N.D. Ill. 2011) (finding *Dukes* distinguishable because employer policy of rounding hours was "just the opposite" of the policy at issue in *Dukes*, and no individualized inquiry regarding damages was necessary because "a review of the time cards should reveal how much overtime the employee is entitled to each week"); *Gilmer v. Alameda-Contra Costa Dist.*, 2011 WL 5242977 at *7 (N.D. Cal. Nov. 2, 2011) (stating that *Dukes* does not stand for the proposition that an employer is entitled to an individualized determination of an employee's claim for back pay in all instances in which a claim is brought as a collective or class action, pay practices challenged in the case resulted from uniform policies, not discretionary decisions).

subject to classwide proof. The evidence included an expert time study and representative testimony that established the approximate, average time that plaintiffs were entitled to recover. Individual calculations of the exact amount due each class member have been derived from Tyson's wage records. Despite the fact that each individual class member worked different hours and received a different amount of pay, the common question that drove the litigation (and involves a common answer) is whether the defendant's "gang time" plus "K-code" policy denied the class members overtime and minimum wage pay for compensable activities.

Similarly, the Supreme Court's holding in *Comcast v. Behrend* is inapposite. In *Comcast*, the Supreme Court held that a class seeking relief based on antitrust claims "was improperly certified under Rule 23(b)(3)," because it failed to meet the predominance requirement. *Comcast*, 133 S. Ct. at 1432. The Court found class certification was improper because the plaintiffs were not able to "establis[h] that damages [were] capable of measurement on a classwide basis," and thus could not show "Rule 23(b)(3) predominance." *Id.* at 1433. "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013). In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision. *Id.*

"Comcast holds that a damages suit cannot be certified to proceed as a class action unless the damages sought are the result of the class-wide injury that the suit alleges." *Butler v. Sears, Roebuck and Co.*, — F.3d —, —, 2013 WL 4478200, *3 (7th

Cir. Aug. 22, 2013) (noting that "It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory.). The *Comcast* holding is not applicable to this case because the plaintiffs proceeded on only one theory of recovery and damages were attributable to that theory. *See also Amgen, Inc. v. Connecticut Ret. & Trust Funds,* 133 S. Ct. 1184, 1196 (February 27, 2013) (stating that Rule 23(b)(3) does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof, only that common questions predominate over any questions affecting only individual class members).

Further, Tyson's argument that the plaintiffs have to prove the amount and extent of each individual plaintiff's work is misplaced. The cases that Tyson cites do not stand for that proposition. In *Blades v. Monsanto*, 400 F.3d 562 (8th Cir. 2005), a price-fixing conspiracy case in which the court determined that a class action was not appropriate because proof of injury could not be established with proof common to the class, the Eighth Circuit Court of Appeals noted that "[t]he market for seeds is highly individualized depending on geographic location, growing conditions, consumer preference and other factors." *Id.* at 570. In addition, *Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770 (7th Cir. 2013), is inapposite. *Espenscheid* involved independent-contractor-type satellite TV repairmen and installers who had been paid under a piece-rate system. *Id.* at 772-73. The Seventh Circuit Court of Appeals affirmed the denial of class certification in that case, finding that class certification would require thousands of evidentiary hearings. *Id.* at 773. Notably, the court observed that *Espenscheid* was not the type of case (like this one) where "'it appear[s] that the calculation of monetary relief will be mechanical,

formulaic, a task not for a trier of fact but for a computer program, so that there is no need for notice . . . , the district court can award that relief without terminating the class action and leaving the class members to their own devices.'" *Id.* (quoting *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012)).

As the Seventh Circuit Court of Appeals recently stated in a class action case remanded by the Supreme Court for reconsideration in light of *Comcast Corp.*, 133 S. Ct. at 1426:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits. As we noted in *Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir.2004), "the more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class 17 million suits each seeking damages of $15 to $30. . . . The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30" (emphasis in original). The present case is less extreme: tens of thousands of class members, each seeking damages of a few hundred dollars. But few members of such a class, considering the costs and distraction of litigation, would think so meager a prospect made suing worthwhile.

*Butler v. Sears, Roebuck and Co.*, — F.3d —, 2013 WL 4478200, *5 (7th Cir. August 22, 2013). The court finds the action involves a company-wide compensation policy uniformly applied to production workers and finds the evidence sufficient to establish damages with the specificity required under *Anderson v. Mount Clemens*, 328 U.S. at

9

686-88. Accordingly, the court finds Tyson's Motion to Decertify should be denied. Accordingly,

   IT IS ORDERED:

   1.   The plaintiffs' Objection (Filing No. 338) to the Magistrate Judge's Order (Filing No. 281) is sustained;

   2.   That portion of the order of the magistrate judge (Filing No. 281) that limits class members to those employed by Tyson up to the date of class certification is vacated.

   3.   The plaintiffs' alternative Motion to Amend Class (Filing No. 338) is granted.

   4.   The class certified is amended as follows:

     All current and former employees of Defendant Tyson's Dakota City, Nebraska, meat processing facility who have been employed by Tyson at any time from January 17, 2004, to April 3, 2013, and are or were paid under a "gang time" compensation system in the Slaughter or Processing Departments.

   5.   Defendant's Motion to Decertify (Filing No. 417) is denied.

Dated this 1st day of October, 2013.

                                BY THE COURT:

                                s/ Joseph F. Bataillon
                                United States District Judge