IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSE A. GOMEZ, JULIANA REYES, JUAN M. CRUZ, TED MCDONALD, CECILIA ORTIZ, and MARIO CRUZ, on behalf of themselves and all other similarly situated individuals;<br><br>Plaintiffs,<br><br>v.<br><br>TYSON FOODS, INC.,<br><br>Defendant. | 8:08CV21<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the plaintiffs' motion for judgment as a matter of law, Filing No. 381; plaintiffs' renewed motion for judgment as a matter of law, and, in the alternative, for a new trial, Filing No. 419; and defendant's motion for judgment as a matter of law and motion to decertify, Filing No. 417.[1] For the reasons stated below, the court finds that the motions for judgment as a matter of law and for new trial should be denied.

---

[1] The portion of Tyson's motion that deals with the class certification issue is addressed in a separate order, together with the plaintiffs' objection to a ruling of the magistrate judge on the issue and the plaintiffs' alternative motion to amend the class definition. See Filing No. 432, Memorandum and Order. In that order, the motion for decertification is denied. *Id.*

The record also contains numerous other motions and objections, but those objections were resolved at trial and were filed only to protect the record. Filing No. 404, Trial Transcript ("T. Tr.") (Vol. II) at 151-52; *see* plaintiffs' objections to defendant's deposition counter-designations, Filing No. 352; plaintiffs' objection to motion in limine and opposition to motion to treat Dr. Nickerson as a non-expert, Filing No. 349; defendant's objection and counter-designations to plaintiffs' deposition designations, Filing No. 344; plaintiffs' motion to estop Tyson from disavowing its 30(b)(6) admission, Filing No. 341; defendant's motion in limine to allow defendant to offer Rule 1006 summaries, Filing No. 339; defendant's objection to the scope of trial, Filing No. 327; defendant's objections to the court's proposed initial jury instructions, Filing No. 326; defendant's objections to plaintiffs' deposition counter-designations, Filing No. 325; plaintiffs' objections to defendant's proposed jury instructions, Filing No. 324; defendant's objections to plaintiffs' proposed jury instructions, Filing No. 323; plaintiffs' objections to defendant's deposition counter-designations, Filing No. 322. Accordingly, those motions and objections will be denied as moot.

## I. FACTS

These motions stem from a five-year dispute between the parties that culminated in a ten-day jury trial in March of 2013. The plaintiffs are all current or former employees of Tyson at its Dakota City, Nebraska, facility. All Tyson production workers at the Dakota City plant wear some combination of personal protective and sanitary equipment, which includes: ear plugs, hard hat, hairnet, beard net (if they have facial hair), boots, mesh glove, mesh sleeves, mesh apron, polar gloves, polar sleeves, arm guard, belly guard, frock, white pants and shirt, safety glasses and scabbard and knives.

Tyson pays its Dakota City, Nebraska, hourly production workers on a "gang time" basis. "Gang time" is the time that the processing lines are moving and during which production workers are physically at the assembly line while the lines are moving and producing product. "Gang time" does not record or include time that production workers spend donning and doffing their protective and sanitary equipment before and after "gang time" and at unpaid meal breaks. In addition to "gang time," Tyson pays its hourly production workers "extra" minutes per day to compensate them for donning and doffing activities. The payment of "extra" minutes beyond the "gang time" for donning and doffing activities is referred to as "K-code" time.

The parties have long disputed whether or not this K-code time adequately compensates employees for the time they spend donning and doffing. In January 2007, the plaintiffs filed suit against Tyson, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.* A Fed. R. Civ. P. 23 class was certified in this matter, and

the case proceeded as a class action. Filing No. 74, Findings and Recommendation; Filing No. 76, Memorandum and Order ("Mem. & Order").[2]

Before trial in this case, the court granted the plaintiffs' summary judgment on liability. Filing No. 224, Mem. & Order. at 38-40. Specifically, the court found as a matter of law that the plaintiffs are entitled to payment for actual time. *Id.* at 34-36. The court also found that the donning and doffing of both unique (i.e., protective gear such as mesh sleeves, etc.) and standard or nonunique items (i.e., sanitary items such as frocks, "whites," hairnets, etc.) is integral and indispensable to the plaintiffs' work, inures to the benefit of Tyson, and begins the continuous workday. *Id.* The court denied Tyson's motion for a ruling that the items at issue are clothes that are excluded from compensability under § 203(o) of the FLSA, and rejected its positions that the plaintiffs' claims are *de minimis* and the plaintiffs' mealtime claims subject to dismissal under the Eighth Circuit's "predominant benefit" test. *Id.* at 35-39. The court also rejected Tyson's arguments that the plaintiffs' state law claims are preempted[3] or not supported by any previous agreement.[4] *Id.* at 40.

The court framed the issues for trial as follows:

---

[2] The class certified is:

All current and former employees of Defendant Tyson's Dakota City, Nebraska, meat processing facility who have been employed by Tyson at any time from January 17, 2004, to the present and are or were paid under a "gang time" compensation system in the Slaughter or Processing Departments.

Filing No. 74, Findings and Recommendation; see Filing No. 76, Mem. & Order.

[3] Early in the case the court had ruled against Tyson on the preemption issue. Filing No. 61, Mem. & Order.

[4] The court found in its summary judgment order that the plaintiffs' state law wage claim under the NWPCA mirrors the FLSA claim. *See* Filing No. 224, Mem. & Order at 40.

3

> There remain factual disputes regarding the time it take the employees to don and doff the clothing and equipment and to walk to the line. This action will proceed to trial only on the issue of damages. The only remaining issue for the jury to decide is the amount of time the employees spend performing these compensable activities. The court will determine as a matter of law the amount of any offset for minutes of time already paid.

See *id.* at 38. In response to Tyson's emergency motion for clarification, the court stated:

> In its order on the motions for summary judgment, the court found against Tyson as a matter of law on the liability issue. Filing No. 224, Memorandum and Order at 32-35. The finding was premised in part on the historical record of Tyson's litigation of the issue in the *Alvarez* case, which involved a Union plant. *See id.* at 10-14. Union negotiations and Tyson's "pay practices" and/or rationale for its pay practices are irrelevant as defenses to liability. The liability issue has been resolved by the court. As hard as it is for Tyson to accept that fact, it is the law of the case.
>
> Tyson's history of litigation as reflected in the case law and public record shows that there is no dispute that the four minutes paid to Tyson employees at its unionized plants did not, and does not, include, at the least, walking time. *Alvarez v. IBP, Inc.*, 2001 WL 34897841, *2, n.3, *6 (characterizing minutes as "clothes changing"). It is undisputed that Tyson never increased the amount of clothes-changing time at the Dakota City plant above four minutes. The United States Supreme Court found in *Alvarez* that the employees are entitled to compensation for walking time.

*See* Filing No. 318, Mem. & Order at 3..[5]

---

[5] Tyson took issue with the court's ruling, later interposing a continuing objection to the scope of the trial. Filing No. 327, Objection. The court feels compelled to comment on the level of gamesmanship employed by Tyson throughout this and the *Acosta* litigation. Tyson made several misstatements, overstatements and disingenuous contentions to the court. For example, Tyson contends that:

> In its Order dated March 15, 2013 (Filing No. 318), one business day before trial, the Court ruled for the first time in this case that Plaintiffs "have established as a matter of law that they have 'in fact performed work for which they were improperly compensated' and that Plaintiffs have produced 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"

*Id.* at 3 (emphasis added). Tyson misstates the court's ruling. The court clarified in the reconsideration order that the court's "finding on the liability issue [in the summary judgment order] is equivalent to a finding that the plaintiffs have satisfied the first prong of the burden-shifting analysis outlined in *Anderson v. Mount Clemens Pottery*," to wit, the plaintiffs had "established as a matter of law that they have 'in fact

4

The court also ruled prior to trial that the amount of backpay due each class member was not a disputed issue of fact to be decided by the jury because it would be a matter of simple arithmetic to determine damages once the jury determined the number of minutes the work at issue takes to perform. Filing No. 306, Mem. & Order at 1-2; Filing No. 307, Mem. & Order at 3. Because the court found the only issue for determination was the time it took to perform the compensable activities, neither side presented evidence of damage calculations at trial.[6] Instead, the parties were ordered to submit their respective backpay calculations after trial. *See* Filing No. 306, Mem &

---

performed work for which they were improperly compensated' and <u>can produce</u> 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" Filing No. 318, Mem. & Order at 3 (internal citations omitted) (emphasis added).

Tyson also misstates the record in contending that the "issue was decided *sua sponte* without briefing by the parties or any other vehicle by which Tyson could have addressed the issue, which Tyson had previously assumed would be an issue for trial." Filing No. 327, Objection at 14. Contrary to Tyson's contention, the failure to record actual time issue and concomitant application of the *Mount Clemens* standard was squarely raised by the plaintiffs in their motion for summary judgment and Tyson had an opportunity to, and did, address the issue in in its brief in response. *See* Filing No. 134, plaintiffs' motion for summary judgment at 5; Filing No. 167, defendant's opposition to plaintiffs' motion for partial summary judgment at 97-106. In fact, Tyson discussed the *Mount Clemens* case in its brief. *Id.* at 99-100.

Tyson made a similar unsupported allegation of unfair surprise with respect to issues of good faith and willfulness in a hearing on March 11, 2013. *See* Filing No. 308, Hrg. Tr. at 90-91. The court found that the plaintiffs had raised the issues and Tyson had addressed them in its brief. Filing No. 306, Mem. & Order at 9-10.

Tyson's claims of unfair surprise are belied by its litigation history. The court's summary judgment order in this case made it clear that the court had rejected any argument that Tyson had kept accurate time records. Filing No. 224, Mem. & Order at 37. Tyson does not seriously dispute that it does not record and pay actual time. In any wage case, once it is shown that the employer has failed to keep accurate time records, the *Mount Clemens* burden-shifting standard comes into play. *Mount Clemens*, 328 U.S. at 687 (when the employer has failed to record compensable time and the employees have proved that they actually performed the work in question, the plaintiffs need only produce evidence sufficient to support a reasonable inference of the amount and extent of that work). An experienced wage and hour attorney would be presumed to know that. The *Mount Clemens* burden-shifting standard has been applied in numerous Tyson donning and doffing cases dating back to *Alvarez* and *Reich*. *See, e.g., Alvarez*, 339 F.3d at 914-15; *Metzler*, 127 F.3d 959, 965-66 (10th Cir. 1997); *Chavez v. IBP, Inc.,* 2005 WL 6304840, *5 (E. D. Wa. 2005); *Garcia v. Tyson*, 2012 WL 3594212, *7 (D. Kan. Aug. 21, 2012). Also, the parties had briefed and argued the standard in the trial of the *Acosta* action, shortly before this case was tried. *See, e.g., Acosta*, No. 8:08CV86, Filing No. 306, Tyson's Posttrial Brief at 1-2, 6-7; Filing No. 250, Tyson's Trial Brief at 7.

[6] This was not the court's first exposure to a donning and doffing case involving this defendant. Damages evidence had been presented in the *Acosta* case and the court was therefore aware of the damages evidence the parties were likely to present herein.

5

Order at 1-2.  Both Tyson and the plaintiffs have submitted respective proposed calculations.  *See* Filing No. 416, plaintiffs' calculations; Filing No. 424, defendant's submission; Filing No. 425, Index of Evid.

At the beginning of trial, the court provided the jury with initial instructions, with the admonition that the instructions could change before the end of trial.  *See* Filing No. 399, Initial Jury Instructions.  The jury was preliminarily instructed that:

> Employees at Tyson Foods' Dakota City facility put on, take off, and clean or sanitize protective equipment and sanitary gear before and after they process meat on their shifts.  These activities are often referred to as "donning" and "doffing" related activities.  In addition, they walk from their locker rooms to their workstations and back and "don" and "doff" their personal protective equipment and sanitary items at the beginning and end of their meal period.  These activities are defined in the instructions that follow.
>
> These activities are work because they are integral and indispensable to the principal activities of the plaintiffs' jobs.  You will be asked to determine the amount of time the plaintiffs devoted to the above-listed activities.
>
> Defendant Tyson denies the plaintiffs' allegations.

Filing No. 399, Initial Instructions at 14, Inst. No. 11, "Statement of the Case" at 2.  The jury was further instructed that:

> Wages must be paid for the time spent performing donning and doffing activities that occur before and after shifts and on unpaid meal breaks to employees who use some combination of the following equipment working on the production lines at the Dakota City facility: ear plugs, hard hat, hairnet, beard net (if they have facial hair), boots, mesh glove, mesh sleeves, mesh apron, polar gloves, polar sleeves, arm guard, belly guard, frock, white pants and shirt, safety glasses and scabbard and knives.  Wages must be paid for other activities that occur between the first donning activity before the start of the shift and the last doffing activity after the end of the shift including:  (1) donning and doffing equipment; (2) walking from the lockers where equipment is obtained or donned to the production line before the start of the shift; (3) washing or sanitizing equipment or an employee's hands; (4) waiting for production to start on the production line; (5) walking from the production line to the areas where

6

> equipment is hung up, stored or deposited at the start of unpaid meal breaks; (6) donning, doffing or washing equipment on unpaid meal breaks; (7) walking back to the production line during unpaid meal breaks after gathering, donning and washing equipment; (8) walking and transporting equipment from the production line at the end of the shift to the wash station; (9) doffing, washing or sanitizing equipment after the end of the shift; and walking and transporting equipment from the wash stations to the lockers where equipment is hung, stored or deposited at the end of the shift.
>
> You must determine the amount of time employees spend performing these activities that the court has found compensable. This is the only issue for you to decide.

*Id.,* Inst. No. 12, "Compensable Activities." Also, the jury was instructed that:

> The continuous workday is the period between the commencement and the completion on the same workday of an employee's principal activity or activities. In general, an employer is required to compensate its employees for their time, beginning when the employee performs the first principal activity of the workday. It has already been determined that the initial donning of personal protective or sanitary gear is the first principal activity of the day that marks the beginning of the continuous workday and doffing the last piece of such gear at the end of a shift is the principal activity that ends it.[7]

*Id.*, Inst. No. 18, "Continuous Workday." With respect to walking time, the jury was told:

"You are also instructed that pre-shift walking time is compensable as part of the continuous workday if it occurs after the first principal activity of the day, and post-shift walking is compensable as part of the continuous workday if it occurs before the last principal activity of the day." *Id.*, Inst. No. 19, "Walking Time."

The court also instructed the jury that a bona fide meal period, that is a meal period of at least 30 minutes during which an employee is relieved of duty, is not part of the continuous workday, but that "[t]he court has determined that donning and doffing

---

[7] At the end of the trial, one change was made to this instruction. The jury was instructed that "It has already been determined that the initial <u>obtaining and</u> donning of personal protective or sanitary gear is the first principal activity of the day. . . ." *See* Filing No. 401, Final Instructions at 21, Instruction No. 18A (emphasis added).

7

sanitary and protective gear before and after mealtimes is work. You are to determine the amount of time the plaintiffs spend on this activity." *Id.*, Initial Instructions at 21, Instruction. No. 20, "Bona Fide Meal Periods."

The jury was further instructed that "the plaintiffs have satisfied their burden to prove that they have performed work for which they were not compensated" and the jury "must accept the plaintiffs' estimate of hours worked unless you find the defendant has come forward with evidence of the precise amount of work performed or with evidence that negates the reasonable inferences to be drawn from the plaintiffs' evidence." *Id.*, Instruction No 22, "Determining Hours Worked." The jury was also provided an instruction on "Representative Evidence." *Id.*, Instruction No. 23.

The evidence adduced at trial establishes that there are roughly 3,400 employees in Tyson's Dakota City plant and about 90 to 95% of those employees use knives. Filing No. 408, T. Tr. (Vol. VI) at 1346-48. The employees are paid on "gang time," also known as "chain time." *Id.* at 1347. The normal length of gang time is 7 hours and 56 minutes and it is calculated from the time the first carcass is indexed onto the chain to the time when the last one is indexed onto the chain. *Id.* at 1489. There are two sides to the plant: the processing side and the "kill" or slaughter side. *Id.* at 1347. On the kill side approximately 315 carcasses per hour are processed and on the processing side, between 465 and 495 carcasses are processed per hour. *Id.* at 1348-49. Time clocks are used to record attendance and tardiness but not to record work time. *Id.* at 1360. On the kill side, 21 minutes is allotted for chain stoppage or downtime, so gang time is seven hours and thirty-five minutes if there is no downtime.

*Id.* at 1490. Some employees are paid to set up or take down on the line, before and after the shift. *Id.* at 1349-50.

In their case in chief, the plaintiffs presented the expert testimony of Dr. Kenneth Mericle as well as the testimony of several class members. The court overruled the defendant's objections to Dr. Mericle's testimony.[8] Filing No. 406, T. Tr. (Vol. IV at 931-32. Dr. Mericle testified that he and three assistants spent three days (and two shifts each day) inside Tyson's Dakota City plant filming, taking stopwatch times, and analyzing the work activities that are at issue in this case. *Id.*, Filing No. 404, T. Tr. (Vol. II) at 171-83. Further, Dr. Mericle testified that he reviewed numerous hours of the films of these work activities to arrive at reasonable estimates of time that it takes for the class members to perform the work activities in dispute in this matter. *Id.* at 222.

Dr. Mericle testified that he went to the Dakota City, Nebraska, Tyson Foods plant with three videographers during three days (March 27-29, 2012) to perform a time study of donning, doffing, and related work activities by collecting data and measuring donning, doffing and related work activities. *Id.* at 171. Dr. Mericle testified in detail describing his methodology: he studied the activities by using stopwatches to time locker room work activities and by videotaping workers performing work activities outside of the locker room, analyzing the videotapes, identifying the starting point of the activity and the ending point of the activity and calculating the elapsed times for the

---

[8] The defendant raised relevance and Rule 702 objections to Dr. Mericle's testimony and moved to exclude him as a witness. Filing No. 406, T. Tr. (Vol. IV) at 931-32. The court is familiar with Dr. Mericle's credentials and methodology because he had testified in the *Acosta* trial. Acosta v. Tyson, No. 8:08CV86, Filing No. 291, T. Tr. (Vol. I) at 168-275; Filing No. 292, T. Tr. (Vol. II) at 506-544. In *Acosta*, the court found Dr. Mericle's time study and his testimony were admissible, noting that they "must be viewed through the lens of the limited burden that the plaintiffs bear on the issue of damages when an employer fails to comply with its timekeeping obligations under the FLSA" and that "[t]he plaintiffs are not required to produce evidence that is 'scientific' or that rises to the level of scientific certainty." *Acosta*, No. 8:08CV86, Filing No. 311, Findings and Concl. at 7.

9

activities. *Id.* at 171-177.

Dr. Mericle testified that he calculated the average time for each pre- and post-shift work activity studied for both the kill and fabrication area of the plant and computed a total average time for each of the activities ultimately calculating a total average time for all of the studied work activities in the respective kill and fabrication (which included both the cut and fabrication floors). *Id.* at 179-83. Dr. Mericle created a table of eight separate work activities that workers in the Slaughter or Kill Department performed and a table of six separate work activities that workers in the Processing/Fabrication Department performed.[9] *Id.* at 177-78; Exs. 106A & 106B.

With respect to the walk times, for the kill floor employees, Dr. Mericle calculated the walking time separately for two walking segments: (1) the pre-shift walk from the locker room to the entrance of the production area of 1.06 minutes which was Activity 2; and (2) the post-shift walk from the exit of the production area to the locker room threshold of .93 minutes, which was Activity 7. *See* Ex. 106-G, Mericle Report (Table

---

[9] For the kill area those activities and times are:

1. Preshift: Obtain and don gear at locker and walk to locker room exit — 5.91
2. Preshift: Walk from locker room to entrance of production area — 1.06
3. Preshift: Walk to work station. Complete donning — 2.87
4. Pre break: Stop working, walk to gear storage point, doff gear — 0.91
5. Post break: Don gear and walk to work station — 2.29
6. Postshift: Doff and clean gear in production area — 5.40
7. Postshift: Walk from exit of production area to locker room threshold — 0.93
8. Postshift: Walk to locker, doff and stow gear, laundry bag to hamper — 6.74

Ex. 106, Mericle Report at 10 (Table 5). For the processing area the activities and times are:

1. Preshift: Obtain and don gear at locker, gather gear, start walking — 7.60
2. Preshift: Walk from locker to entrance of production area — 0.38
3. Preshift: Walk to work station. Complete donning — 3.10
4. Pre break: Stop working, walk to gear storage point, doff gear — 0.58
5. Post break: Don gear and walk to work station — 0.89
6. Postshift: Doff, clean gear in production area; doff, stow gear in locker — 6.62

*Id.* (Table 6).

10

4). Thus, the total calculated walk time for kill floor employees is 1.99 minutes. For the processing floor employees, Dr. Mericle calculated the walking time for only one segment, which is the pre-shift walk from the locker room to the entrance of the production area of .38 minutes, which was Activity 2. *See id.* Dr. Mericle calculated the above walking time using a distance measuring wheel. *Id.* at 188, 343-44.

Dr. Mericle testified that the total time for the pre-shift and post-shift donning, doffing, walking and cleaning activities for employees in the kill department was 26.10 minutes. Filing No. 404, T. Tr. (Vol. II) at 273. The total time for the pre-shift and post-shift donning, doffing, walking and cleaning activities for employees that Dr. Mericle studied in the processing department was 18.79 minutes. *Id.* at 274.

Tyson's industrial engineer, Monty Hahn, testified he conducted a similar walking study at the Dakota City plant in 2006, but Hahn could not recall the results of the study. Filing No. 409, T. Tr. (Vol. VII) at 1722-24. Also, Hahn testified he conducted a time study on donning and doffing of personal protective equipment with respect to team members who carried knives in 11 plants, not including Dakota City, in 1998. *Id.* at 1665-73. That study provided the basis for payment of four minutes of K-code. *Id.* at 1671. IBP's 1998 time study was admitted into evidence without objection. *See* Ex. 112 ; Filing No. 409, T. Tr. (Vol. VII) at 1675-76.

The testimony of five Tyson Dakota City employees generally corroborated Dr. Mericle's testimony and provided additional evidence of the time measurement of the plaintiffs' donning and doffing related activities. *See, e.g.*, Filing No. 407, Tr. (Vol. V) at 953-960, 1022-42, 1085-1112, 1147-55, 1219-34; Filing No. 408, Tr. (Vol. VI) at 1276, 1281.

11

Tyson did not present any expert testimony to controvert Dr. Mericle's findings, methods, or analysis. Rather, Tyson attempted to critique Dr. Mericle's time study through cross-examination. See Filing No. 404, T. Tr. (Vol. II) at 361-92, Filing No. 406, T. Tr. (Vol. IV) at 701-830. Tyson extensively cross-examined the plaintiffs' witnesses. Filing No. 407, T. Tr. (Vol. V) at 973-1012, 1042-62, 1112-34, 1155-73, 1201; Filing No. 408, T. Tr. (Vol. VI) at 1281-1326, 1362-72. Tyson also presented the testimony of several supervisors and other gang-time employees who testified with respect to their experiences and observations. Filing No. 408, T. Tr. (Vol. VI) at 1419-91; Filing No. 409, T. Tr. (Vol. VII) at 1775 , 1776; Filing No. 410, T. Tr. (Vol. VIII) at 1858-1900, 1944-70, 2016-43, 2079-88; Filing No. 411, T. Tr. (Vol. IX) at 2212-46, 2263-66, 2277-83. Although Tyson did not provide any comprehensive estimates of the time it would take to perform all of the activities that the court found compensable, Tyson's witnesses testified that it took a considerably shorter time to don and doff than the time found by Dr. Mericle's study. See, e.g., Filing No. 410, T. Tr. (Vol. VIII) at 1858, 1862-63, 1894, 1949, 1999, 2035, 2080, 2280. Examples of the protective and sanitary gear were also admitted in evidence. See Exs. 300, 301(a), 301(b), 302, 302A, 303-320.

The jury was asked to determine the amount of time the plaintiffs took to perform the tasks that the court had determined were compensable as a matter of law. The court instructed the jury that:

> You must determine the amount of time worked by plaintiffs pre-shift, post-shift, pre-meal and post-meal based on all of the evidence. You are instructed that the plaintiffs have satisfied their burden to prove that they have performed work for which they were not compensated. Employees may not be denied recovery of back wages on the ground that the precise extent of their uncompensated work cannot be proved. The plaintiffs are not required to establish the amount of time with precision or specificity. Therefore, you must accept the plaintiffs' estimate of hours

> worked unless you find the defendant has proved by a preponderance of the evidence the precise amount of work performed or negated the reasonable inferences to be drawn from the plaintiffs' evidence.

Filing No. 401, Final Jury Instructions, Instruction No. 22A.

The jury found that on average, per day, employees in the Kill Department at Tyson's Dakota City plant spent 5.79 minutes performing compensable activities and employees in the Processing Department spent 4.56 minutes performing such activities. Filing No. 394, Answers to Special Interrogatories (Jury Verdict).

## II. LAW

### A. Fed. R. Civ. P. 50 and 59 Standards

A motion for judgment as a matter of law presents the legal question of whether there is sufficient evidence to support a jury verdict. *Fox v. T-H Continental, Ltd.*, 78 F.3d 409, 413 (8th Cir. 1996). The court will grant a motion for judgment as a matter of law "when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Ehrhardt v. Penn. Mut. Life Ins. Co.*, 21 F.3d 266, 269 (8th Cir. 1994). In considering the motion, the court views the record in the light most favorable to the prevailing party. *Wash Solutions, Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 892 (8th Cir. 2005). The court must also assume that all conflicts in the evidence were resolved in favor of the prevailing party, and the court must assume as proved all facts that the prevailing party's evidence tended to prove. *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003). The motion should be denied unless the court concludes that no reasonable juror could have returned a verdict for the nonmoving party. *Billingsley v. City of Omaha*, 277 F.3d 990, 995 (8th

Cir. 2002). The Eighth Circuit has observed that "judges must be extremely guarded in granting judgments as a matter of law after a jury verdict." Kohler Co., 335 F.3d at 772.

Under Federal Rule of Civil Procedure 59(a), the court may grant a motion for a new trial to all or any of the parties on all issues or on particular issues. Fed. R. Civ. P. 59(a). The standard for granting a new trial is whether the verdict is "against the great weight of the evidence." Butler v. French, 83 F.3d 942, 944 (8th Cir. 1996). In evaluating a motion for a new trial under Rule 59(a), the court must determine "whether a new trial is necessary to prevent a miscarriage of justice." Maxfield v. Cintas Corp., No. 2, 563 F.3d 691, 694 (8th Cir. 2009). Motions to alter or amend under Fed. R. Civ. P. 59(e) "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." Lowry ex rel. Crow v. Watson Chapel School Dist., 540 F.3d 752, 761 (8th Cir. 2008) (quoting United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006)). "A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e)." *Id.*

### B. Burden of Proof

In an action for overtime wages brought under the FLSA, "the burden is upon the plaintiff to establish by a preponderance of the evidence the number of hours worked and the amount of damages due." Johnson v. Dierks Lumber & Coal Co., 130 F.2d 115, 118 (8th Cir. 1942). "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in* Carter v. Panama Canal Co., 463 F.2d 1289, 1293

(D.C. Cir. 1972). However, "[w]here an employer has not kept adequate records of wages and hours, its employees cannot be penalized by being denied a recovery of back wages on the ground that the precise extent of their uncompensated work cannot be proved." *Dole v. Tony and Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990).

When the employer's records are inaccurate or inadequate, only a just and reasonable inference need be established as to the uncompensated work performed, and once the plaintiff has produced evidence of uncompensated labor, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (quoting *Mount Clemens*, 328 U.S. at 687-88); *see Carmody v. Kansas City Bd. Of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013) (stating "[u]nder [*Mount Clemens'*] relaxed evidentiary standard, once the employee has shown work performed for which the employee was not compensated, and "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference"). If the employer fails to produce such evidence, the court may award damages to the employee even though the result may be only approximate. *Donovan v. Tony and Susan Alamo Found.,* 722 F.2d 397, 404 (8th Cir. 1983); *see also Alvarez*, 339 F.3d at 914 (accepting a compensation measure based on a "reasonable quantification of plaintiffs' work time"). Employees may meet their burden of proof through testimony, documentary evidence and expert testimony, and may also rely on stipulated facts. *Chavez v. IBP, Inc.,* 2005 WL 6304840, *5 (E. D. Wa. 2005).

The standard outlined in *Anderson v. Mount Clemens Pottery* "applies where the existence of damages is certain." *Carmody*, 713 F.3d at 406. It "allows uncertainty only for the amount of damages." *See id.* An employer's failure to provide accurate time records reduces the employees' burden, but does not eliminate it; the employees must still prove the existence of damages. *Id.* at 407 (holding that without "evidence of a single hour worked over forty hours that did not receive overtime wages or flextime, the [employees'] unsupported estimations of the unpaid hours due are not enough."). The First Circuit Court of Appeals explains: "Plainly, then, although the initial burden is on the employee . . . that burden is a minimal one. Where the employer has failed to keep adequate employment records, it pays for that failure at trial by bearing the lion's share of the burden of proof." *Secretary of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991); *see also Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 69 (2d Cir.1997) ("It is well-settled that when an employer fails to keep adequate records of its employees' compensable work periods, as required under the FLSA, employees seeking recovery for overdue wages will not be penalized due to their employer's record-keeping default." Representative evidence is sufficient to establish damages in a class action case. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. at 687.

### III. DISCUSSION

#### A. Tyson's Motion for Judgment as a Matter of Law

In its renewed motion for judgment as a matter of law, Tyson reasserts the arguments that were rejected by the court in earlier orders. *See* Filing No. 224, Mem. & Order at 30-40; Filing No. 306, Mem. & Order at 11; Filing No. 307, Memorandum and Order at 2; Filing No. 318, Mem. & Order at 2-4. For the reasons stated in its earlier

16

orders, the court finds Tyson is not entitled to judgment as a matter of law on the plaintiffs' claims for donning and doffing at the meal period. Filing No. 224, Memorandum & Order at 33-34. The court again rejects the defendant's contentions that the plaintiffs' FLSA claims are barred for failure to file consents to suit and the plaintiffs' NWPCA claims are barred because the plaintiffs failed to prove an agreement. *See* Filing No. 224, Memorandum and Order at 40; Filing No. 306, Memorandum and Order at 11.

Tyson's remaining challenges present issues of law on damages will be addressed by the court in connection with its order on damages. With respect to Tyson's argument that "five of the named plaintiffs" failed to prove their FLSA claims by not personally testifying at trial as to the number of minutes, Filing No. 418, Def. Br. at 3, the court again finds that the plaintiffs were entitled to prove their claims through representative testimony.

The court finds there is sufficient evidence in the record to establish that the plaintiffs performed work for which they were not compensated. Dr. Mericle testified to the amount based on his time study. The defendant attempted to controvert his findings based on arguable deficiencies in his methodology and with evidence that it took some employees a shorter time to perform the activities at issue. The jury apparently credited that testimony and determined that the average approximation of time was less than that proposed by plaintiffs. Although the court, as a fact-finder would have fully credited Dr. Mericle's testimony, the jury did not do so. Having failed to keep records of actual time, the defendant cannot now dispute the jury's determination. The jury was instructed that the court had determined that Dr. Mericle's approximation was

reasonable and should be accepted unless the defendant either came forward with evidence of the precise amount of time or with evidence that negated the inferences to be drawn from the plaintiffs' evidence. Accordingly, the court finds Tyson's contentions lack merit and its motion for judgment as a matter of law should be denied.

### B. Plaintiffs' Motion

In their motion for judgment as a matter of law, the plaintiffs argue that Tyson failed to carry its burden to show the precise amount of work the plaintiffs performed or to negate the inference presented by the plaintiffs' evidence. The court agrees that Tyson did not present evidence as to the precise amount of time the plaintiffs worked. Tyson did present evidence, though thin, that tended to call Dr. Mericle's calculations into question. The jury apparently credited that evidence and rejected much of Dr. Mericle's testimony. Considering the evidence in the light most favorable to the verdict, the court finds there is sufficient evidence to support the jury's finding.

In their alternative motion for a new trial, plaintiffs argue that the jury verdict is contrary to the court's instructions. The court finds that there is evidence in the record to support, though barely, the jury's determination of the number of minutes that reasonably approximates the time it takes class members to perform the activities that the court has ruled are compensable as a matter of law. Because the FLSA does not provide a private right of action for violations of its recording requirements, a *Mount Clemens*-type of recovery, though inexact, is the only mechanism to redress such violations of the FLSA. The jury herein was instructed on the *Mount Clemens* burden shift, and the court cannot conclude that it disregarded the instruction. Accordingly, the

court finds the plaintiffs' motion for judgment as a matter of law or for a new trial should be denied.

The defendant did not keep or maintain records as to the amount of actual time the employees spent on the compensable activities, but recovery in this case will be individualized to the extent possible, in that each member of the plaintiff class will be entitled for compensation for donning and doffing time for each day worked.

IT IS ORDERED:

1. The plaintiffs' motion for judgment as a matter of law (Filing No. 381) is denied.

2. The plaintiffs' renewed motion for judgment as a matter of law and its alternative motion for a new trial (Filing No. 419) is denied.

3. The defendant's motion for judgment as a matter of law (Filing No. 417) is denied.

4. Pending motions in the nature of trial objections filed to preserve the record (Filing Nos. 352, 349, 344, 341, 339, 338, 327, 326, 325, 324, 323, and 322) are denied as moot.

5. Damages will be assessed in a separate order.

DATED this 2nd day of October, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge