IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSE A. GOMEZ, JULIANA REYES, JUAN M. CRUZ, TED MCDONALD, CECILIA ORTIZ, and MARIO CRUZ, on behalf of themselves and all other similarly situated individuals,<br><br>           Plaintiffs,<br><br>      v.<br><br>TYSON FOODS, INC.,<br><br>           Defendant. | 8:08CV21<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the parties' damages calculations and objections thereto. Filing Nos. 416 and 424.

**I. FACTS**

This action was tried to a jury on March 18-21, 26-31, and April 2, 2013. Before the trial, the court granted the plaintiffs' motion for summary judgment on liability. Filing No. 224, Memorandum and Order ("Mem. & Order") at 38-40. Further, the court found that Tyson was not entitled to a defense of good faith. *Id.* at 38-40. The court also found that Tyson's conduct was both objectively unreasonable and its actions were taken in reckless disregard of the law. Filing No. 306, Mem. & Order at 10.

The only issue for resolution by the jury was the amount of time it took, as a reasonable approximation of average time, for Tyson's Dakota City employees to perform the donning and doffing activities and walking to and from the production line that the court had found compensable as a matter of law. *See* Filing No. 224, Mem. & Order at 38. The jury was instructed:

> Wages must be paid for the time spent performing donning and doffing activities that occur before and after shifts and on unpaid meal

breaks to employees who use some combination of the following equipment working on the production lines at the Dakota City facility: ear plugs, hard hat, hairnet, beard net (if they have facial hair), boots, mesh glove, mesh sleeves, mesh apron, polar gloves, polar sleeves, arm guard, belly guard, frock, white pants and shirt, safety glasses and scabbard and knives. Wages must be paid for other activities that occur between the first donning activity before the start of the shift and the last doffing activity after the end of the shift including: (1) donning and doffing equipment; (2) walking from the lockers where equipment is obtained or donned to the production line before the start of the shift; (3) washing or sanitizing equipment or an employee's hands; (4) waiting for production to start on the production line; (5) walking from the production line to the areas where equipment is hung up, stored or deposited at the start of unpaid meal breaks; (6) donning, doffing or washing equipment on unpaid meal breaks; (7) walking back to the production line during unpaid meal breaks after gathering, donning and washing equipment; (8) walking and transporting equipment from the production line at the end of the shift to the wash station; (9) doffing, washing or sanitizing equipment after the end of the shift; and walking and transporting equipment from the wash stations to the lockers where equipment is hung, stored or deposited at the end of the shift.

You must determine the amount of time employees spend performing these activities that the court has found compensable. This is the only issue for you to decide.

Filing No. 399, Initial Jury Instructions at 15, Instruction No. 12, "Compensable Activities."

The jury determined that on average, per day, employees in the Kill Department at Tyson Foods' Dakota City plant spent 5.79 minutes performing the compensable activities at issue and employees in the Processing Department spent 4.56 minutes. Filing No. 394, Answers to Special Interrogatories (Jury Verdict).

The court ruled prior to trial that the amount of backpay due each class member was not a disputed issue of fact to be decided by the jury because it would involve only simple arithmetic once the jury had determined the number of minutes the work at issue takes to perform. Filing No. 224, Mem. & Oder at 38; Filing No. 306, Mem. & Order at

2

1-2; Filing No. 307, Mem. & Order at 3.  The parties were ordered to submit respective damage calculations.  Filing No. 274.  Both parties have done so.  *See* Filing Nos. 416 and 424.

The plaintiffs have submitted the Expert Report and Calculations of Dr. Liesl Fox, Ph.D.  Filing No. 416, Dr. Liesl Fox, Ph.D., Expert Report ("Dr. Fox Rpt.").  Dr. Fox is a Senior Consultant at Quantitative Research Associates, a firm that provides statistical and computing consulting services.  *See id.*, Dr. Fox Rpt. at 1.  She has been employed in that capacity since 1997.  *Id.*  She has been a statistical consultant for over eighteen years, and has conducted analyses in the fields of litigation and medical research and testified as an expert witness.  *Id.*  She specializes in data analysis and the application of statistical methodology to various fields of study, and has worked with data related to different areas of employment, including damages calculations.  *Id.*  Her responsibilities also include database preparation and management and she is the author of several research articles.  *Id.*; *see* Appendix C, Curriculum Vitae.

Dr. Fox's calculations are based on Tyson's pay data.  *Id.*, Dr. Fox Rpt. at 3-4; *see* Appendix B, Exs. A-D, Damages for Each Class Member.  The class consists of 8,877 employees who were included in the Pay Detail Data and who worked in a production department for at least one day beginning January 17, 2004.  *Id.,* Dr. Fox Rpt. at 3.  Dr. Fox presented several alternative compensation scenarios.  *Id.* at 8-9, Tables 1-4; Appendix B, Exs. A-D.

Dr. Fox computed damages based on the jury's determination that class members working in the kill areas of Tyson Foods spent 5.79 minutes on the contested activities at issue in this case, and that class members working in the processing areas

3

of Tyson Foods spent 4.56 minutes on the contested activities at issue in this case. *Id.* at 4. The amount of time spent on the contested activities at issue in this case was added for each day that an employee worked in a production department between January 17, 2004, and April 3, 2013. *Id.* The added time was summed over all days worked during the week, and was understood to be the amount of uncompensated time for the week. *Id.* Dr. Fox computed the damages by multiplying the amount of uncompensated time worked under 40 hours by the regular hourly rate of pay, and multiplying the amount of uncompensated time worked over 40 hours by the overtime (time-and-a-half) rate of pay.[1] *Id.* at 4-5. Under that scenario, the total amount of compensatory damages for the class for all uncompensated time, without mitigating for K-code time, is $7,513,125.03. *Id.*

Dr. Fox also calculated the amount of previously compensated K-code time.[2] *Id.* at 5. She reduced the amount of uncompensated time worked each week by the amount of compensated K-code time shown in the Pay Detail Data for the week. *Id.* She computed damages by multiplying the amount of remaining uncompensated time worked under 40 hours by the regular hourly rate of pay, and multiplying the amount of remaining uncompensated time worked over 40 hours by the overtime (time-and-a-half) rate of pay. *Id.* The resultant amount of compensatory damages under that scenario is $1,653,595.60. *Id.*

---

[1] She also performed the same calculation for overtime alone. *Id.*, Fox Rpt. at 5 and 8, Table 1. The total compensatory damages for the class for uncompensated overtime, without mitigating for K-code time, amount to $4,649,848.40. *Id.* After K-code mitigation, that amount is $1,036,252.59.

[2] The evidence at trial showed the class members received 4 minutes of "K-code" pay. Filing No. 409, T. Tr. (Vol. VIII) at 1742. The court previously ruled that the jury was not to consider the K-code pay and that the court would deduct or "offset" the K-code payments from the jury determination. *See* Filing No. 224, Mem. & Order at 38.

Adjusted for liquidated damages of two times the amount of the award, the plaintiff class's total damages are $3,307,191.20.  *Id.*  The plaintiff class's total liquidated damages computed at treble the amount of compensatory damages, mitigating for previously compensated K-code time, is $4,960,786.80.  *Id.*

Tyson submits damages calculations prepared by Tyson's proffered "Rule 1006"[3] witness, Dr. Peter Nickerson.  Filing No. 425, Ex. 1, Declaration of Peter H. Nickerson, Ph.D. ("Dr. Nickerson Decl.").  Dr. Nickerson states he has reviewed Dr. Fox's calculations, compared them to her earlier report, and estimated the damages owed to the plaintiffs based on the relevant work duties.[4]  *Id.* at 3.  At trial, Tyson attempted to present Dr. Nickerson as a Rule 1006 witness with respect to evidence related to punch times, but the court found he was in fact an expert witness and had not provided an expert report to the plaintiffs either by the expert-report deadline or before trial, so he was not permitted to testify.[5]  Whether Dr. Nickerson is an expert or summary witness

---

[3] Rule 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.

[4] Shortly before trial, the magistrate judge granted the plaintiffs' motion to compel updated time and payroll records for persons who were present or former employees as of the date of class certification.  Filing No. 281.  The magistrate judge found that employees hired after that date were not class members.  *Id.* at 4.  In *Acosta*, the court found that the class properly included employees hired after the certification date.  *Acosta*, No. 8:08CV86, Filing No. 311, Mem. & Order at 2; Filing No. 316, Mem. & Order at 2-3.  In a recent order in this case, the district court sustained the plaintiffs' objection to the magistrate judge's order, overruled that portion of the magistrate judge's order that limited the class to people hired before March 30, 2011, denied Tyson's motion to decertify, and amended the class to include persons hired up to the date of the entry of the verdict.  *See* Filing No. 432, Mem. and Order at 10.  Accordingly, the court finds that an award of damage for the amended class up to the date of the jury's finding is appropriate in this case.

[5] Tyson submitted a proffer that Dr. Nickerson could have authenticated Tyson's own pay-punch data and contends that Dr. Fox's calculations are not supported by authenticated records absent that

5

with respect to the calculation of damages is of no consequence since the matter is being determined by the court, based on factual findings by the jury. There is no dispute that the calculations were based on Tyson's own records, Dr. Fox's model and programming code. The underlying data were produced to both parties, and there is no dispute as to the principles of arithmetic that govern the calculations at issue. Although he quibbles with certain variables, Dr. Nickerson has no issue with Dr. Fox's basic methodology, that is, adding the additional minutes to the number of hours the class members worked per day. Entitlement to offsets is an issue of law for the court.

Dr. Nickerson has computed damages under eight scenarios, with damages ranging from $160,918.96 to $667,648.96. Dr. Nickerson states that "[a]ll scenarios are based on Dr. Fox's model from her expert report dated April 30, 2012, with incorporation of supplemental data produced by Tyson through April 3, 2013; correction of errors in assignment of jobs to Kill or Process; inclusion of double-time hours worked; exclusion of employees who opted out of the class; and limited to employees who worked in Kill or Process jobs prior to or on the class certification date of March 30, 2011." *Id.* at 8 n.1. Dr. Nickerson also subtracts as offsets payments attributed to "sunshine" time; time-and-a-half or double-time paid for daily shifts over 8 hours per day, for holidays, or for the seventh day pursuant to Union Contracts; as well as time for a second 15-minute paid break when it is paid out. *Id.* at 7-8.

---

testimony. Filing No. 366, Proffer at 1. Tyson also proffers that Dr. Nickerson would have testified with respect to the merger of two data sets—the defendant's payroll and punch record sets. In *Acosta*, the court rejected Dr. Nickerson's purported theory and evidence and credited Dr. Fox's testimony that punch clock data was not relevant to any issue in the case since the time clocks were used only for attendance and not to determine pay. *See Acosta*, No. 8:08CV86, Filing No. 311, Findings and Concl. at 48.

## II. LAW

This action is governed by the precept that "an employer should not "be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records [as required]." *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 688 (1946).

Recovery of liquidated damages under the Fair Labor Standards Act ("FLSA") results in an extension of the period of limitations from two to three years. *See* 29 U.S.C. §§ 255(a). The FLSA permits the recovery "of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); *see Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583–84 (1942) (observing that FLSA liquidated damages are not penalties exacted by law, but, rather, compensation to the employee occasioned by the delay in receiving wages due). The court is without discretion as to the issue of liquidated damages unless the defendant shows that it acted in good faith and had reasonable ground for believing that it was not violating the Act. *See Janda v. City of Omaha*, 580 N.W.2d 123, 130-31 (Neb. App. 1998).

The Nebraska Wage Payment and Collection Act ("NWPCA") provides that "[a]n amount equal to the judgment may be recovered from the employer; or (2) if the nonpayment of wages is found to be willful, an amount equal to two times the amount of unpaid wages shall be recovered from the employer." Neb. Rev. Stat. § 48-1229. The court has discretion to determine whether and in what amount to award damages as a penalty under subsection (1), but subsection (2) states the penalty "shall be recovered if the nonpayment of wages is found willful." *Kinney v. H.P. Smith Ford, L.L.C.*, 667 N.W.2d 529, 536-37 (Neb. 2003).

7

Because punitive damages are not allowed in Nebraska, the NWPCA provides that "[a]ny amount recovered pursuant to subdivision (1) or (2) of this section shall be remitted to the State Treasurer for distribution in accordance with Article VII, section 5, of the Constitution of Nebraska." Neb. Rev. Stat. § 48-1232; *see Abel v. Conover*, 104 N.W.2d 684, 688 (Neb. 1960) (stating that "[i]t has been a fundamental rule of law in this state that punitive, vindictive, or exemplary damages will not be allowed, and that the measure of recovery in all civil cases is compensation for the injury sustained"). That provision of the Constitution provides that "[s]ince all penalties must go to the benefit of the common schools of the state, a penalty for the benefit of a private person" violates Article VII, section 5, of Nebraska Constitution. *Abel*, 104 N.W.2d at 689; *see State ex rel. Cherry v. Burns*, 602 N.W.2d 477, 484 (Neb. 1999) ("[O]rdinarily, with respect to state causes of action, punitive damages contravene Neb. Const. art. 7, § 5, and are not allowed."). The Nebraska Constitution provides that "[a]ll such fines, penalties, and license money shall be appropriated exclusively to the use and support of the common schools in the respective subdivisions where the same may accrue." Neb. CONST. art. VII, § 5. With respect to a claim under federal law, the Supremacy Clause requires that state law must give way when it conflicts with or frustrates federal law. U.S. CONST. art. VI; *Chapman v. Lab One*, 390 F.3d 620, 624 (8th Cir. 2004).

Because the FLSA does not allow for any prejudgment interest where plaintiffs also receive liquidated damages, the court can award prejudgment interest only under Nebraska law. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 714-16 (1945) (noting that "the liquidated damage provision is not penal in its nature but constitutes compensation for

the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages."); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101–03 & n. 9 (8th Cir. 1982) (ADEA case) ("Courts have ruled that the FLSA authorizes a grant of prejudgment interest if no liquidated damages are awarded").

Under Nebraska law, entitlement to prejudgment interest depends upon whether the claim is liquidated or unliquidated. *Hammond v. City of Broken Bow*, 476 N.W.2d 822, 828 (8th Cir. 1991); Neb. Rev. Stat. § 45–103.01, *et seq.* No prejudgment interest is allowable on unliquidated claims. *Akkad v. Nebraska Heart Institute, P.C.,* 2012 WL 1233008, *12 (Neb. App. April 10, 2012). A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. *Hammond*, 476 N.W.2d at 829; *Nixon v. Harkins*, 369 N.W.2d 625, 631 (Neb. 1985). Also, a successful wage claimant under the NWPCA is entitled to an award of attorney fees. *Rauscher v. City of Lincoln*, 691 N.W.2d 844, 855 (Neb. 2005).

## III. DISCUSSION

For the reasons set forth in its order on the class certification issue, the court first finds the appropriate time period for recovery of damages begins on January 17, 2004, and ends on April 3, 2013. See Filing No. 432, Mem. and Order at 10. Further, the court finds the class includes all persons hired and working between those dates. *Id.*

In addition, the court finds the members of the plaintiff class are owed damages for uncompensated regular time as well as overtime. Contrary to Tyson's contention, the plaintiffs' complaint in this case was not limited to "unpaid overtime wages," but

explicitly sought "unpaid wages" as well as "unpaid overtime wages."  Filing No. 1, Complaint at 1.  The court's summary judgment order expressly contemplated straight time recovery.  Filing No. 224, Mem. & Order at 40-41.  Dr. Fox was permitted to supplement her report and Tyson has had an opportunity to respond to the plaintiffs' report that includes calculation of that time.

The court has considered Dr. Nickerson's criticisms of Dr. Fox's calculations and finds they lack merit.  The court has rejected Tyson's contention that the class is limited to those hired before the class certification date.  *Supra* at 5 n.4.  The court rejects the offsets proposed in Dr. Nickerson's analysis.[6]  The court found early in this action that Union Contracts are not relevant to issues herein.  *See* Filing No. 224, Mem. & Order at 39 & n.8; Filing No. 306, Mem. & Order at 3.  FLSA rights cannot be bargained away in a union contract.  *See Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739-40 (1981) (emphasizing the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay).  Further, this court and others have found that "sunshine pay," which is in the nature of incentive pay, is not an offset.  *See Garcia v. Tyson, Foods, Inc.*, 890 F. Supp. 2d 1273, 1292-94 (D. Kan. 2012); *Alvarez v. IBP, Inc.*, No. CT-98-5005, 2001 WL 34897841, at *24 (E.D. Wash. Sept. 14, 2001), *reversed on other grounds by Alvarez v. IBP, Inc.,* 339 F.3d 894 (9th Cir. 2003); 29 U.S.C. § 207(h); 29 C.F.R. § 778.207.  The second paid 15-minute break is compensable under law and is not an offset.  *See* Filing No. 408, T. Tr. (Vol. VI) at 1407-09; 29 C.F.R. 785.18 (rest periods of short duration, typically 5 to 20 minutes, are compensable).  All of the

---

[6] The only contention with any possible merit is Dr. Fox's inclusion of the 26 employees who allegedly opted out of the class-action.  However, Tyson provided the data that included those employees to the plaintiffs.  At any rate, the damages attributable to those employees are *de minimis* in the context of the overall class of over 8,000 workers.

10

proposed offsets relate to pay for activities other than donning and doffing. Accordingly, the court finds that Dr. Nickerson's calculations do not reflect the law or the evidence at trial and is not responsive to the court's rulings in the case.

The court finds Tyson's damages proposal is yet another attempt by Tyson to skirt its obligations, clear since *IBP, Inc. v. Alvarez,* 546 U.S. 21 (2005), to record and pay its employees for actual time. *See* Filing No. 224, Mem. & Order at 36-38; *Acosta*, No. 8:08CV86, Filing No. 311, Findings and Conclusions ("Findings & Concl.") at 17-25 (recounting Tyson's extensive litigation history). All of Tyson's contentions are aimed at requiring the plaintiffs to establish damages with a level of precision that is not possible as a result of Tyson's own actions. Tyson miscomprehends the essential fact that the plaintiffs are unable to establish damages on an individualized, job-by-job, day-by-day, basis because it elected not to keep records of actual time, but to use a flat, across-the-board average of four minutes—which, it turns out, was inadequate—to pay for the compensable activities at issue.[7] The evidence at trial established that Tyson could easily have recorded and paid actual time by utilizing the time clocks it uses for attendance. The plaintiffs were required to present evidence of a reasonable approximation of the time and they have done so.

On review of the parties' submissions, the court finds that the affidavit of Dr. Liesl Fox is credible and the court will adopt her calculations.[8] *See* Filing No. 416, Ex. A. The appropriate measure of compensatory damages is Dr. Fox's calculation of "all

---

[7] Also, the court notes that to allow a company to violate the essential precept of pay for time actually worked puts FLSA-compliant companies at a competitive disadvantage and ultimately harms the free market system.

[8] The court is familiar with Dr. Fox's credentials and methodology from the *Acosta* trial. *See Acosta,* No. 8:08CV86, Filing No. 311, Findings & Concl. at 46.

11

uncompensated time, mitigating for previously compensated K-code time." See Filing No. 416, Ex. 1, Dr. Fox Rpt. at 8, Table 1. The court found in *Acosta* that Dr. Fox's "basic methodology was to add the number of minutes that Dr. Mericle found in his time study to each class member's weekly wages and then to multiply those minutes by the employee's hourly rate for each week that they worked overtime." *Id.* Also, based on substantively identical evidence from Dr. Fox, the court found that her calculations "are made individually as to each class member using the personal hours of work, job assignments, and wage rates that are reflected in Tyson's records with respect to each employee" and that, "[a]lthough the calculations were based on average times . . . the resultant damages amount was individually computed as to each employee." *Id.* at 46-47. Dr. Fox's model uses the same methodology that Tyson used with respect to the K-code time. The court finds the methodology is fair and the court credits the calculations of Dr. Fox in assessing damages.

The court has ruled as a matter of law that the plaintiffs are entitled to liquidated damages under the FLSA and the NWPCA because Tyson's conduct was willful and unreasonable. See Filing No. 224, Mem. & Order at 37-38. The liquidated damages that double the award under the FLSA are effectively subsumed in the triple damages awarded under the NWPCA. The additional NWPCA damages that are not encompassed by the FLSA liquidated damages award, however, must be paid to the State Treasurer for distribution to the common school fund under Nebraska law. The court finds the amount of damages was not liquidated until the trial and accordingly prejudgment interest will not be awarded.

Accordingly, the court will enter judgment in favor of the plaintiffs in the amount of $3,307,191.20 (representing compensatory damages of $1,653,595.60 plus liquidated damages in the same amount) and will order the defendant to remit $1,653,595.60 to the State Treasurer of the State of Nebraska for distribution in accordance with Article VII, section 5, of the Constitution of Nebraska.

The plaintiffs are also entitled to attorney fees in an amount to be later determined by the court.[9] Accordingly,

IT IS ORDERED:

1. The plaintiffs are awarded compensatory damages in the amount of $1,653,595.60.

2. The plaintiffs are awarded additional liquidated damages under the Fair Labor Standards Act in the amount of $1,653,595.60, for a total award of $3,307,191.20.

3. The defendant shall remit $1,653,595.60 to the State Treasurer of the State of Nebraska for distribution in accordance with Article VII, section 5, of the Constitution of Nebraska for willful nonpayment of wages under Neb. Rev. Stat. § 48-1231(2).

4. A judgment in accordance with this Memorandum and Order will issue this date.

Dated this 2nd day of October, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

[9] The parties have entered into a stipulation providing that they will brief attorney fee issues after any appeal. Filing No. 270. Accordingly, the court will hold that determination in abeyance.